UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
Ana Flores, Rene Flores, Maria Magdalena
Hernandez, Magali Roman, Make the Road
New York, and New York Communities for Change,

                                                                    Docket No.18-CV-3549

                              Plaintiff,

              -against-


Town of Islip, Islip Town Board, Suffolk County
Board of Elections,

                              Defendants.
-------------------------------------------------------------------------------X


**SUFFOLK COUNTY BOARD OF ELECTIONS MEMORANDUM OF LAW IN OPPOSITION
TO THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**


                              DENNIS M. BROWN
                              County Attorney
                              Attorney for Defendants
                              By:  DANIEL E. FURSHPAN
                              Assistant County Attorney
                              H. Lee Dennison Building
                              P.O. Box 6100
                              100 Veterans Memorial Highway
                              Hauppauge, New York 11788
                              (631)  853-4049

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………...ii

PRELIMINARY STATEMENT……………………………………………………………….1

THE STANDARD FOR PRELIMINARY INJUNCTIONS…………………………………...1

POINT I
PLAINTIFFS WILL NOT SUFFER IRREPARABLE
HARM ABSENT AN INJUNCTION……………………………………………………….2

POINT II
THE BALANCE OF EQUITIES AND THE INTERESTS OF PUBLIC
WEIGH HEAVILY AGAINST THE REQUESTED PRELIMINARY
INJUNCTION……………………………………………………………………………..5

      A.    THE GRANTING OF AN INJUNCTION WILL HAVE A
CHAOTIC AND DISRUPTIVE EFFECT UPON THE
ELECTORAL PROCESS…………………………………………………8

      B.    THE MILITARY WILL BE DISENFRANCHISED BY THE
IMPOSITION OF A PRELIMINARY INJUNCTION………………….12

POINT III
PLAINTIFFS' REFERENCE TO BOE INCIDENTS FROM SEVERAL
YEARS AGO HAVE NO RELEVANCE…………………………………………….13

CONCLUSION………………………………………………………………………………..14

# TABLE OF AUTHORITIES

## Cases

*Ashe v. Board of Elections in the City of New York*,
1988 WL 68721 (E.D.N.Y. June 8, 1988)................................................................................ 7

*Cardona v. Oakland Unified School District*,
785 F.Supp. 837 (1992)......................................................................................................... 7

*Chisom v. Roemer,*
853 F.2d 1186 (5th Cir.1988)............................................................................................... 3

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
696 F.3d 206 (2d Cir. 2012)................................................................................................. 1

*Conservative Party of New York State v. New York State Bd. of Elections*, No. 10 Civ. 6923,
2010 U.S. Dist. LEXIS 114155, at *6-8 (S.D.N.Y. Oct. 15, 2010) ............................................ 6

*Diaz v. Silver,*
932 F.Supp. 462 (E.D.N.Y.1996)................................................................................... 3, 7, 8

*Dillard v. Crenshaw County*,
640 F.Supp. 1347 (M.D.Ala.1986) ....................................................................................... 8

*eBay Inc. v. MercExchange*, LLC,
547 U.S. 388 (2006) ............................................................................................................. 5

*Favors v. Cuomo*,
881 F.Supp.2d 356 (E.D.N.Y. 2012)...................................................................................... 5

*Goosby v. Town Board of the Town of Hempstead,*
956 F.Supp. 326 (E.D.N.Y. 1997)......................................................................................... 3

*Goosby v. Town Board of the Town of Hempstead,*
981 F.Supp. 751 (E.D.N.Y. 1997)................................................................................. 2, 3, 4

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007).................................................................................................... 1

*Green Party v. Weiner*, No. 00 Civ. 6639,
2000 U.S. Dist. LEXIS 12963, at *9-10 (S.D.N.Y. Sept. 8, 2000) ............................................ 6

*Mac Govern v. Connolly*,
637 F.Supp. 111 (D.Mass.1986) .................................................................................. 8, 10, 11

*Mazureck v. Armstrong*,
520 U.S. 968 (1997) ............................................................................................................ 6

*Oneida Nation of N.Y. v. Cuomo*,
645 F.3d 154 (2d Cir. 2011) ................................................................................................. 2

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ................................................................................................................ 6

*Red Earth LLC v. United States*,
657 F.3d 138 (2d Cir. 2011) ................................................................................................. 1

*Reynolds v. Sims,*
377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) .......................................................... 3, 6, 7

*Salinger v. Colting*,
607 F.3d 68, 80 (2d Cir. 2010) ............................................................................................. 5

*Stage P.C. v. U.S. Dep't of State*, No. 15 Civ. 8468,
2016 U.S. Dist. LEXIS 8937 at *11-12 (S.D.N.Y. Jan 26, 2016) ........................................... 5

*Vera v. Richards*,
861 F.Supp. 1304 (S.D.Tex.1994) ........................................................................................ 7

*Watkins v. Mabus*,
771 F.Supp. 789 (S.D.Miss.1991) ...................................................................................... 7, 8

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ............................................................................................................ 5

*Westermann v. Nelson*,
409 U.S. 1236 (1972) .......................................................................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ............................................................. 2, 5

## **Statutes**

NY Election Law Section 8-303 .......................................................................................... 14

NY Town Law Section 85(1) ........................................................................................... 11, 12

Defendants, Suffolk County Board of Elections ("BOE") hereby submit this Memorandum of Law in opposition to the Plaintiffs' Motion for a Preliminary Injunction.

## PRELIMINARY STATEMENT

The BOE opposes Plaintiffs' application for a Preliminary Injunction enjoining all Islip Town Council elections under the current at-large voting scheme, because an injunction issued within four weeks of the June 25, 2019 primary election will frustrate the BOE's ability to deliver a fair and accurate election for Town of Islip residents. Furthermore, an injunction issued after the electoral processes for Town Council candidacy have commenced will create undue confusion and uncertainty among voters, candidates, and election officials, which is contrary to the democratic process and our Constitution.

## THE STANDARD FOR PRELIMINARY INJUNCTIONS

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). Ordinarily, a plaintiff seeking a preliminary injunction must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012). But "[w]hen, as here, the preliminary injunction will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, it should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir.

2011) (quotation marks omitted). "Additionally, the moving party must show that a preliminary injunction is in the public interest," *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (*citing Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 19–20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)), and that "the balance of equities tips in his favor," *Winter*, 555 U.S. at 20, 129 S.Ct. 365.

**POINT I**

**PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION**

Denial of an injunction will not result in irreparable harm. There are currently four Town Council members. Two terms expire at the end of this year and the other two terms expire at the end of 2020. All were elected pursuant to a long established at-large election scheme. Should the Court find the current scheme violates the Voting Rights Act then the Court can fashion an appropriate remedy, including ordering a special election. If the Court finds that creation of a ward or council system is warranted, then it would follow that the new scheme will necessarily address all council seats.

The Eastern District Court has previously held that an injunction of an at-large election is not warranted for lack of irreparable harm, even where the Court had previously held such system violated the Voting Rights Act. In *Goosby v. Town Board of the Town of Hempstead*, 981 F.Supp. 751 (E.D.N.Y. 1997), Judge Gleeson denied an application for a preliminary injunction of an at large election eight months after determining that the existing voting scheme was unconstitutional on the ground that the plaintiffs could not establish irreparable harm. Notably, the application for an injunction was denied in the same decision that ruled upon a remedial voting scheme.  The Court stated:

2

In deciding whether to enjoin the upcoming election, I am required to "act and rely upon general equitable principles." *Reynolds v. Sims,* 377 U.S. 533, 585, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964). Consequently, to prevail on their request for preliminary injunctive relief, plaintiffs must demonstrate that "(1) they will suffer irreparable injury if relief is not granted; (2) there is a substantial likelihood of success on the merits; and (3) the public interest favors issuance of the injunction." *Diaz v. Silver,* 932 F.Supp. 462, 465–66 (E.D.N.Y.1996). In addition, in determining whether a balance of the equities favors the issuance of an injunction, I am "entitled to and should consider the proximity of a forthcoming election." *Reynolds,* 377 U.S. at 585, 84 S.Ct. at 1394. Finally, I note that "'intervention by the federal courts in state elections has always been a serious business,' not to be lightly engaged in." *Chisom v. Roemer,* 853 F.2d 1186, 1189 (5th Cir.1988) (citation omitted).

Even defendants concede that if plaintiffs prevail on appeal, there is nothing to prevent a special election to remedy the Section 2 violation. Plaintiffs therefore have failed to establish that irreparable injury will result if I decline to grant the relief they request. In addition, the election plaintiffs ask me to enjoin is, at this point, only three weeks away. I find that the balance of the equities does not support the issuance of an order enjoining the upcoming election. The motion for such an order is therefore denied.

981 F.Supp. at 763.

Clearly, if an injunction of an election is not warranted where a court has already determined that such voting scheme was unconstitutional, it most certainly is not warranted in the early stages of litigation where there has been no determination on the constitutionality of the current voting scheme.

The *Goosby* case is illustrative of the complex nature of the instant litigation and the extensive analysis that must ensue in order to ascertain whether a challenged voting practice was adopted or maintained with the intent to discriminate against minority voters. As Judge Gleeson stated, the district court's analysis "requires a fact-intensive, functional view of the political process, in an effort to determine whether the Town's political processes are equally open to participation by its black citizens. [citations omitted]." *Goosby v. Town Board of the Town of Hempstead,* 956 F.Supp. 326 (E.D.N.Y. 1997)

Moreover, the litigation does not end if plaintiffs are successful following an underlying trial because considerable time will then be expended in creating and implementing a remedial plan. "Where a court has struck down a voting system, it must give the appropriate elected body an opportunity to propose a remedial plan. (citation omitted). If it submits such a plan, the court must accord the proposal substantial deference. It does not matter whether the court considers the proposal the 'best' plan, and it may not reject the plan to adopt what it considers to be a better one. Rather, the court's role is only to consider whether the plan proposed by the elected body is legally acceptable, i.e., whether it comports with the requirements of the Voting Rights Act and the Constitution. (citation omitted)." 981 F.Supp. at 755.

Notably, in *Goosby*, the action was commenced in 1988, the trial was conducted in 1996 and a decision finding the voting scheme unconstitutional was issued in 1997. Approximately eight months later a remedial plan was approved by the Court but was stayed pending appeal. In June 1999, two years later, the Second Circuit affirmed Judge Gleeson's decision.

Although it is not expected that over ten years will elapse before a final decision is reached in the instant matter, it is certainly reasonable to conclude that a final resolution will not be reached in ten months at which time both council seats will become vacant if an election is not permitted to proceed under the existing system.

In light of the foregoing, it is respectfully submitted that Plaintiffs cannot establish irreparable harm and thus, their application to enjoin Town council elections should be denied. Although the application should be denied for the above reason alone, it is further submitted that the public interests strongly favor denial of the injunction.

4

## POINT II

## <u>THE BALANCE OF EQUITIES AND THE INTERESTS OF PUBLIC WEIGH HEAVILY AGAINST THE REQUESTED PRELIMINARY INJUNCTION</u>

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (*quoting Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Plaintiffs here have not shown that the equities or the public interest favor the drastic immediate injunctive relief they seek. Indeed, both of these factors weigh heavily against such relief, irrespective of the likelihood of ultimate success or irreparable harm. *See Winter* 555 U.S. at 31, n. 5 (preliminary injunction was abuse of discretion, even if plaintiffs correct on underlying claim). It would turn an orderly process that has been in place for many years into an uncertain and unfair chaos that would substantially delay voting, discourage voters, and be against the public interest.

For any preliminary injunction, "the court must ensure that the 'public interest would not be disserved' by issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006)); *see also Stage P.C. v. U.S. Dep't of State*, No. 15 Civ. 8468, 2016 U.S. Dist. LEXIS 8937 at *11-12 (S.D.N.Y. Jan 26, 2016) ("[e]ven assuming…a substantial likelihood of success on the First Amendment claim, "the balance of equities and the public interest both require the denial of this preliminary injunction"). For elections in particular, "the paramount interest in fair and legal voting counsels caution rather than haste." *Favors v. Cuomo*, 881 F.Supp.2d 356, 371 (E.D.N.Y. 2012) (three-judge court).

"Court orders affecting elections…can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). As the Supreme Court has cautioned, in the context of an appointment case in which the statute in question has already been held unconstitutional,

> [i]n awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree.

*Reynolds v. Sims*, 377 U.S. 533, 585, (1964); *see also Westermann v. Nelson*, 409 U.S. 1236, 1236-37 (1972) (Douglas, Circuit Justice) (preliminary injunction denied where election machinery was under way, "not because the case lacks merit but because orderly election processes would likely be disrupted by so late an action"); *Conservative Party of New York State v. New York State Bd. of Elections*, No. 10 Civ. 6923, 2010 U.S. Dist. LEXIS 114155, at *6-8 (S.D.N.Y. Oct. 15, 2010) (no need to reach merits on preliminary injunction motion, where plaintiffs have "slept on their rights" and waited until shortly before election to seek onerous and confusing relief, *citing Mazureck v. Armstrong*, 520 U.S. 968, 972 (1997)); *Green Party v. Weiner*, No. 00 Civ. 6639, 2000 U.S. Dist. LEXIS 12963, at *9-10 (S.D.N.Y. Sept. 8, 2000) (Lynch, J.) (preliminary injunction denied where to order such relief would cause "disruption of the state's orderly election process").

The same concerns arise in the present case, in which Plaintiffs seek to prevent an election from going forward mere weeks before the primary.

6

In *Diaz v. Silver*, 932 F.Supp. 462 (E.D.N.Y. 1996) the Court held "even where an existing districting scheme was found invalid, the Supreme Court maintained that the state need not interfere with election machinery which was already "in gear." *Id.* at 466. That is because "[i]nterference by a court now may well create considerable confusion, inconvenience and uncertainty among voters, candidates and election officials." *Id.*

In *Diaz*, the Court referred to several District and Circuit court decisions that reached similar conclusions, which is worth reiterating:

> Our decision here is in accord with the view that other courts have taken in similar situations especially where no alternative districting plan exists. In *Vera v. Richards*, 861 F.Supp. 1304, 1351 (S.D.Tex.1994), *aff'd Bush v. Vera*, 517 U.S. 952, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996), a three-judge panel, after finding the redistricting plan unconstitutional, on September 2, 1994, ordered that the Texas Legislature develop and implement by March 15, 1995 a new Congressional redistricting plan which conformed to the court's opinion, but did not require a stay in the November 1994 elections or a change to the districts. In fact, the three-judge panel denied relief during not only the 1994 election but the 1996 election as well.

> Similarly, in this court in *Ashe v. Board of Elections in the City of New York*, 1988 WL 68721 (E.D.N.Y. June 8, 1988), a three-judge panel considering a VRA violation resulting from the change by the Board of Elections in the City of New York which purged names from the list of registered voters on the eve of a closed period for registration in the 1988 elections found that "plaintiffs have demonstrated a likelihood of showing ... irreparable injury to plaintiffs ... and ... immediate harm to plaintiffs...." Nevertheless the panel denied a preliminary injunction after "balanc[ing] such harm against the public interest in maintaining an orderly system of registration and in holding a primary election on a regularly scheduled date."

> Again, in a district court in the Northern District of California, *Cardona v. Oakland Unified School District*, 785 F.Supp. 837, 842–43 (1992), a preliminary injunction was denied four months prior to the primary election, citing *Reynolds v. Sims*, 377 U.S. 533, 585, 84 S.Ct. 1362, 1393–94, which permits a court "to consider the proximity of a forthcoming election and the mechanics and complexities of state election laws ..." *Id.* at 842.

> And, in *Watkins v. Mabus*, 771 F.Supp. 789, 805 (S.D.Miss.1991), aff'd in part and vacated in part as moot, 502 U.S. 954, 112 S.Ct. 412, 116 L.Ed.2d 433 (1991), a three-judge court in Mississippi found that "where as here, the

7

possibility of corrective relief at a later date exists, even an established VRA violation does not in and of itself merit a preliminary injunction." Consequently, the court in Mississippi denied a preliminary injunction that would have enjoined the primary and general elections for the Mississippi Legislature and ordered elections to be conducted under existing law, even though it violated § 2 of the VRA. Thus, on August 9, 1991, the court ruled: "Accordingly, although the legislative districts under the 1982 plan are doubtless unconstitutionally malapportioned for a full four-year term of office, this court, exercising its equitable powers, holds that under the facts in this case, including the imminent elections, they may be constitutionally utilized for interim relief." *Id.* at 807. In its explanation for why the court took such a course, it emphasized that the Mississippi Legislature should have the ability to create a plan which would adequately consider the traditional criteria. *Id.*

An Alabama three-judge panel found the preliminary injunction criteria satisfied in a VRA challenge to five counties' at-large voting plans, but on May 28, 1996, denied an injunction for the following November's elections because "even if it were clear that all of the counties should be required to adopt single-member districts, it would be unfair and infeasible to require them to do so by June." *Dillard v. Crenshaw County*, 640 F.Supp. 1347, 1362 (M.D.Ala.1986). The court explained that each county should devise its own new plan and that because the "election systems may all have to be completely reorganized, there can be no absolute assurance that new plans will be fully implemented before January 1987, when some of the present commissioners' terms will end." *Id*. at 1362–63.

As a Massachusetts federal court stated: "When the massive disruption to the political process of the Commonwealth is weighed against the harm to plaintiffs of suffering through one more election based on an allegedly invalid districting scheme, equity requires that we deny relief." *Mac Govern v. Connolly*, 637 F.Supp. 111, 116 (D.Mass.1986).

*Diaz*, *supra*, at 468.

A.  THE GRANTING OF AN INJUNCTION WILL HAVE A CHAOTIC AND DISRUPTIVE EFFECT UPON THE ELECTORAL PROCESS

A preliminary injunction in the early stages of the litigation, after the electoral processes for Town council candidacy have already commenced and mere weeks before a primary election, is against the public interest and would cause voter confusion, chaos at the ballots, and harm to the integrity of the electoral process and our democratic values.

This is especially true now in light of numerous election reforms enacted by the New York State Legislature within the last three months including moving the Primary Election to June 25, 2019 and instituting early voting for the November 2019 General Election.  As a result, the strict state timetables attributable to the electoral process, including the time for candidates to obtain signatures on petitions in order to qualify to get on a ballot which began on February 26, 2019, have been advanced. Potential candidates for the public office of Town Council in the Town of Islip are currently seeking support for their candidacy from constituents at large within the Town.  Such Petitions are to be submitted to the Board during the first week in April after which there shall be a period for challenges to petitions including judicial challenges.

Generally, BOE begins to prepare for an election five to six weeks in advance thereof. The ballots are created by the BOE and then sent to a New York State certified printer for reproduction of ballots.  The ballots are ordered no later than four weeks before an election, in order to have sufficient time to prepare for the election including the programming of the ballot tabulators and the ballot marking devices for voters in need of assistance. Thus, if there is a Primary Election to be conducted on June 25, 2019, the BOE would begin preparing for that election by the third week in May.

If a Primary Election for Islip Town Council will be necessary and Plaintiff's application is granted within four weeks of the Primary Election, the BOE will not have sufficient time to obtain a new ballot from the printer and reprogram the voting machines and thus, will be required to use a ballot with a Town Primary election that will not be counted. *Exhibit "A", pg. 166-167*. Therefore, voters will be casting their votes in a meaningless election.

It is anticipated that ballots in the upcoming primary election will include not only the Town of Islip Council, but also candidates for Islip Receiver of Taxes, Islip Town Clerk, and Suffolk County Legislature. Therefore, it is not just a simple matter of stopping the election. BOE Republican Commissioner Nicholas LaLota testified, "hundreds of [voting] machines" would have to be reprogrammed, which is a "laborious" process that takes longer than four weeks to complete, even under the best of circumstances. *Id. at 167, 172*. Also, the "[p]rinting of ballots is probably the other biggest obstacle to changing a date within that four-week window." *Id.* Furthermore, the BOE requires more than four weeks' notice to inform the public of the injunction. *Id.*

Accordingly, the BOE would be placed in the unfortunate situation of having "…to tell the voters somehow that even if they fill in the bubbles for town council, that vote wouldn't count." *Id. at 173*. Some voters may not get the message until after the election, and some, not at all. LaLota continued, "that's not in the spirit of how the Suffolk County Board of Elections or probably any Board of Elections throughout the State of New York conducts their elections. We go out of our way to reduce voter confusion, and having offices on the ballot where the votes won't actually be counted is definitely in the realm of confusing voters." *Id. at 179-180.*

To complicate matters further, based upon the 2019 Election Calendar, determination of candidates and questions must be filed by County Boards of Election by September 11, 2019. *See: Exhibit "B"*. For the first time in New York, early voting will now be permitted and begins on October 25, 2019. Thus, if a primary election for the Town Council were delayed it would have to be held no later than September 4th, as the Board must wait seven days after the Primary Election for receipt of absentee and military ballots. That leaves the BOE with just one week to count all paper ballots and certify the election results.

Even if a Primary Election for Town Council was not necessary, then the BOE would need to order ballots for the General Election by the first week in October for the November General Election.  Can it be asserted in good faith that a final resolution and implementation of a new voting scheme will be achieved by the November election, and if not, to what end is an injunction sought? The *Goosby* case demonstrated the complex and time-consuming process of creating and implementing a new voting system which is something that is more likely to occur over a matter of years and not months.

Republican Commissioner LaLota explained some of the process that would be followed after new districts were created.

> From there, we would have to set a calendar for petitioning on candidates to those offices, or if the law required, the court required for the parties to be able to nominate their candidates outside of the petition process such as at a designated meeting. I'm unfamiliar with all the ramifications so I can't answer your question too directly.

*Exhibit "A" at 187.*

LaLota accurately stated, "[t]hese aren't things that we would want to do last minute and just wing it. …. We don't want to be the County Board of Elections that has some sort of mistake that disenfranchises voters. So with that goal in mind, we would err on the side of needing more time than less." *Id. at 195*. This is especially important for voters who are being confronted with a new voting scheme for the first time.   Certainly all parties would agree that voter notification and education is of paramount importance to enable voters to fully comprehend and exercise their rights.  Completely changing a long standing electoral process in a Town is not something that can be enacted prematurely.

Notably, Section 85(1) of the New York Town Law provides a mechanism to terminate current council members and elect new council members under a ward-system. "After a ward

11

system shall have been so established, the term of office of every town councilman shall terminate on the thirty-first day of December next succeeding the first biennial town election held not less than one hundred twenty days after the establishment of such ward system, and at such biennial town election, and every biennial town election thereafter, one resident elector of each ward shall be elected as councilman therefrom for a term of two years beginning on the first day of January next succeeding such election." N.Y. Town Law §85(1).

If Plaintiff is ultimately successful in this litigation, the most efficient, logical, and democratic method of implementing the change would be to follow the mandates of NY Town Law §85(1). Disrupting the orderly election process by imposing an injunction, would not.

B.    THE MILITARY WILL BE DISENFRANCHISED BY THE IMPOSITION OF A PRELIMINARY INJUNCTION

In 2009, Congress amended the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) to add an explicit requirement that military ballots go out at least 45 days before the election. Accordingly, ballots for the primary election, which will include the election of Islip's Town Council, will be sent overseas to our military on or before May 10, 2019. *Exhibit "A", pg. 218-219, 257-258*.

The purpose of the Act is to ensure that military ballots go out on time, so that those who serve our country in uniform, those who protect the rights that we all enjoy, will be able to cast ballots that get counted, no matter where the service of our country has taken them. The 45-day rule is not just a suggestion. It is a mandate of federal law. Were it not for the sacrifices of military personnel, from the American Revolution to the Global War on Terrorism, none of us would have the opportunity to vote in free elections.

If an injunction is granted, the BOE will be placed in the regrettable position of figuring out a way to inform our military that their votes do not count. As LaLota stated, "[t]hat's when doubts about how our democracy is run start in peoples' minds…" *Exhibit "A", pg. 183*.

## POINT III

### PLAINTIFFS' REFERENCE TO BOE INCIDENTS FROM SEVERAL YEARS AGO HAVE NO RELEVANCE

Although the BOE takes no position on the merits of the litigation other than a need to be provided with sufficient time to implement any relief that may be granted, the BOE is compelled to respond to certain assertions made against the BOE's past practices to the extent such remote instances occurring over six years ago may even be considered probative. In paragraph 14 of the Affidavit of Daniel Altschuler (ECF #39) ("Altschuler Affidavit") reference is made to a situation that occurred in 2012 involving the BOE's rejection of online registrations through the Department of Motor Vehicles. As noted in the Affidavit, due to a software problem in the State's system in 2012, when online registration through the Department of Motor Vehicles was in its early stages, certain electronic registrations sent to the BOE contained illegible signatures which resulted in rejection of same. What the Affidavit omits however is that the BOE modified its policy of rejecting such registrations shortly thereafter, and there has been no testimony from any witness of this proceeding of a similar complaint since 2012.

Additionally, the Altschuler Affidavit references incidents that occurred during the general election in November 2012. Although the BOE has no specific recollection of the alleged incidents, the Court should be aware that there were and continue to be processes in place by the BOE to ensure voters rights are not impeded or infringed upon. Some of those processes include

13

the fact that there are bipartisan teams of inspectors at every polling place for every function including supervisors. *Exhibit "A", pg. 234-235*. All inspectors and supervisors undergo annual training and are made aware of the limited circumstance in which voter identification may be requested. The poll roster book at the polling place that is provided to the bipartisan team will clearly designate the specific voters that are legally required to produce identification pursuant to NY Election Law Section 8-303.

As an additional precaution, the Suffolk County Police Department will assign a certain number of police officers to election related matters.  In the Town of Islip alone there are usually six Suffolk County Police Department Sector cars that are assigned solely to the election. On election days, a bipartisan team of BOE employees will ride in the sector or patrol cars with the police and will respond to polling sites to address any issues and complaints. This process is actually referenced in the Altschuler Affidavit wherein he states that Commissioner Anita Katz received a complaint and advised she "would send over the police."  In all situations where the BOE becomes aware of any instance of voter intimidation or other problem at a polling place, immediate action is taken to resolve such issue whether it be handled by the supervisors or inspectors at the polling place or by the police department.

## CONCLUSION

For all the reasons and arguments presented, Plaintiff's Motion for a Preliminary Injunction should be denied.

Dated:  Hauppauge, New York
     April 3, 2019

Yours, etc.

DENNIS M. BROWN
Suffolk County Attorney
Attorney for Defendants
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788-0099
(631) 853-6187


/s/ *Daniel E. Furshpan*
By:    DANIEL E. FURSHPAN
Assistant County Attorney

15