# Exhibit C

# 2018 SUMMARY REPORT & 2019 GOALS



DIVISION OF CODE
ENFORCEMENT
Jason Michetta / Chief Town Investigator
2019

2018 SUMMARY REPORT & 2019 GOALS

## Division of Code Enforcement



# Table of Contents

| Topic | | Pages |
|---|---|---|
| 1. | 10 Code Enforcement Division Accomplishments 2017 & 10 Objectives for 2018 | *2 - 7* |
| | • 2018 Accomplishments | |
| | • Open action items - Goals remaining from 2018 | |
| | • 2019 Goals | |
| | • Six month and twelve month goals | |
| 2. | Enforcement and Revenue | *8 – 24* |
| 3. | Enforcement Personnel | *25 – 26* |
| 4. | Training | *27* |
| 5. | Summary | *28 - 29* |
| 6. | Attachment A. | *30 - 33* |
| 7. | Attachment B. | *34 – 37* |
| 8. | Attachment C. | *38 - 42* |

2018 SUMMARY REPORT & 2019 GOALS

# 1.    Division of Code Enforcement Accomplishments & Objectives

## 2018 Division of Code Enforcement Accomplishments

1. 5,144 Appearance tickets were served by enforcement agents of the Division of Code Enforcement
   - 1402 more appearance tickets served than in 2017, an approximate 37% increase.
2. A concerted effort with the Division of Law Enforcement maintained sentencing standards for Division of Code Enforcement produced prosecutions and resulted in $1,005,285.00 in 5th District Court fines received, a decrease of $136,330.00 (12%) from 2017.
3. The Division of Code Enforcement received $694,206.50 in fees for Sign Permits, Rental Occupancy Permits, and Violation Searches, a decrease of $9,696.73 from 2017. Sign Permitting authority and the associated revenue were transferred to the Division of Building in January 2018, and there has not been an increase to any Division of Code Enforcement fees in over 16 years.
4. The enforcement of Article IV of Chapter 6A – Residential Property Maintenance of the Town of Islip resulted in the service of 1,173 appearance tickets.
5. Illegal multiple family dwelling enforcement results include:
   - 953 new complaints investigated which alleged illegal multiple family dwellings
   - 192 appearance tickets issued for violations of §68-25B(1) Change of Use
   - 104 appearance tickets issued for violations of §68-602 Accessory Apartment Permit required
   - 5 appearance tickets issued for violations of §68-605 Accessory Apartment prohibited (shed, detached garage, etc.)
6. Non-complaint enforcement conducted in 2018 included the following initiatives:
   - The Expired Rental Occupancy Permit Enforcement Initiative (Attachment A.) by Town Investigators using overtime
     i. 77 expired permits were investigated, 73 appearance tickets were issued, and 51 Rental Occupancy Permits were renewed or closed.
     ii. The labor cost for this initiative was $2,785.08. The sum of the associated fine revenue and permit fees was $24,950.00, $22,164.92 over cost.
   - The Quality of Life Enforcement Initiative (Attachment B.) which was conducted from Memorial Day through Labor Day by part time Town Investigators & full time Town Investigators using overtime
     i. 301 appearance tickets were issued for Town of Islip Code violations
     ii. The labor cost for this initiative was $11,679.92. The associated fine revenue was $39,900, $28,220.08 over cost.
7. Post-prosecution Investigation Unit:
   - Two full time Town Investigators were assigned to investigate previously prosecuted cases that included a conditions of discharge agreement as part of the conviction or sentence. This unit has existed for five years.
   - Chief Investigator Mistretta & Senior Investigator Bahnsen assisted in the investigation of Post-prosecution cases.
   - 520 declarations of delinquency were processed against non-compliant defendants in 2018, compared to 503 in 2017.
8. Community Development Agency Target Communities Enforcement
   - 100% of complaints were investigated within the College Woods Community
9. The non-complaint New York State Department of Finance Problem Properties Investigation Initiative was conducted. This non-enforcement initiative was 100 % grant funded. 206 property investigations were performed and resulted in 35 closed complaints/cases and generated 28 complaints for properties to be considered for Town Board Resolutions to be cleaned or secured. (Attachment C.)

# 1. Division of Code Enforcement Accomplishments & Objectives – continued

## 2018 Division of Code Enforcement Accomplishments - continued

10. Pool Enforcement results include:
   - 100% of the 149 complaints were investigated.
   - An expedited enforcement policy remains in force, which includes the immediate assignment of complaints, and two-week District Court return dates for appearance tickets issued for pool related violations.
   - Seasonal Enforcement Training of the Division of Code Enforcement staff was conducted on May 25th 2018 ensuring adherence to the established enforcement policy and heightened awareness.
   - 414 appearance tickets were served for pool related violations.

11. The Division of Code Enforcement chain of command, reporting to Assistant Town Attorney Valletti, and staff budget remained unchanged.

   - The Division of Code Enforcement staff as of 12/31/18 consisted of:
     i. Chief Town Investigator
     ii. Principal Town Investigator
        1. The Principal Investigator (Davis) was injured on 5/14/18 and then suspended from duty on 10/24/18 and did not return to service in 2018.
     iii. Two (2) Senior Town Investigators
        1. A Senior Investigator was suspended from duty (Paladini) on 2/8/18 and resigned without returning to service.  This position remained vacant throughout the year.
        2. A Senior Town Investigator (Bahnsen) remained assigned to the Building Division until 6/23/18 when she was restored to Division of Code Enforcement operations.
     iv. Ten (10) full time Town Investigators
        1. One (1) full time Investigator (Eckert) was assigned to the Building Division until 6/23/18 when he was restored to Division of Code Enforcement operations.
        2. Two (2) full time Investigator positions were vacant
        3. One (1) full time Investigator was dedicated to Sign Ordinance Enforcement (Dooley) until 1/16/18 when sign permitting responsibilities were transferred to the Building Division.
        4. Two (2) full time Investigators were dedicated to post prosecution investigations (Cruz & Benavides)
     v. Four (4) part time Investigators (Lyon, Liguori, Rudiger & Fajardo)
     vi. One (1) part time Sign Inspector (McCaffery) until 1/16/18 when she transferred to the Building Division along with the sign permitting function.
     vii. One (1) part time Code Enforcement Officer (Mendez)

12. 2018 Building Division Abandoned Permit Enforcement Initiative:
   - Senior Investigator Bahnsen & Investigator Eckert remained on assignment in the Building Division until June 23rd 2018 and worked to resolve expired and abandoned Building Division permits.
   - This initiative generated $309,593.00 in Building Division Permit revenue, 236 appearance tickets, and 146 cases closed.
   - This initiative, established in 2013, resolved 2,632 previously failed Building Division Permits and generated permit fee revenue of $2,871,595.00.

2018 SUMMARY REPORT & 2019 GOALS

# 1.    Division of Code Enforcement Accomplishments & Objectives – continued

## 2018 Division of Code Enforcement Accomplishments - continued

13. In 2018, Division of Code Enforcement staff attended 528 hours of accredited education to obtain and/or maintain New York State Code Enforcement Official Certification.
14. Divisional training was conducted monthly.
15. The fleet management program monitored the assignment, availability, upfitting, and maintenance/repair of the division vehicles.
    - Three (3) new Ford Interceptor SUV's were added to the fleet.
16. Maintained cooperation with the Suffolk County Police Department's community orientated enforcement units through routine attendance of community meetings at the 3rd & 5th Precincts, where personnel ensured the effective communication of information related to mutual interests.
17. Maintained the established policy, which ensures that constituent complaints, which allege Division of Code Enforcement employee misconduct, are responsibly documented and investigated.

## 1.     Division of Code Enforcement Accomplishments & Objectives – continued

### Open action items from 2018

1. The establishment of the Division of Code Enforcement Administrative and Enforcement Manuals is still pending approval.
2. The establishment of standardized initiation and basic training for new Division of Code Enforcement Staff remains necessary.  Training remains a nebulous process that includes field training with experienced Investigators, the Senior and Principal Investigator.
3. Professional development training including management and supervision training for Supervisory Investigators has yet to occur.
4. The hiring of staff for all budgeted positions remains incomplete.
   - In 2018 the same open Town Investigator position was offered to two different individuals, who declined to accept the offer based on the starting salary.  One of those individuals initially accepted the offer and then accepted a job offer from the Town of Brookhaven.
   - An additional Spanish Speaking Town Investigator position was filled, the individual resigned after six months to accept a similar position in Southampton Town.
   - The Senior investigator position vacated by a resignation remained through the end of 2018..
5. There was no progress in expanding the use of mobile technology to reduce the dependence of Town Investigators on the traditional office environment.
6. Improve equipment
   - Vehicles – replace obsolete vehicles and procure vehicles to meet staff level
     - Vehicles V653, V656 & V653, all Interceptor SUV's, were added to the fleet this year. Additional vehicles are required to eliminate antiquated vehicles that are unreliable and negatively affect productivity.  The fleet still contains 8 vehicles that are more than 10 years old and have excessively high mileage.
7. Code/Policy Amendments
   - Recommended amendments to Article 50 of Chapter 68 "Rental Dwelling Units" have yet to be considered.  The recommended amendments are intended to eliminate archaic aspects of the code that are no longer consistent with the Rental Occupancy Permitting process.
8. An effective records retention and file management system has not been established.
9. The percentage of Investigators commissioned as Notary Publics decreased to 41%, well short of the goal set for 2018 of 75%.

2018 SUMMARY REPORT & 2019 GOALS

# 1.   Division of Code Enforcement Accomplishments & Objectives – continued

## Goals set for January – June 2019

Administrative
- Transition from the Department of Town Attorney into the Department of Public Safety Enforcement
- Develop a standardized orientation and basic training for new Division of Code Enforcement Staff
- Maintain cooperation with the Suffolk County Police Department's community orientated enforcement and support units
- Increase fees for Rental Occupancy Permits and third Party Violation Search Reports (property owners receive reports free of charge)
- Conduct monthly training of enforcement staff
- Develop a method to identify and track cases/complaints closed because the allegation is unfounded or due to compliance.

Personnel
- Plan and schedule for 100% annual New York State Code Enforcement Official training compliance
- Maintain routine monthly training for the enforcement agents of the Division of Code Enforcement focusing on topics such as such as seasonal condition enforcement, new policies or technology, legal aspects, and professional development.
- Establish appropriate chain of command, create additional enforcement units encompassing all staff with designated supervision, and establish weekly, monthly and annual responsibilities for each title in the chain of command
- Fill budgeted positions to increase staffing to be utilized for investigations related to complaint response and post prosecution investigations

Enforcement
- Complaint Investigations
  - 100% investigation of Z07 swimming pool related complaints
  - 100% investigation of all complaints for properties located within the College Woods Community and other Community Development Agency (CDA) target areas.
  - 60% investigation of all Z06 residential change of use complaints received in 2019
  - 70% investigation of all complaints received in 2019
  - Expand the use of notices of violations/orders to remedy in a controlled and consistent manner

Facilities/Equipment/Technology
- Relocate all enforcement staff from 28 Nassau Avenue to 401 W. Main Street
- Expand use of mobile technology and reduce the dependence of Town Investigators on the traditional office environment
  - Fleet
    - Continue to replace obsolete vehicles
    - Increase number of vehicles
    - Maintain the operation of equipment installed within each vehicle to coincide with reduction of traditional office environment

- Code Amendments
  - Amendments to Chapter 68 Article 50 "Rental Dwelling Units" to ensure that existing practice is consistent with Town of Islip Code requirements

# 1.   Division of Code Enforcement Accomplishments & Objectives – continued

### Goals set for July – December 2019

Administrative
- Implement a standardized orientation and basic training for new Division of Code Enforcement Staff
- Conduct monthly training of enforcement staff

Personnel
- Maintain routine monthly training for the enforcement agents of the Division of Code Enforcement focusing on topics such as such as seasonal condition enforcement, new policies or technology, legal aspects, and professional development.
- 100% New York State Code Enforcement Official training compliance
- 100% of the Supervisory Investigator and 50% of the investigator staff commissioned as Notary Publics

Enforcement
- Complaint Investigations
  - 100% investigation of Z07 swimming pool related complaints
  - 100% investigation of all complaints for properties located within the College Woods Community and other Community Development Agency (CDA) target areas.
  - 75% investigation of all Z06 residential change of use complaints received in 2019
  - 80% investigation of all complaints received in 2019
- Maintain volume of appearance tickets = approximately 5,150
- Annual filings of Declarations of Delinquency increase of 10% = approximately 50

Facilities/Equipment/Technology
  - Complete the transition of enforcement staff to 401 W. Main Street
    - Ensure all information technology and communications systems are completely operational

Code Amendments
  - Chapter 68 Article XLVII "Accessory Apartments" to be drafted in association with the Building Division and Zoning Board of Appeals staff.

2018 SUMMARY REPORT & 2019 GOALS

## 2. **Enforcement and Revenue**

### **2018 Division of Code Enforcement – Appearance Ticket Summary**

| Appearance Tickets | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bay Shore | 58 | 20 | 73 | 92 | 127 | 93 | 118 | 171 | 105 | 107 | 116 | 51 | 1131 |
| Bayport | 3 | 2 | 3 | 2 | 19 | 1 | 19 | 10 | 14 | 0 | 1 | 12 | 86 |
| Bohemia | 0 | 17 | 2 | 7 | 20 | 16 | 5 | 2 | 9 | 16 | 13 | 15 | 122 |
| Brentwood | 105 | 60 | 85 | 178 | 116 | 106 | 101 | 72 | 107 | 142 | 70 | 122 | 1264 |
| Central Islip | 84 | 94 | 121 | 95 | 96 | 61 | 90 | 67 | 79 | 165 | 62 | 84 | 1098 |
| East Islip | 1 | 11 | 17 | 15 | 17 | 7 | 4 | 31 | 11 | 7 | 6 | 7 | 134 |
| Great River | 0 | 0 | 4 | 2 | 2 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 10 |
| Hauppauge | 5 | 2 | 20 | 4 | 7 | 19 | 16 | 3 | 5 | 10 | 13 | 8 | 112 |
| Holbrook | 4 | 9 | 3 | 41 | 24 | 12 | 11 | 17 | 14 | 4 | 14 | 15 | 168 |
| Holtsville | 0 | 0 | 1 | 2 | 2 | 0 | 3 | 2 | 0 | 0 | 2 | 1 | 13 |
| Islip | 13 | 9 | 3 | 9 | 33 | 9 | 7 | 7 | 10 | 11 | 12 | 12 | 135 |
| Islip Terrace | 2 | 0 | 11 | 5 | 27 | 21 | 13 | 40 | 23 | 13 | 2 | 1 | 158 |
| Oakdale | 5 | 8 | 7 | 10 | 6 | 4 | 5 | 6 | 7 | 2 | 8 | 1 | 69 |
| Ronkonkoma | 7 | 34 | 15 | 25 | 19 | 42 | 8 | 19 | 11 | 19 | 19 | 6 | 224 |
| Sayville | 1 | 4 | 9 | 17 | 7 | 17 | 9 | 4 | 5 | 2 | 1 | 0 | 76 |
| West Islip | 19 | 14 | 12 | 28 | 54 | 33 | 14 | 23 | 27 | 15 | 27 | 31 | 297 |
| West Sayville | 3 | 1 | 1 | 7 | 1 | 1 | 0 | 14 | 0 | 0 | 0 | 0 | 28 |
| Fire Island | 0 | 0 | 0 | 5 | 0 | 2 | 2 | 0 | 0 | 3 | 0 | 0 | 12 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 | 7 |
| | | | | | | | | | | | | | |
| 2018 DOCE Total | 310 | 285 | 387 | 544 | 577 | 444 | 425 | 488 | 429 | 516 | 366 | 373 | 5144 |
| 2017 DOCE Total | 369 | 326 | 459 | 231 | 240 | 242 | 359 | 435 | 313 | 319 | 294 | 155 | 3742 |
| 2016 DOCE Total | 231 | 377 | 393 | 490 | 489 | 549 | 400 | 513 | 304 | 271 | 266 | 260 | 4543 |
| 2015 DOCE Total | 290 | 359 | 436 | 485 | 367 | 450 | 385 | 354 | 368 | 262 | 260 | 301 | 4317 |
| 2014 DOCE Total | 353 | 397 | 423 | 401 | 456 | 479 | 451 | 309 | 458 | 396 | 357 | 316 | 4796 |
| 2013 Investigator Total | 256 | 172 | 220 | 335 | 301 | 297 | 308 | 256 | 230 | 304 | 354 | 254 | 3287 |
| 2012 Investigator Total | 117 | 167 | 156 | 129 | 176 | 170 | 165 | 148 | 196 | 178 | 105 | 130 | 1837 |
| 2011 Investigator Total | 241 | 220 | 245 | 240 | 183 | 183 | 175 | 266 | 154 | 160 | 130 | 119 | 2316 |
| 2010 Investigator Total | 242 | 212 | 303 | 316 | 231 | 240 | 201 | 239 | 240 | 202 | 210 | 173 | 2809 |
| 2009 Investigator Total | 180 | 142 | 159 | 228 | 208 | 194 | 244 | 270 | 365 | 386 | 269 | 259 | 2904 |
| Appearance Tickets +/-2018 vs. 2017 | -59 | -41 | -72 | 313 | 337 | 202 | 66 | 53 | 116 | 197 | 72 | 218 | 1402 |

| Declaration of Delinquency requests | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | 47 | 59 | 61 | 71 | 43 | 27 | 32 | 29 | 29 | 50 | 47 | 25 | 520 |
| 2017 | 40 | 53 | 48 | 51 | 33 | 42 | 40 | 38 | 22 | 44 | 62 | 30 | 503 |
| 2016 | 88 | 48 | 65 | 34 | 45 | 64 | 35 | 49 | 45 | 38 | 27 | 27 | 565 |
| 2015 | 31 | 33 | 58 | 71 | 61 | 59 | 31 | 49 | 61 | 77 | 58 | 94 | 683 |
| 2014 | 26 | 12 | 20 | 25 | 7 | 5 | 8 | 39 | 23 | 37 | 22 | 44 | 268 |
| 2013 | 24 | 9 | 12 | 19 | 44 | 29 | 21 | 27 | 14 | 23 | 24 | 48 | 294 |
| +/- 2018 - 2017 | 7 | 6 | 13 | 20 | 10 | -15 | -8 | -9 | 7 | 6 | -15 | -5 | 17 |

## 2.    Enforcement and Revenue - continued

### 2018– Division of Code Enforcement – Closed Complaints & Cases

**Complaints Received and Closed in the Same Calendar Year**

| YEAR | Total Complaints | Total Closed /% | Total Z06 received | Z06 Closed/ % |
|------|------------------|-----------------|--------------------|---------------|
| 2018 | 3734 | 1159/31% | 956 | 86/9% |
| 2017 | 3685 | 1258/34% | 1023 | 135/13% |
| 2016 | 4083 | 1,501/37% | 1141 | 255/22% |
| 2015 | 3934 | 1792/46% | 1097 | 298/27% |
| 2014 | 3997 | 1898/47% | 1078 | 251/23% |
| 2013 | 5479 | 2,988/55% | 1160 | 339/29% |
| 2012 | 6381 | 3752 / 58% | 1196 | 399/33% |
| 2011 | 6946 | 4671 / 67% | 1347 | 656/46% |
| 2010 | 5022 | 3703 / 73% | 1419 | 734/52% |

**Cases Closed by Date of Action**

| YEAR | Appearance tickets | Close Cases |
|------|--------------------|-------------|
| 2018 | 5144 | 3704 |
| 2017 | 3742 | 3259 |
| 2016 | 4543 | 3496 |
| 2015 | 4317 | 3823 |
| 2014 | 4796 | 2988 |
| 2013 | 3287 | 1940 |
| 2012 | 1,837 | 1,474 |
| 2011 | 2,316 | 1,499 |
| 2010 | 2809 | 1425 |

**Complaints Satisfied by Date of Action**

| YEAR | Z06 | All |
|------|-----|-----|
| 2018 | 302 | 2129 |
| 2017 | 393 | 2162 |
| 2016 | 582 | 2,652 |
| 2015 | 568 | 2823 |
| 2014 | 764 | 2217 |
| 2013 | 674 | 3851 |
| 2012 | 940 | 5549 |
| 2011 | 926 | 5718 |
| 2010 | 888 | 5657 |

*Prior to 2012 the Bureau of Fire Prevention & Ordinance Inspectors were part of the Division of Code Enforcement.

**Prior to 2013 all cases were reflective of a complaint, subsequent to 2012 cases and complaints could be acted upon separately.

2018 SUMMARY REPORT & 2019 GOALS

## 2.    Enforcement and Revenue - continued

### 2018 Division of Code Enforcement Revenue – Fees

| 2018 | Sign Permit | Rental Occupancy Permits | | Violation Searches* | Misc. | Total $ |
|---|---|---|---|---|---|---|
| | | Single Family | Two Family | | | |
| January | $ 2,594.30 | $ 24,525.00 | $ 8,000.00 | $ 23,700.00 | $ (1,072.80) | $ 57,746.50 |
| February | $ - | $ 20,000.00 | $ 6,000.00 | $ 20,000.00 | $ - | $ 46,000.00 |
| March | $ - | $ 27,000.00 | $ 9,000.00 | $ 26,800.00 | $ - | $ 62,800.00 |
| April | $ - | $ 26,500.00 | $ 4,250.00 | $ 29,450.00 | $ (550.00) | $ 59,650.00 |
| May | $ - | $ 24,250.00 | $ 4,000.00 | $ 27,750.00 | $ - | $ 56,000.00 |
| June | $ - | $ 25,750.00 | $ 10,000.00 | $ 27,350.00 | $ - | $ 63,100.00 |
| July | $ - | $ 24,250.00 | $ 5,000.00 | $ 26,650.00 | $ - | $ 55,900.00 |
| August | $ - | $ 29,760.00 | $ 6,500.00 | $ 59,400.00 | $ (250.00) | $ 95,410.00 |
| September | $ - | $ 12,250.00 | $ 4,000.00 | $ 24,050.00 | $ - | $ 40,300.00 |
| October | $ - | $ 31,250.00 | $ 4,500.00 | $ 25,450.00 | $ - | $ 61,200.00 |
| November | $ - | $ 20,000.00 | $ 8,000.00 | $ 24,250.00 | $ - | $ 52,250.00 |
| December | $ - | $ 23,000.00 | $ 4,000.00 | $ 16,850.00 | $ - | $ 43,850.00 |

| | Sign Permit | Single Family | Two Family | Violation Searches | Misc. | Total |
|---|---|---|---|---|---|---|
| Totals | $ 2,594.30 | $ 288,535.00 | $ 73,250.00 | $ 331,700.00 | $ (1,872.80) | $ 694,206.50 |
| 2018 Monthly Average | N/A | $ 24,044.58 | $ 6,104.17 | $ 27,641.67 | $ (156.07) | $ 57,850.54 |
| 2017 Monthly Average | $ 2,667.04 | $ 23,812.50 | $ 7,708.33 | $ 24,570.56 | $ (99.83) | $ 58,658.60 |
| 2016 Monthly Average | $ 3,811.00 | $ 24,104.17 | $ 5,750.00 | $ 21,703.67 | $ (39.50) | $ 55,329.34 |
| 2015 Monthly Average | $ 2,185.02 | $ 24,083.33 | $ 7,187.50 | $ 18,277.50 | $ (104.17) | $ 51,629.18 |

2018 SUMMARY REPORT & 2019 GOALS

## 2.    Enforcement and Revenue – continued

### 2018 Division of Code Enforcement Revenue – Fees

**Annual Fees Collected - Division of Code Enforcement**

| | *SIGN PERMTS* | *SINGLE FAMILY RENTAL PERMITS* | *TWO FAMILY RENTAL PERMITS* | *VIOLATION SEARCHES* | *MISC. FOR CODE ENFORCEMENT* | *TOTAL* |
|---|---|---|---|---|---|---|
| 2018 | $ 2,594.30 | $ 288,535.00 | $ 73,250.00 | $ 331,700.00 | $ (1,872.80) | $ 694,206.50 |
| 2017 | $ 32,004.50 | $ 285,750.00 | $ 92,500.00 | $ 294,846.73 | $ (1,198.00) | $ 703,903.23 |
| 2016 | $ 45,731.98 | $ 289,250.00 | $ 69,000.00 | $ 260,444.00 | $ (474.00) | $ 663,951.98 |
| 2015 | $ 26,220.28 | $ 289,000.00 | $ 86,250.00 | $ 219,330.00 | $ (1,250.00) | $ 619,550.28 |
| 2014 | $ 28,365.54 | $ 267,285.00 | $ 78,700.00 | $ 194,850.00 | $ - | $ 569,200.54 |
| 2013 | $ 26,433.06 | $ 226,140.00 | $ 72,260.00 | $ 203,750.00 | $ 3,195.00 | $ 531,778.06 |
| 2012 | $ 21,754.58 | $ 283,940.00 | $ 90,000.00 | $ 191,825.00 | $ 7,057.00 | $ 594,576.58 |
| 2011 | $ 34,664.90 | $ 242,310.00 | $ 97,000.00 | $ 160,400.00 | $ 8,170.00 | $ 542,544.90 |
| 2010 | $ 29,243.17 | $ 220,000.00 | $ 58,000.00 | $ 189,800.00 | $ 18,270.00 | $ 515,313.17 |
| 2009 | $ 21,723.24 | $ 216,770.00 | $ 89,860.00 | $ 206,050.00 | $ 31,750.00 | $ 566,153.24 |
| 2008 | $ 17,348.90 | $ 203,370.00 | $ 49,010.00 | $ 210,050.00 | $ 30,330.00 | $ 510,108.90 |
| 2007 | $ 14,307.88 | $ 211,560.00 | $ 89,500.00 | $ 310,350.00 | $ 11,370.00 | $ 637,087.88 |
| 2006 | $ 22,976.42 | $ 166,050.00 | $ 55,330.00 | $ 413,200.00 | $ 5,415.00 | $ 662,971.42 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Average | n/a | $ 245,381.54 | $ 76,973.85 | $ 245,122.75 | $ 8,520.17 | $ 600,872.82 |

## 2.   **Enforcement and Revenue - continued**

### 2018 Division of Code Enforcement Revenue - Fines

In 2018, 5th District Court fine revenue was $1,005,285.00, which decreased from 2017 by only $136,330.00. Judgments collected resulting from fines not paid to the court in a timely manner reached $280,143.54 in 2018. This revenue combined was nearly than $1.3 million.

The amount of fines imposed in district court in the calendar year for Division of Code Enforcement violations was $1,059,150.00, which is $195,075.00 less than fines levied in 2017.

| YEAR | Fines Collected | # of A.T.s | Average Fine |
|------|-----------------|------------|--------------|
| 2006 | $ 426,000.00 | 2478 | $ 171.91 |
| 2007 | $ 369,000.00 | 2184 | $ 168.96 |
| 2008 | $ 322,000.00 | 2294 | $ 140.36 |
| 2009 | $ 578,000.00 | 3718 | $ 155.46 |
| 2010 | $ 601,165.00 | 3624 | $ 165.88 |
| 2011 | $ 323,450.00 | 3090 | $ 104.68 |
| 2012 | $ 528,944.00 | 2533 | $ 208.82 |
| 2013 | $ 693,080.00 | 3934 | $ 176.18 |
| 2014 | $ 1,329,773.00 | 5464 | $ 243.37 |
| 2015 | $ 1,390,623.00 | 4708 | $ 295.37 |
| 2016 | $ 1,143,335.00 | 5,032 | $ 227.21 |
| 2017 | $ 1,141,615.00 | 4,417 | $ 258.46 |
| 2018 | $ 1,005,285.00 | 5,144 | $ 195.43 |
| Average | $ 757,866.92 | 3740 | $ 193.24 |

The District Court fines recorded below are reported within the month collected by the court.

| | 2018 | 2017 | 2016/2017 +/- |
|------|------|------|----------------|
| January | $ 80,135 | $ 79,670 | $ 465 |
| February | $ 72,240 | $ 89,475 | $ (17,235) |
| March | $ 71,975 | $ 101,820 | $ (29,845) |
| April | $ 79,955 | $ 74,985 | $ 4,970 |
| May | $ 88,880 | $ 101,040 | $ (12,160) |
| June | $ 70,730 | $ 107,220 | $ (36,490) |
| July | $ 77,440 | $ 80,574 | $ (3,134) |
| August | $ 92,660 | $ 117,681 | $ (25,021) |
| September | $ 99,045 | $ 104,200 | $ (5,155) |
| October | $ 131,075 | $ 113,665 | $ 17,410 |
| November | $ 77,600 | $ 80,565 | $ (2,965) |
| December | $ 63,550 | $ 90,720 | $ (27,170) |
| Total | $ 1,005,285 | $ 1,141,615 | $ (136,330) |

## 2.  **Enforcement and Revenue - continued**

**Division of Code Enforcement Revenue – Fines continued**

Average fine revenue per Investigator

In 2018, the average fine revenue for each appearance ticket prosecuted in 5th District Court decreased by $63.03 (nearly 25%), from $258.46 to $195.43.  However, the average fine revenue generated by an Investigator increased as result of a significant increase in the total amount of appearance tickets issued by the division.  The average amount of appearance tickets issued per Investigator was 312 compared to 220 in 2017.

| **2018  Investigators statistics** | | |
|---|---|---|
| Enforcement Staff (Including Supervisory & Part Time) | | **16.5** |
| Total 5th District Court appearance tickets served | | **5144** |
| Total 5th District Court fine revenue | $ | **1,005,285.00** |
| Average fine per appearance ticket served | | **$195.43** |
| Average total of appearance tickets served per Investigator | | **312** |
| Average fine revenue per Investigator | | **$60,974.16** |

| **2017  Investigators statistics** | |
|---|---|
| Enforcement Staff (Including Supervisory & Part Time) | **17** |
| Total 5th District Court appearance tickets served | **4417** |
| Total 5th District Court fine revenue | $1,141,615.00 |
| Average fine per appearance ticket served | $258.46 |
| Average total of appearance tickets served per Investigator | 220 |
| Average fine revenue per Investigator | **$56,861.20** |

| **2016  Investigators statistics** | |
|---|---|
| Enforcement Staff (Including Supervisory & Part Time) | 15.5 |
| Total 5th District Court appearance tickets served | 5032 |
| Total 5th District Court fine revenue | $1,143,335.00 |
| Average fine per appearance ticket served | $227.21 |
| Average total of appearance tickets served per Investigator | 293 |
| Average fine revenue per Investigator | **$66,572.53** |

2018 SUMMARY REPORT & 2019 GOALS

## 2.    Enforcement and Revenue - continued

### 2018 Division of Code Enforcement Complaint Records

2018 Division of Code Enforcement complaints by type and month

| 2018 | | Jan. | Feb. | March | April | May | June | July | Aug. | Sept. | Oct. | Nov. | Dec. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| H01 | Article L - Rental Occupancy Permit | 5 | 1 | 1 | 4 | 4 | 2 | 1 | 7 | 3 | 3 | 2 | 5 | 38 |
| RPM02 | Residential Property Maintenance- Litter | 10 | 16 | 11 | 23 | 32 | 57 | 36 | 20 | 24 | 15 | 11 | 14 | 269 |
| RPM03 | Residential Property Maintenance -Habitable Space Requirements | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| RPM04 | Residential Property Maintenance- Exterior Structure | 2 | 1 | 5 | 2 | 8 | 7 | 4 | 10 | 5 | 1 | 2 | 1 | 48 |
| RPM05 | Residential Property Maintenance- Roof | 4 | 0 | 1 | 1 | 2 | 0 | 2 | 1 | 1 | 0 | 0 | 0 | 12 |
| RPM06 | Residential Property Maintenance- Smoke Alarms | 1 | 0 | 0 | 1 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| RPM07 | Residential Property Maintenance- Plumbing issues | 0 | 1 | 0 | 0 | 1 | 1 | 1 | 0 | 2 | 1 | 0 | 3 | 10 |
| RPM08 | Residential Property Maintenance- No water | 2 | 2 | 6 | 2 | 1 | 3 | 0 | 2 | 1 | 4 | 1 | 0 | 24 |
| RPM09 | Residential Property Maintenance- Interior Maintenance | 0 | 0 | 1 | 1 | 1 | 0 | 2 | 1 | 3 | 1 | 2 | 0 | 12 |
| RPM10 | Residential Property Maintenance- Sewage | 1 | 0 | 0 | 3 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 8 |
| RPM11 | Residential Property Maintenance- No Water/Hot Water Supply | 0 | 0 | 1 | 0 | 1 | 0 | 1 | 0 | 0 | 2 | 0 | 0 | 5 |
| RPM12 | Residential Property Maintenance- No Heat/hot water 9/15-5/31 | 10 | 4 | 3 | 4 | 2 | 0 | 0 | 0 | 0 | 6 | 12 | 1 | 42 |
| RPM13 | Residential Property Maintenance- Electrical system | 0 | 0 | 0 | 1 | 2 | 2 | 3 | 3 | 1 | 3 | 2 | 0 | 17 |
| RPM14 | Residential Property Maintenance- Appliance maintenance | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 | 3 |
| RPM18 | Residential Property Maintenance- Carbon Monoxide Alarms | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 | 0 | 0 | 4 |
| RPM20 | Residential Property Maintenance- Sidewalk Obstructions | 1 | 0 | 1 | 0 | 3 | 15 | 11 | 3 | 3 | 1 | 0 | 2 | 40 |
| RPM30 | Residential Property Maintenance- Excessive Vegetation | 1 | 1 | 1 | 4 | 87 | 147 | 71 | 80 | 53 | 21 | 2 | 0 | 468 |
| RPM99 | Residential Property Maintenance- Miscellaneous | 7 | 1 | 3 | 8 | 0 | 7 | 6 | 8 | 4 | 1 | 0 | 4 | 49 |
| S99 | Sign | 0 | 8 | 0 | 4 | 7 | 6 | 2 | 22 | 0 | 2 | 0 | 0 | 51 |
| Z01 | Outdoor Storage | 39 | 46 | 50 | 64 | 45 | 86 | 39 | 85 | 33 | 52 | 31 | 27 | 597 |
| Z03 | Sight Obstruction | 2 | 3 | 6 | 3 | 11 | 20 | 16 | 21 | 22 | 13 | 5 | 4 | 126 |
| Z04 | Fence/Walls | 1 | 1 | 3 | 5 | 4 | 5 | 8 | 2 | 0 | 3 | 1 | 1 | 34 |
| Z05 | Building Division Permit Required | 9 | 7 | 8 | 25 | 17 | 17 | 10 | 14 | 9 | 12 | 8 | 15 | 151 |
| Z06 | Change of Use - housing | 77 | 69 | 53 | 58 | 90 | 146 | 89 | 75 | 74 | 89 | 56 | 77 | 953 |
| Z07 | Swimming Pool related | 7 | 7 | 6 | 12 | 20 | 28 | 27 | 12 | 16 | 6 | 5 | 3 | 149 |
| Z08 | Equine Violations | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 3 |
| Z09 | Poultry | 1 | 1 | 3 | 3 | 5 | 0 | 3 | 3 | 2 | 0 | 1 | 0 | 22 |
| Z10 | Pigeons | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| Z11 | Restrictive Covenants | 0 | 1 | 0 | 0 | 5 | 0 | 0 | 4 | 0 | 0 | 0 | 0 | 10 |
| Z12 | Commercial Vehicle Parking | 6 | 6 | 4 | 12 | 10 | 27 | 14 | 11 | 7 | 8 | 6 | 17 | 128 |
| Z14 | Change of Use - Land | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Z15 | Improper Boat Storage | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 |
| Z16 | Light Emanating | 0 | 0 | 0 | 1 | 1 | 0 | 2 | 3 | 4 | 1 | 2 | 0 | 14 |
| Z17/Z18 | Re-grading/Clearing | 0 | 1 | 2 | 5 | 4 | 1 | 1 | 2 | 5 | 0 | 1 | 1 | 23 |
| Z19 | Prohibited Uses | 8 | 14 | 12 | 12 | 9 | 38 | 12 | 20 | 12 | 10 | 12 | 15 | 174 |
| Z21 | Curb Cut Permit Requirements | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Z23 | Graffiti | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Z25 | Peddler | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Z26 | Snow removal/Sidewalk Obstruction | 16 | 0 | 4 | 0 | 0 | 3 | 2 | 0 | 0 | 2 | 0 | 0 | 27 |
| Z99 | Miscellaneous Zoning | 13 | 8 | 10 | 4 | 7 | 39 | 29 | 32 | 24 | 14 | 11 | 19 | 210 |
| TOTAL | | 224 | 200 | 197 | 263 | 383 | 662 | 395 | 445 | 308 | 274 | 173 | 210 | 3734 |

## 2.   **Enforcement and Revenue - continued**

### **2018 Division of Code Enforcement Complaint Records**

#### 2014-2018 Complaints by type comparison

| Complaint Code | Complaint Type | 2014 | 2015 | 2016 | 2017 | 2018 | Average |
|---|---|---|---|---|---|---|---|
| H01 | Article L - Rental Occupancy Permit | 123 | 122 | 35 | 65 | 38 | **77** |
| H99 | Misc. Housing | 32 | 86 | | | | **86** |
| RPM03 | Residential Property Maintenance-Habitable Space Requirements | | | 4 | 2 | 1 | **3** |
| RPM04 | Residential Property Maintenance- Exterior Structure | | | 62 | 42 | 48 | **52** |
| RPM05 | Residential Property Maintenance- Roof | | | 7 | 9 | 12 | **8** |
| RPM06 | Residential Property Maintenance- Smoke Alarms | | | 6 | 1 | 5 | **4** |
| RPM07 | Residential Property Maintenance- Plumbing issues | | | 12 | 11 | 10 | **12** |
| RPM08 | Residential Property Maintenance- No water | | | 25 | 17 | 24 | **21** |
| RPM09 | Residential Property Maintenance- Interior Maintenance | | | 10 | 11 | 12 | **11** |
| RPM10 | Residential Property Maintenance- Sewage | | | 17 | 7 | 8 | **12** |
| RPM11 | Residential Property Maintenance- No Water/Hot Water Supply | | | 5 | 5 | 5 | **5** |
| RPM12 | Residential Property Maintenance- No Heat/hot water 9/15-5/31 | | | 33 | 43 | 42 | **38** |
| RPM13 | Residential Property Maintenance- Electrical system | | | 9 | 14 | 17 | **12** |
| RPM14 | Residential Property Maintenance- Appliance maintenance | | | 3 | 3 | 3 | **3** |
| RPM18 | Residential Property Maintenance- Carbon Monoxide Alarms | | | 0 | 1 | 4 | **1** |
| RPM20 | Residential Property Maintenance- Sidewalk Obstructions | | | 35 | 41 | 40 | **38** |
| RPM30/Z30 | Residential Property Maintenance- Excessive Vegetation | 558 | 466 | 578 | 545 | 468 | **523** |
| RPM99 | Residential Property Maintenance- Miscellaneous | | | 48 | 50 | 49 | **49** |
| S99 | Sign | 14 | 21 | 29 | 50 | 51 | **33** |
| Z01 | Outdoor Storage | 429 | 455 | 583 | 38 | 597 | **420** |
| RPM02/Z02 | Residential Property Maintenance- Litter | 123 | 248 | 347 | 686 | 269 | **335** |
| Z03 | Sight obstructions | 127 | 66 | 87 | 73 | 126 | **96** |
| Z04 | Fence | 27 | 52 | 87 | 52 | 34 | **50** |
| Z05 | Building Division Permit Required | 265 | 199 | 213 | 182 | 151 | **202** |
| Z06 | Change of Use - housing | 1074 | 1099 | 1141 | 1023 | 953 | **1058** |
| Z07 | Pool related | 141 | 176 | 185 | 138 | 149 | **158** |
| Z08/Z09 | Equine/Poultry | 16 | 21 | 36 | 7 | 25 | **21** |
| Z10 | Pigeons | 5 | 2 | 0 | 21 | 1 | **6** |
| Z11 | Restrictive covenants | 8 | 5 | 1 | 3 | 10 | **5** |
| Z12 | Commercial vehicle parking | 214 | 164 | 122 | 16 | 128 | **129** |
| Z15 | Improper boat storage | 0 | 1 | 4 | 96 | 3 | **21** |
| Z16 | Light emanating | 9 | 17 | 10 | 3 | 14 | **11** |
| Z17/Z18 | Re-grading/clearing | 24 | 28 | 13 | 0 | 23 | **18** |
| Z19 | Prohibited uses | 169 | 174 | 122 | 23 | 174 | **132** |
| Z20 | Residential Property Maintenance- Sidewalk Obstructions | 36 | 70 | 47 | 17 | 0 | **34** |
| Z21 | Curb cut | 2 | 6 | 0 | 88 | 0 | **19** |
| Z23 | Graffiti | 65 | 39 | 56 | 0 | 2 | **32** |
| Z26 | Snow Removal | 75 | 105 | 0 | 17 | 27 | **45** |
| Z99 | misc. zoning | 384 | 309 | 106 | 40 | 210 | **210** |
| | other | 81 | 16 | 5 | 70 | 1 | **35** |
| **TOTAL** | | 4001 | 3947 | 4083 | 3685 | 3734 | **3929** |

2018 SUMMARY REPORT & 2019 GOALS

## 2.    Enforcement and Revenue – continued

### 2018 Hamlet Complaint and Enforcement Analysis

### 2018 Complaints and Closing Actions by Hamlet

All Complaints (including Z06)

Illegal Multiple Dwelling (Z06) Complaints - §68-25B(1)

| Hamlet | Complaints Closed in 2018 | % of Complaints Closed in 2018 | Cases Closed in 2018 | % of Cases Closed in 2018 | Complaints Received in 2018 | % of Complaints Received in 2018 | Z06 Complaints Closed in 2018 | % of Closed Z06 Cases in 2018 | Z06 Cases Closed 2018 | % of Closed Z06 Cases in 2018 | Z06 Complaints Received in 2018 | % of Z06 Complaints Received in 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bay Shore | 451 | 21.18% | 773 | 20.87% | 911 | 24.39% | 62 | 20.53% | 40 | 18.26% | 272 | 28.45% |
| Bayport | 27 | 1.27% | 71 | 1.92% | 48 | 1.28% | 3 | 0.99% | 4 | 1.83% | 12 | 1.25% |
| Bohemia | 57 | 2.68% | 116 | 3.13% | 80 | 2.14% | 11 | 3.64% | 11 | 5.02% | 15 | 1.56% |
| Brentwood | 346 | 16.25% | 641 | 17.31% | 639 | 17.11% | 64 | 21.19% | 39 | 17.81% | 225 | 23.53% |
| Central Islip | 445 | 20.90% | 686 | 18.52% | 743 | 19.89% | 66 | 21.85% | 60 | 27.40% | 145 | 15.16% |
| East Islip | 75 | 3.52% | 171 | 4.62% | 144 | 3.85% | 12 | 3.97% | 10 | 4.57% | 23 | 2.40% |
| Great River | 10 | 0.47% | 14 | 0.38% | 13 | 0.34% | 0 | 0.00% | 0 | 0.00% | 3 | 0.31% |
| Hauppauge | 46 | 2.16% | 91 | 2.46% | 69 | 1.84% | 6 | 1.99% | 3 | 1.37% | 19 | 1.98% |
| Holbrook | 70 | 3.29% | 129 | 3.48% | 113 | 3.02% | 4 | 1.32% | 3 | 1.37% | 23 | 2.40% |
| Holtsville | 7 | 0.33% | 15 | 0.40% | 12 | 0.32% | 0 | 0.00% | 0 | 0.00% | 5 | 0.52% |
| Islip | 89 | 4.18% | 134 | 3.62% | 145 | 3.88% | 9 | 2.98% | 4 | 1.83% | 39 | 4.07% |
| Islip Terrace | 74 | 3.48% | 127 | 3.43% | 145 | 3.88% | 4 | 1.32% | 3 | 1.37% | 33 | 3.45% |
| Oakdale | 63 | 2.96% | 116 | 3.13% | 86 | 2.30% | 10 | 3.31% | 4 | 1.83% | 16 | 1.67% |
| Ronkonkoma | 115 | 5.40% | 187 | 5.05% | 178 | 4.76% | 22 | 7.28% | 15 | 6.85% | 43 | 4.49% |
| Sayville | 71 | 3.33% | 127 | 3.49% | 106 | 2.83% | 6 | 1.99% | 11 | 5.02% | 17 | 1.77% |
| West Islip | 157 | 7.47% | 255 | 6.88% | 250 | 6.69% | 22 | 7.28% | 11 | 5.02% | 62 | 6.48% |
| W. Sayville | 17 | 0.80% | 33 | 0.89% | 18 | 0.48% | 1 | 0.33% | 0 | 0.00% | 4 | 0.41% |
| other | 0 | 0.00% | 18 | 0.49% | 34 | 0.91% | 0 | 0.00% | 1 | 0.46% | 0 | 0.00% |
| Total | 2120 | 100% | 3704 | 100% | 3734 | 100% | 302 | 100% | 219 | 100% | 956 | 100% |

2018 SUMMARY REPORT & 2019 GOALS

## 2.   **Enforcement and Revenue – continued**

### **2018 Hamlet Complaint and Enforcement Analysis- continued**

### <u>2018 Complaints and Enforcement Actions by Hamlet</u>

All Complaints (including Z06)  —  <u>Illegal Multiple Dwelling (Z06) Complaints - §68-25B(1)</u>

| Hamlet | Appearance Tickets Issued 2018 | % of 2018 Appearance Tickets issued | D.O.D. Requests All Types | % of D.O.D. Requests All Types | Complaints Received in 2018 | % of Complaints Received in 2018 | 68-25B(1) A.T.s Issued 2018 | % of 68-25B(1) AT's Issued | D.O.D. Requests Z06 Only | % D.O.D. Requests Z06 | Z06 Complaints Received in 2018 | % of Z06 Complaints Received 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bay Shore | 1131 | 21.99% | 93 | 17.75% | 911 | 24.39% | 40 | 20.94% | 2 | 14.29% | 272 | 28.45% |
| Bayport | 86 | 1.67% | 3 | 0.57% | 48 | 1.28% | 2 | 1.05% | 0 | 0.00% | 12 | 1.25% |
| Bohemia | 122 | 2.37% | 18 | 3.44% | 80 | 2.14% | 3 | 1.57% | 0 | 0.00% | 15 | 1.56% |
| Brentwood | 1264 | 24.57% | 125 | 23.85% | 639 | 17.11% | 62 | 32.46% | 2 | 14.29% | 225 | 23.53% |
| Central Islip | 1098 | 21.35% | 112 | 21.37% | 743 | 19.89% | 46 | 24.08% | 7 | 50.00% | 145 | 15.16% |
| East Islip | 134 | 2.60% | 12 | 2.29% | 144 | 3.85% | 2 | 1.05% | 1 | 7.14% | 23 | 2.40% |
| Great River | 10 | 0.19% | 3 | 0.57% | 13 | 0.34% | 0 | 0.00% | 0 | 0.00% | 3 | 0.31% |
| Hauppauge | 112 | 2.18% | 13 | 2.48% | 69 | 1.84% | 1 | 0.52% | 0 | 0.00% | 19 | 1.98% |
| Holbrook | 168 | 3.27% | 21 | 4.01% | 113 | 3.02% | 4 | 2.09% | 0 | 0.00% | 23 | 2.40% |
| Holtsville | 13 | 0.25% | 1 | 0.19% | 12 | 0.32% | 0 | 0.00% | 0 | 0.00% | 5 | 0.52% |
| Islip | 135 | 2.62% | 16 | 3.05% | 145 | 3.88% | 4 | 2.09% | 0 | 0.00% | 39 | 4.07% |
| Islip Terrace | 158 | 3.07% | 12 | 2.29% | 145 | 3.88% | 3 | 1.57% | 0 | 0.00% | 33 | 3.45% |
| Oakdale | 69 | 1.34% | 13 | 2.48% | 86 | 2.30% | 1 | 0.52% | 0 | 0.00% | 16 | 1.67% |
| Ronkonkoma | 224 | 4.35% | 28 | 5.34% | 178 | 4.76% | 8 | 4.19% | 0 | 0.00% | 43 | 4.49% |
| Sayville | 76 | 1.48% | 11 | 2.10% | 106 | 2.83% | 1 | 0.52% | 0 | 0.00% | 17 | 1.77% |
| West Islip | 297 | 5.77% | 35 | 6.68% | 250 | 6.69% | 13 | 6.81% | 2 | 14.28% | 62 | 6.48% |
| W. Sayville | 28 | 0.50% | 7 | 1.34% | 18 | 0.48% | 0 | 0.00% | 0 | 0.00% | 4 | 0.41% |
| other | 19 | 0.37% | 1 | 0.19% | 34 | 0.91% | 1 | 0.52% | 0 | 0.00% | 0 | 0.00% |
| Total | 5144 | 100% | 524 | 100% | 3734 | 100% | 191 | 100% | 14 | 100% | 956 | 100% |

Jason Mistretta, Chief Town Investigator

## 2.    Enforcement and Revenue - continued

### 2018 Annual Summary of Complaints & Actions with Hamlet Comparison Details

In 2018, the Division of Code Enforcement primarily conducted enforcement actions in response to complaints received which alleged violations of Town of Islip code at residential properties.  The Central Complaint Bureau recorded 3734 complaints, which alleged violations for which the Division of Code Enforcement has enforcement responsibility.  In addition to the complaints received in 2018, other enforcement activity was conducted based on complaints and cases initiated in prior years and limited non-complaint based enforcement initiatives.

#### General Performance Measures

The enforcement action taken by the Division of Code Enforcement is measured in complaint and case volume processed and investigated, closed cases and satisfied complaints, appearance tickets served, and delinquency proceedings filed.

Complaint- Complaints are generated upon receipt of an allegation of code violations.  Complaints are primarily received from constituents but may also be reported by municipal employees, both from within the Town of Islip or other municipal organizations, who identify or receive complaints of alleged violations in their official capacity.   Complaints may be satisfied administratively or after a case is generated and the investigation is completed.

Case – Cases are generated when a complaint is assigned for investigation or when an enforcement agent initiates an investigation based on observations made independent of a complaint.

Appearance ticket- An appearance ticket may be created by enforcement agents authorized within TOI §2-2 to initiate prosecution of a code violation.  The service of appearance tickets is the primary method used to attain violation resolution.

Declaration of delinquency – Declaration of delinquency proceedings are requested to re-establish prosecution when a defendant fails to comply with conditions of discharge imposed during the earlier disposition of an appearance ticket(s).

## 2.   __Enforcement and Revenue - continued__

### __2018 Annual Summary of Complaints & Actions with Hamlet Comparison Details- continued__

_Bay Shore_

**Complaints**

In 2018, the hamlet of Bay Shore was subject to 911 complaints, the highest number of complaints for an individual hamlet (24.4% of all complaints) and a substantial increase from 2017 (677 total complaints).

272 complaints were Z06 type complaints, which allege the change of occupancy of a single or two family dwelling. These complaints are colloquially known as "illegal multiple family dwellings." Bay Shore received 28.45% of all Z06 type complaints received in 2018, which is more than any other hamlet.

**Enforcement Action**

Bay Shore was subject to the 2nd greatest share of appearance tickets for all types of violations (1131) and of change of occupancy violations associated with illegal multiple family dwellings (40).

In 2018, 93 delinquency recommendations were filed with the Division of Law Enforcement (17.75% of all D.O.D. recommendations) for properties within Bay Shore.

**Concluded Cases & Complaints**

In 2018, 451 complaints (21.2 % of all complaints) satisfied were for properties located in Bay Shore.  773 cases (20.9% of all cases) were closed for properties located in Bay Shore.  The volume of complaints closed for properties in Bay Shore was the most of all hamlets.

62 Z06 type complaints were satisfied related to Bay Shore properties in 2018 (20.5% of all Z06 complaints) and 40 Z06 type cases were closed.

## 2.    **Enforcement and Revenue - continued**

### **2018 Annual Summary of Complaints & Actions with Hamlet Comparison Details- continued**

#### *Brentwood*

#### **Complaints**

In 2018, the hamlet of Brentwood was subject to 639 complaints, the 3rd most complaints for an individual hamlet and 17.1% of the total complaints received.

225 were Z06 type complaints, which allege a change of occupancy of a single or two family dwelling.  Brentwood received 23.5% of all Z06 type complaints, which is more than any other hamlet.

#### **Enforcement Action**

Brentwood was subject to issuance of the greatest number of appearance tickets for all types of code violations (1,264) and of change of occupancy violations associated with illegal multiple family dwellings (62).

Brentwood was also the hamlet subject to the most delinquency recommendations for properties, which did not comply with district court sentencing conditions.  In 2018, 125 recommendations for delinquency were filed with the Division of Law Enforcement (23.9% of all D.O.D. Recommendations).

#### **Concluded Cases & Complaints**

In 2018, 346 complaints (16.25 % of all complaints satisfied) were satisfied for properties located in Brentwood.  773 cases were closed for properties located in Brentwood representing 17.3% of all closed cases.  The amount of cases closed for properties in Brentwood was the 3rd most of all hamlets.

64 Z06 type complaints were satisfied related to Brentwood properties in 2018, which represents 21.2% of all satisfied Z06 type complaints, and 39 Z06 type cases were closed.

## 2.   **Enforcement and Revenue - continued**

### **2018 Annual Summary of Complaints & Actions with Hamlet Comparison Details- continued**

#### *Central Islip*

**Complaints**

In 2018, Central Islip received the 2nd highest volume of total complaints.  Central Islip received 743 total complaints, which represents 19.9% of all complaints received.

145 of those complaints were Z06 type complaints, which allege the change of use of a single or two family dwelling. The hamlet of Central Islip received the 3rd most (15.2%) of all the Z06 type complaints.

**Enforcement Action**

Central Islip received the 3rd highest amount of appearance tickets for all types of violations (1089) and of change of use violations associated with illegal multiple family dwellings (46).

In 2018, Division of Code Enforcement filed 112 delinquency recommendations with the Division of Law Enforcement (21.4% of all delinquency recommendations).

**Concluded Cases & Complaints**

In 2018, 445 complaints (20.9% of complaints for all hamlets) were satisfied for properties located in the hamlet of Central Islip.  686 cases (18.52% of cases for all hamlets) were closed for properties located in Central Islip.  The volume of complaints and cases closed for properties in Central Islip was 2nd most of all hamlets.

Central Islip was subject to the 3rd highest volume of Z06 type complaints (145), and 66 Z06 type complaints were satisfied in 2018 (21.9% of all Z06 complaints).

#### **Hamlet Enforcement Summary**

The hamlets of Brentwood, Bay Shore, and Central Islip combined were subject to 2,293 complaints in 2018, representing 61% of all complaints and 67% of all Z06 type complaints.

It is important to note the relationship between Z06 type complaints and the enforcement actions commonly associated with conditions found at properties for which the use has been changed from a single or two family dwelling.  There are typically numerous violations associated with change of occupancy complaints, e.g. constructed alterations to the plumbing system(s), interior and exterior alterations to the dwelling, rental occupancy, and property maintenance deficiencies.  As a result, the amount of violations often associated with Z06 type complaints, in conjunction with the fact that the Division of Code Enforcement is almost entirely responsive to complaints, the properties within the hamlets of Brentwood, Bay Shore, and Central Islip were the subject of 3,439 appearance tickets (67.9%), 330 delinquency requests (62.9%), 1,242 satisfied complaints (58.3%) and 2,100 closed cases (56.7%).

2018 SUMMARY REPORT & 2019 GOALS

## 2.    **Enforcement and Revenue – continued**

### **2018 Enforcement Initiatives**

In 2018, the Division of Code Enforcement conducted investigations and enforcement actions, which were primarily complaint based; however, there were two distinct enforcement initiatives conducted in 2018, which were not complaint based and a third, which was an investigative initiative that was grant funded and did not involve enforcement (attachment C).  The intent of the enforcement initiatives was to target specific conditions not effectively addressed based solely on constituent complaints.  The initiatives were crafted to be measurable throughout execution, ensuring both efficacy and efficiency of the violation resolution.

The Quality of Life Enforcement Initiative (attachment A) was implemented the week ending June 3nd 2018.  The Expired Rental Occupancy Permit Enforcement Initiative (attachment B) was implemented in 2016 and was conducted throughout 2018.

### *The Quality of Life Enforcement Initiative*

Full time Investigators using overtime and a part time Town Investigator conducted the Quality of Life Enforcement Initiative from Memorial Day through Labor Day.  Enforcement rotated between hamlets week to week and the Investigators conducted this patrol enforcement throughout the summer.

Information posted on the Town of Islip website reminded residents of their responsibility to maintain their properties in compliance with the Town of Islip Code and advised them to expect focused enforcement throughout the summer.

The Division of Code Enforcement issued 301 appearance tickets for alleged violations of Chapter 6A Residential Property Maintenance, outdoor storage of unregistered vehicles, and the parking of commercial vehicles.

As of January 2019, approximately 81% of the cases prosecuted related to these violations have been concluded, resulting in $39,900.00 in fine revenue.   The overall labor cost of this initiative was approximately $11,679.92, yielding $28,220.08 in positive revenue while addressing 301 individual violations.  These violations would likely have remained unaddressed if not for this initiative.

| W/E | Initiative | # AT | Max. Fine | Actual Fine | Permit Fees | Total Revenue | Personnel Est. Cost | $ +/- |
|---|---|---|---|---|---|---|---|---|
| 6/2/2018 | QOL | 24 | $ 43,000.00 | $ 2,900.00 | | $ 2,900.00 | $ (897.72) | $ 2,002.28 |
| 6/9/2018 | QOL | 37 | $ 73,000.00 | $ 2,100.00 | | $ 2,100.00 | $ (642.68) | $ 1,457.32 |
| 6/16/2018 | QOL | 20 | $ 56,000.00 | $ 3,400.00 | | $ 3,400.00 | $ (952.76) | $ 2,447.24 |
| 6/23/2018 | QOL | 14 | $ 26,000.00 | $ 1,150.00 | | $ 1,150.00 | $ (952.76) | $ 197.24 |
| 6/30/2018 | QOL | 27 | $ 78,000.00 | $ 4,500.00 | | $ 4,500.00 | $ (897.72) | $ 3,602.28 |
| 7/7/2018 | QOL | 14 | $ 27,500.00 | $ 3,000.00 | | $ 3,000.00 | $ (952.76) | $ 2,047.24 |
| 7/14/2018 | QOL | 3 | $ 6,000.00 | $ 200.00 | | $ 200.00 | $ (413.40) | $ (213.40) |
| 7/21/2018 | QOL | 23 | $ 42,200.00 | $ 3,900.00 | | $ 3,900.00 | $ (965.16) | $ 2,934.84 |
| 7/28/2018 | QOL | 19 | $ 44,000.00 | $ 2,150.00 | | $ 2,150.00 | $ (771.76) | $ 1,378.24 |
| 8/4/2018 | QOL | 26 | $ 65,000.00 | $ 3,100.00 | | $ 3,100.00 | $ (771.76) | $ 2,328.24 |
| 8/11/2018 | QOL | 20 | $ 50,000.00 | $ 1,700.00 | | $ 1,700.00 | $ (578.36) | $ 1,121.64 |
| 8/18/2018 | QOL | 26 | $ 75,000.00 | $ 4,050.00 | | $ 4,050.00 | $ (952.76) | $ 3,097.24 |
| 8/25/2018 | QOL | 22 | $ 65,000.00 | $ 4,100.00 | | $ 4,100.00 | $ (965.16) | $ 3,134.84 |
| 9/1/2018 | QOL | 26 | $ 77,000.00 | $ 3,650.00 | | $ 3,650.00 | $ (965.16) | $ 2,684.84 |
| | | 301 | $ 727,700.00 | $ 39,900.00 | | $ 39,900.00 | $ (11,679.92) | $ 28,220.08 |

2018 SUMMARY REPORT & 2019 GOALS

## 2.    **Enforcement and Revenue – continued**

### 2018 Enforcement Initiatives - continued

#### *The Expired Rental Occupancy Permit Enforcement Initiative*

Town Investigators utilizing overtime conducted the Expired Rental Occupancy Permit Enforcement Initiative throughout the year.  Senior Administrative Assistant Loretta Quintana assisted by coordinating the enforcement.  Mrs. Quintana identified properties for which Rental Occupancy Permits had expired, had not been renewed, and for which compliance could not be administratively identified.  Four hours of overtime were offered to Town Investigators each week to investigate four cases. Throughout the year, expired permits were assigned for investigation based on when the permit expired and, when possible, by location.

In 2018, the DOCE investigated 77 properties due to the owner failing to renew previously issued Rental Occupancy Permits.  These investigations resulted in the issuance of 73 appearance tickets. Thirteen properties were compliant and the permit records associated were properly closed; Rental Occupancy Permits were issued to 51 individual dwelling units after enforcement.

As of January 2019, 58% of initiative-based prosecutions have concluded; yielding $15,950 in imposed fines.  In addition, the DOCE has received $9,000 in permit renewal fees.  The combined revenue to date is $24,950, while the total cost of labor was $2,785.08.  This initiative resulted in the resolution of 36 expired Rental Occupancy Permits while generating a positive revenue of $22,164.92.

| W/E | Initiative | # AT | Max. Fine | Actual Fine | Permit Fees | Total Actual Revenue $ | OT Personnel Est. Cost | $ + or (-) |
|---|---|---|---|---|---|---|---|---|
| 1/20/2018 | RENTAL | 14 | $ 31,500.00 | $ 650.00 | $ 1,250.00 | $ 1,900.00 | $ (331.76) | $ 1,568.24 |
| 2/3/2018 | RENTAL | 4 | $ 10,000.00 | $ 900.00 | $ 1,250.00 | $ 2,150.00 | $ (189.60) | $ 1,960.40 |
| 2/10/2018 | RENTAL | 0 | $ - | $ - | $ - | $ - | $ (189.60) | $ (189.60) |
| 5/11/2018 | RENTAL | 3 | $ 7,500.00 | $ 3,500.00 | $ 500.00 | $ 4,000.00 | $ (189.60) | $ 3,810.40 |
| 5/19/2018 | RENTAL | 3 | $ 7,500.00 | $ 250.00 | $ 1,000.00 | $ 1,250.00 | $ (189.60) | $ 1,060.40 |
| 9/8/2018 | RENTAL | 11 | $ 22,000.00 | $ 2,500.00 | $ 750.00 | $ 3,250.00 | $ (386.80) | $ 2,863.20 |
| 9/15/2018 | RENTAL | 3 | $ 7,500.00 | $ 1,750.00 | $ 750.00 | $ 2,500.00 | $ (331.76) | $ 2,168.24 |
| 9/22/2018 | RENTAL | 12 | $ 27,000.00 | $ 2,250.00 | $ 1,000.00 | $ 3,250.00 | $ (331.76) | $ 2,918.24 |
| 9/29/2018 | RENTAL | 4 | $ 9,500.00 | $ 3,650.00 | $ 1,000.00 | $ 4,650.00 | $ (193.40) | $ 4,456.60 |
| 10/6/2018 | RENTAL | 1 | $ 2,500.00 | $ 500.00 | $ 250.00 | $ 750.00 | $ (193.40) | $ 556.60 |
| 10/13/2018 | RENTAL | 0 | $ - | $ - | $ 250.00 | $ 250.00 | $ (193.40) | $ 56.60 |
| 11/23/2018 | RENTAL | 8 | $ 13,500.00 | $ - | $ 1,000.00 | $ 1,000.00 | $ (396.16) | $ 603.84 |
| Totals | | 63 | $ 138,500.00 | $ 15,950.00 | $ 9,000.00 | $ 24,950.00 | $ (2,785.08) | $ 22,164.92 |

## 2.   **Enforcement and Revenue – continued**

### 2018 Enforcement Initiatives - continued

#### *Summary of 2018 Enforcement Initiatives*

Each of the above initiatives were demonstrably successful.  The DOCE addressed a total of 341 individual violations efficiently and effectively.  Labor cost associated with these initiatives were recovered in fines and fees, generating $60,950.00 in revenue that amounted to more than three times labor cost ($13,499.84).  The cost benefit of these initiatives will continue to grow as district court proceedings conclude.

Although cost benefits are an important factor in the responsible management and supervision of the division, the primary benefit of these enforcement initiatives should be recognized as the resolution of conditions, which diminish public safety, and the quality of life of the residents of the Town of Islip.  The initiatives conducted in 2018 identified and addressed violations in each of the primary hamlets of the Town of Islip.

| W/E | Initiative | # AT | Max. Fine | Actual Fine | Permit Fees | Total Actual Revenue $ | Personnel w/OT Est. Cost | $ + or (-) |
|---|---|---|---|---|---|---|---|---|
| 1/20/2018 | RENTAL | 14 | $ 31,500.00 | $ 650.00 | $ 1,250.00 | $ 1,900.00 | $ (331.76) | $ 1,568.24 |
| 2/3/2018 | RENTAL | 4 | $ 10,000.00 | $ 900.00 | $ 1,250.00 | $ 2,150.00 | $ (189.60) | $ 1,960.40 |
| 2/10/2018 | RENTAL | 0 | $ - | $ - | $ - | $ - | $ (189.60) | $ (189.60) |
| 5/11/2018 | RENTAL | 3 | $ 7,500.00 | $ 3,500.00 | $ 500.00 | $ 4,000.00 | $ (189.60) | $ 3,810.40 |
| 5/19/2018 | RENTAL | 3 | $ 7,500.00 | $ 250.00 | $ 1,000.00 | $ 1,250.00 | $ (189.60) | $ 1,060.40 |
| 6/2/2018 | QOL | 24 | $ 43,000.00 | $ 2,900.00 | $ - | $ 2,900.00 | $ (897.72) | $ 2,002.28 |
| 6/9/2018 | QOL | 37 | $ 73,000.00 | $ 2,100.00 | $ - | $ 2,100.00 | $ (642.68) | $ 1,457.32 |
| 6/16/2018 | QOL | 20 | $ 56,000.00 | $ 3,400.00 | $ - | $ 3,400.00 | $ (952.76) | $ 2,447.24 |
| 6/23/2018 | QOL | 14 | $ 26,000.00 | $ 1,150.00 | $ - | $ 1,150.00 | $ (952.76) | $ 197.24 |
| 6/30/2018 | QOL | 27 | $ 78,000.00 | $ 4,500.00 | $ - | $ 4,500.00 | $ (897.72) | $ 3,602.28 |
| 7/7/2018 | QOL | 14 | $ 27,500.00 | $ 3,000.00 | $ - | $ 3,000.00 | $ (952.76) | $ 2,047.24 |
| 7/14/2018 | QOL | 3 | $ 6,000.00 | $ 200.00 | $ - | $ 200.00 | $ (413.40) | $ (213.40) |
| 7/28/2018 | QOL | 19 | $ 44,000.00 | $ 2,150.00 | $ - | $ 2,150.00 | $ (771.76) | $ 1,378.24 |
| 8/4/2018 | QOL | 26 | $ 65,000.00 | $ 3,100.00 | $ - | $ 3,100.00 | $ (771.76) | $ 2,328.24 |
| 8/11/2018 | QOL | 20 | $ 50,000.00 | $ 1,700.00 | $ - | $ 1,700.00 | $ (578.36) | $ 1,121.64 |
| 8/18/2018 | QOL | 26 | $ 75,000.00 | $ 4,050.00 | $ - | $ 4,050.00 | $ (952.76) | $ 3,097.24 |
| 8/25/2018 | QOL | 22 | $ 65,000.00 | $ 4,100.00 | $ - | $ 4,100.00 | $ (965.16) | $ 3,134.84 |
| 9/1/2018 | QOL | 26 | $ 77,000.00 | $ 3,650.00 | $ - | $ 3,650.00 | $ (965.16) | $ 2,684.84 |
| 9/8/2018 | RENTAL | 11 | $ 22,000.00 | $ 2,500.00 | $ 750.00 | $ 3,250.00 | $ (386.80) | $ 2,863.20 |
| 9/15/2018 | RENTAL | 3 | $ 7,500.00 | $ 1,750.00 | $ 750.00 | $ 2,500.00 | $ (331.76) | $ 2,168.24 |
| 9/22/2018 | RENTAL | 12 | $ 27,000.00 | $ 2,250.00 | $ 1,000.00 | $ 3,250.00 | $ (331.76) | $ 2,918.24 |
| 9/29/2018 | RENTAL | 4 | $ 9,500.00 | $ 3,650.00 | $ 1,000.00 | $ 4,650.00 | $ (193.40) | $ 4,456.60 |
| 10/6/2018 | RENTAL | 1 | $ 2,500.00 | $ 500.00 | $ 250.00 | $ 750.00 | $ (193.40) | $ 556.60 |
| 10/13/2018 | RENTAL | 0 | $ - | $ - | $ 250.00 | $ 250.00 | $ (193.40) | $ 56.60 |
| 11/23/2018 | RENTAL | 8 | $ 13,500.00 | $ - | $ 1,000.00 | $ 1,000.00 | $ (396.16) | $ 603.84 |
| Totals | | 341 | $ 824,000.00 | $ 51,950.00 | $ 9,000.00 | $ 60,950.00 | $ (13,499.84) | $ 47,450.16 |

2018 SUMMARY REPORT & 2019 GOALS

## 3.    **Enforcement Personnel**

### Enforcement Agent roster for 2018

| NAME | CALL | TITLE | 2016 Employment Dates | In- Service Time (months) | Notes |
|---|---|---|---|---|---|
| FULL TIME STAFF | | | | | |
| JASON MISTRETTA | 107 | Chief Investigator | 1/1/18-12/31/18 | 12 | |
| KIM DAVIS | 101 | Principal Investigator | 1/1/18 - 5/14/18 | 5.5 | Worker Comp. 5/14/18-10/24/18 Suspended from Duty 10/24/18-12/31/18 |
| ROBIN BAHNSEN | 106 | Senior Investigator | 1/1/18 - 12/31/18 | 12 | 6/23/18 - Restored to the DOCE from the Building Division Initiative |
| SCOTT PALADINI | 114 | Senior Investigator | 1/1/18 – 2/8/18 | 1.25 | Suspended/Resigned facing discipline |
| DAN ECKERT | 104 | Investigator | 1/1/18-12/31/18 | 12 | 6/23/18 - Restored to the DOCE from the Building Division Initiative |
| LORRAINE KESLER | 112 | Investigator | 1/1/18-12/31/18 | 12 | |
| MARYANN PASQUALINO | 110 | Investigator | 1/1/18-12/31/18 | 11 | 7/16/18 – 8/15/18 – 30 Day Suspension |
| SUSAN DOOLEY | 105 | Investigator | 1/1/18-12/31/18 | 12 | |
| LEONARD SCHNALL | 103 | Investigator | 1/1/18-12/31/18 | 11 | 6/16/18 – 7/11/18 - 30 Day Suspension 10/26/18 – 11/21/18 – Administrative Leave |
| JUAN BECIANA | 220 | Investigator (Spanish speaking) | 1/1/18-12/31/18 | 11.75 | 4/24/18 – 4/30/18 – Suspended 1 week |
| THOMAS BROWN | 111 | Investigator | 1/1/18-12/31/18 | 12 | |
| JEAN LOUIS | 122 | Investigator | 1/1/18-12/31/18 | 12 | |
| MICHAEL CRUZ | 108 | Investigator | 1/1/18-12/31/18 | 12 | |
| CESAR BENEVIDES | 118 | Investigator (Spanish speaking) | 1/1/18-12/31/18 | 12 | |
| ALLAN FAJARDO | 117 | Investigator (Spanish speaking) | 1/22/18 – 7/5/18 | 5.5 | Resigned - Brookhaven |
| Budgeted Town Investigator | | | | 0 | Maintained vacant related to the termination of #207 in 2017 |
| Budgeted Town Investigator | | | | 0 | This position was offered to two separate candidates, both declined. |
| | | | | 154 | **Total Months** |
| PART TIME STAFF | | | | | |
| KELLY LYON | 102 | Investigator | 1/1/18 – 12/31/18 | 12 | Maximum 20 hours per week |
| THOMAS LIGUORI | 113 | Investigator | 1/1/18 – 12/31/18 | 12 | Maximum 20 hours per week |
| CYNTHIA MCCAFFERY | 326 | Sign Inspector | 1/1//18 – 1/16/18 | 0.5 | Transferred to Building Division |
| CRAIG RUDIGER | 118 | Investigator | 1/1/18 – 12/31/18 | 12 | Maximum 20 hours per week |
| VICTORIA MENDEZ | 320 | Code Enforcement Officer | 1/1/18 – 12/31/18 | 12 | Maximum 17.5 hours per week |
| ALLAN FAJARDO | 115 | Investigator (Spanish Speaking) | 8/24/18 – 12/31/18 | 4 | Maximum 20 hours per week |
| | | | | 52.5 | **Total Months** |

## 3.    Enforcement Personnel – continued

### Enforcement Resources for 2018

In 2018, the Division of Code Enforcement budgeted for 16 full time enforcement agent positions equal to 192 months of service. An estimated 50 months of enforcement agent service were not productive for the Division as positions remained unfilled, assigned to the Building Division, or out of service due to injury, discipline, and worker's compensation.

| Reason for Loss of Service | Months of Service Lost | % of Total Budget Resources |
|---|---|---|
| Unfilled Budgets Positions | 18.5 | 9.6 % |
| Discipline | 15 | 7.8 % |
| Worker's Compensation/FMLA | 5 | 2.6 % |
| Building Division Assignment | 13.5 | 7 % |
| Total | 52 | 27 % |

As a result, 140 months of service were dedicated to enforcement and support of enforcement in the Division of Code Enforcement representing approximately 73% of the overall budgeted resources.

Six additional part time staff members, including Investigators at 20 hours per week, a Sign Inspector at 17.5 hours per week and Code Enforcement Officer at 17.5 hours per week performed enforcement activity for a total of 52.5 months of service.

# 4.   Training

In 2018, the Division of Code Enforcement achieved minimum training requirements to obtain and maintain New York State Code Enforcement Certification for all required personnel.

The divisional training provided this year included Seasonal Condition Enforcement and routine procedural topics.

<u>General Staff</u>

- New York State Code Enforcement Certification
  - In-service training – 100% of all certified staff met minimum requirements
    - 384 hours
  - Basic certification
    - 144 hours – Investigator Fajardo
- Division of Code Enforcement Training
  - Seasonal Condition Enforcement Training
    - 3/23/18 –
      - Property Maintenance §6A
    - 4/27/18 –
      - Swimming Pools
    - 8/27/18 –
      - Back to School
    - 9/21/18 –
      - Heat Supply
  - Routine Procedural Training
    - 1/22/18 –
      - Communicating with Dispatch
    - 2/23/18 –
      - Appearance Ticket Preparation, Voiding & Documentation
      - Service – Natural Person
    - 5/25/18 –
      - General Complaint Investigation & Enforcement Action
    - 6/18/18 –
      - General Complaint Investigation & Enforcement Action
    - 7/23/18-
      - Department of Motor Vehicles Records Access & Use
      - PSEnfD Property Flagging
    - 10/29/18 –
      - Memorandum Books
      - Prohibited Uses Enforcement
    - 11/30/18 –
      - Case Status
      - Dispatched Response Procedure
    - 12/17/18 – Report Writing
  - Professional Development
    - None

## 5.   **Summary**

In 2018, the Division of Code Enforcement remained a division of the Department of the Town Attorney; however, on November 20th 2018 Local Law 27 was approved during a public hearing to once again amend the Town of Islip Code to return the Division of Code Enforcement to the Department of Public Safety Enforcement. In January 2019, this amendment was approved and the local law was adopted.  The division now faces another period of transition.

Several goals and objectives were set for the Division to accomplish during 2018 within the last edition of this report.   Many of these goals remain outstanding from prior years and have not yet been achieved or, in some instances, even attempted.  Some goals may be abandoned and others amended to meet the standards set by the Commissioner of the Department of Public Safety Enforcement.

This was another challenging year for some of the personnel in the division.  Senior Investigator Paladini resigned his position while facing disciplinary action.   Principal Investigator Davis spent the majority of 2018 out of service, first due to injury, and then due to suspension pending a disciplinary hearing.  One Town Investigator position remained open due to former Town Investigator Stewart's termination agreement.  Another Town Investigator position had been filled by a Spanish-speaking candidate, who later resigned to accept a similar, yet higher paying, position in Southampton Town.  Two candidates offered this position, declined due to the relatively low starting salary.

The Building Division Enforcement Initiative concluded and the Senior Town Investigator and Town Investigator assigned to the initiative returned to general complaint investigations and supervision.  Two Town Investigators remained assigned to the Post Prosecution Investigation Unit.  Sign permitting responsibility was transferred to the Building Division, along with the part time Sign Inspector.  This transfer of authority allowed the full time Town Investigator who had primarily executed the sign permitting process to be utilized for complaint investigations.  The remaining enforcement staff focused primarily on support and general complaint response functions.

The physical work environment of the Division of Code Enforcement at 28 Nassau Avenue was not updated or improved.  The building wants for maintenance and updating.  Presently, the enforcement staff is relocating to room 331 of 401 Main Street.

There were three new vehicles, each Ford Interceptor SUVs, added to the division fleet.  Maintaining some of the vehicles in our fleet in operable condition remains a challenge due to the age and use.  There are eight vehicles remaining in our fleet that are more than ten years old and have in excess of 100,000 miles.

The information technology issued to the enforcement staff remains a great asset. All field staff are equipped with mobile computers that are network connected and offer coextensive access to information whether remotely or in the office.  All vehicles permanently assigned to enforcement agents are equipped with mobile data technology equipment such as laptop docking stations and printers. Most pool vehicles are similarly equipped.

Communication is an integral component for the division. The entire Enforcement Staff are provided mobile telephones, which are in the process of being upgraded to smartphones.  New radio equipment was acquired during 2018, and the field staff are now individually assigned portable radios.

2018 SUMMARY REPORT & 2019 GOALS

## 5.   Summary - continued

Complaint investigation is the primary responsibility of the Division of Code Enforcement. Throughout 2018, the division investigated 100% of the complaints alleging violations related to swimming pools and within the PPD community of College Woods. Further, 71% of Z06 type complaints related to illegal housing were investigated, up from 45% in 2017. Our overall complaint response increased to 79% in 2018, which is the best response rate ever measured.

Conclusive enforcement actions, including the service of appearance tickets, closed complaints and closed cases, exceeded our results of 2017. In 2018, the division served 5,144 appearance tickets, 1,402 more than in 2017. The Post Prosecution Unit filed 520 delinquency requests with the Town Attorney's Division of Law Enforcement, 17 more than in 2017. Combined 5,833 cases and complaints were closed by the Division of Code Enforcement in 2018, more than in 2017 when 5,421 were closed.

District Court fines and fees generate the division's revenue. District court revenue collected in 2018 was $1,005,285.00, slightly more than the budget goal but $136,330 less than 2017. The Division of Law Enforcement collected $280,143.54 in judgments. The average fine per appearance ticket decreased to $195.43 per appearance ticket issued, $63.03 less than 2017. In 2018, divisional fee revenue related to Rental Occupancy and Sign Permits and violation search fees was $694,206.50. An increase in fees has not occurred in at least fifteen years. There is very little opportunity to increase fee revenue other than to increase fees for Rental Occupancy Permits and Violation Reports.

Training objectives including mandatory New York State Code Enforcement Official Certification and continuing education requirements were achieved through the attendance of 528 hours of New York State approved training. Divisional monthly training was performed throughout the year and remains the best opportunity to invest in the development of personnel.

In conclusion, the Division of Code Enforcement achieved most growth and performance goals in 2018, including goals related to enforcement, complaint response, and revenue. Personnel matters remain a lingering obstacle, most notably those associated with supervisory personnel and the inability to offer competitive salaries to qualified candidates. Finally, replacing underperforming supervisors and establishing an appropriate chain of command will increase accountability exponentially and improve overall performance.

2018 SUMMARY REPORT & 2019 GOALS

Attachment A:

TOWN OF ISLIP



DIVISION OF CODE ENFORCEMENT
28 NASSAU AVENUE
ISLIP, NEW YORK 11751
(631)224-5547/48
(631)224-5756 (FAX)

ANGIE M. CARPENTER
SUPERVISOR

MEA KNAPP
TOWN ATTORNEY

Central Complaints....(631)224-5460
Housing.................(631)224-5474
Records Access.........(631)224-5475
Fax.....................(631)224-5439

June 21st 2016

## Non-Complaint Enforcement Directive – Expired Rental Occupancy Permit Enforcement Initiative

Scope:

This directive is for non-complaint based enforcement of Town of Islip codes related to Rental Occupancy Permits which have expired and for which property owners have failed to respond to final notices for renewal or submission of an affidavit affirming the termination of rental occupancy.

The intent of this initiative is to effectively enforce Rental Occupancy Permit requirements or close expired Rental Occupancy Permit files through investigation.

Any conditions observed while participating in this enforcement initiative which may or may not be related to Rental Occupancy shall be addressed by the issuance of an appearance ticket and processed in accordance with the existing directive.

Description of Assignment:

- This initiative is to be conducted utilizing overtime at a rate of one hour per location (if more time is needed, assignments can be completed during normal shifts utilizing straight time only)
  - Assignments will be provided in a geographically advantageous manner
  - The initiative is to be conducted on a weekly basis as approved by management
  - Four cases per week will be assigned to each participating Investigator
  - Allotted hours are to be worked in one extension of shift or on Saturday at a time plus ½ rate only
- Non-complaint based cases must be created and all related investigative activity shall be documented in accordance with the established standards, regardless of whether or not violations are identified
- Appearance tickets are to be prepared for all violations observed and service is to be completed within that 7 days of the observation of the violation.
  - Note the specified presumptive evidence for both Rental Occupancy and Owner's Residence found within The Town of Islip Code, Chapter 68 Article L (see Code Reference below)
- Each prosecution case file resulting from this non-complaint enforcement of any week is to be prepared in the typical prescribed manner and submitted simultaneously, bound together and clearly identified as a "Rental Occupancy Enforcement" file

Special Instructions:

- Any properties found to be vacant and unsecured are to be referred to the Division of Fire Prevention through a supervisory Investigator. A non-complaint based case shall document the observations, photographs, and details of referral.
- Any alteration or maintenance violations shall be addressed through the issuance of appearance tickets
- If no other violations are observed the case shall be submitted to be closed after referral and by documenting the case control number of the Division of Fire Prevention case.

2018 SUMMARY REPORT & 2019 GOALS

Eligibility to Participate:

- All full-time Investigators assigned to the Division of Code Enforcement with the following exceptions.
    - Investigators who are participating in another enforcement initiative which provides overtime that is exclusive to their unit assignment

Awarding of Assignment:

- This assignment will be offered by Chief Investigator Mistretta on a rotational basis to all full time Investigators utilizing a separate established list. This list will be utilized exclusively for this enforcement initiative, shall offer in order of seniority, as overtime is approved.

| Seniority | Name | Date offered | Participation |
|-----------|------|--------------|---------------|
| 1 | LAURI KESLER | | |
| 2 | JOSHUA STEWART | | |
| 3 | MARYANN PASQUALINO | | |
| 4 | SUSAN DOOLEY | | |
| 5 | LEONARD SCHNALL | | |
| 6 | JUAN BECIANA | | |
| 7 | STEPHEN BADALA | | |
| 8 | CESAR BENEVIDES | | |

Weekly Reporting and Initiative Analysis:

- Chief Investigator Mistretta shall on a weekly basis submit the requisite Overtime Justification and Authorization forms and report appearance ticket, closed permit, renewed permit information within the DOCE Summary Report.
- Periodic analysis of this Enforcement Initiative will be prepared by Chief Investigator Mistretta to measure
    - Cost
    - Appearance ticket issuance
    - Potential and actual fines
    - Rental Occupancy Permits
        - Renewed
        - Closed

**Code Reference:**

**TOWN OF ISLIP CODE**

**Chapter 68 Zoning**

**§ 68-649 Definitions.**

**As used in this article, the following terms shall have the meanings indicated.**

RENT - A return in money, property or other valuable consideration (including payment in kind or for services or other thing of value) for the use and occupancy or the right to the use and occupancy of a dwelling unit, whether or not a legal relationship of landlord and tenant exists between the owner and the occupant or occupants thereof.

RENTAL DWELLING - A dwelling unit established, occupied, used or maintained for rental occupancy.

RENTAL OCCUPANCY -The occupancy or use of a dwelling unit by one or more persons as a home or residence under an arrangement whereby the occupant or occupants thereof pay rent for such occupancy and use.

RENTAL OCCUPANCY PERMIT - A permit which is issued upon application to the Code Enforcement Official and shall be valid for two years from the date of issuance.

**§ 68-650 Rental occupancy permit required.**

A. It shall be unlawful and a violation of this article for any person or entity who or which owns a dwelling unit in the Town to use, establish, maintain, operate, let, lease, rent or suffer or permit or allow the occupancy and use thereof as a rental occupancy by someone other than the owner without first having obtained a valid rental occupancy permit therefor. Failure or refusal to procure a rental occupancy permit hereunder shall be deemed a violation.[Amended 5-21-2013]

B. A rental occupancy permit issued under this article shall only be issued to the owner(s) of the real property at issue.

C. As a rental occupancy permit is issued under this article is not transferable, in the event that the ownership of a rental dwelling is transferred, the new owner shall register the property within 30 days of the closing of title pursuant to the requirements set forth in this article. If the rental dwelling is not registered as required by this article, there will be a presumption that said property is being utilized as rental property by the new owner(s) in violation of this article.

D. Exception. Rental units established pursuant to § 68-419.1 and 68-602 do not require a rental occupancy permit as defined in Article XLX. [Added 5-29-2008]

E. No rental occupancy permit shall be granted to a transient rental property. [Added 12-15-2015]

**§ 68-664 Presumptive evidence dwelling unit is rented.**

A. The presence or existence of any of the following shall create a presumption that a dwelling unit is rented:

(1) The dwelling unit is occupied by someone other than the owner and the owner of the dwelling unit represents, in writing or otherwise, to any person, establishment, business, institution or government agency that he resides at an address other than the dwelling unit in question.

(2) Persons residing in the dwelling unit represent that they pay rent to the owner of the premises.

(3) Utilities, cable, telephone or other services are in place or are requested to be installed or used at the dwelling unit in the name of someone other than the owner.

(4) Testimony by a witness that it is common knowledge in the community that a person other than the owner resides in the dwelling unit.

**§ 68-665 Presumptive evidence of owner's residence**

A. It shall be presumed that an owner of a dwelling unit does not reside within said dwelling unit if one or more of the following sets forth an address which is different than that of the dwelling unit.

(1) Voter registration;

(2) Motor vehicle registration;

(3) Driver's license; or

(4) Any other document filed with a public agency.

**§ 68-666 Penalties for offenses.**

[Amended 4-14-2009]

Any person, association, firm or corporation who or which violates any provision of this article or assists in the violation of any provision of this article shall be guilty of a violation, punishable:

A. By a fine of not less than $750 and not exceeding $2,500 or by imprisonment for a period not to exceed 15 days, or both, for conviction of a first offense.

B. For any second conviction, committed within a period of five years of the first conviction, such violation will be subject to a fine of not less than $2,500 nor more than $5,000 or by imprisonment for a period not to exceed 15 days, or both.

C. For any third or subsequent offense, after having been convicted two or more times within a period of five years, such violation shall be prosecuted as an unclassified misdemeanor, with a minimum fine of $5,000 and a maximum fine of $10,000 and/or a maximum period of incarceration of one year.

## Chapter 6A Property Maintenance

§ 6A-20 Minimum maintenance standards for residential properties.

*All subsections

2018 SUMMARY REPORT & 2019 GOALS

Attachment B:



**TOWN OF ISLIP**

DIVISION OF CODE ENFORCEMENT
28 NASSAU AVENUE
ISLIP, NEW YORK 11751
(631)224-5547/48
(631)224-5756 (FAX)

ANGIE M. CARPENTER
SUPERVISOR

JR DICIOCCIO
TOWN ATTORNEY

Central Complaints....(631)224-5468
Housing.....................(631)224-5474
Records Access...........(631)224-5475
Fax............................(631)224-5439

June 6, 2017

## Non-Complaint Enforcement Directive – Expired Rental Occupancy Permit Enforcement Initiative

Scope:

This directive is for non-complaint based enforcement of Town of Islip codes related to Rental Occupancy Permits which have expired and for which property owners have failed to respond to final notices for renewal or submission of an affidavit affirming the termination of rental occupancy.

The intent of this initiative is to effectively enforce Rental Occupancy Permit requirements or close expired Rental Occupancy Permit files through investigation.

Any conditions observed while participating in this enforcement initiative which may or may not be related to Rental Occupancy shall be addressed by the issuance of an appearance ticket and processed in accordance with the existing directive.

Description of Assignment:

- This initiative is to be conducted utilizing overtime at a rate of one hour per location (if more time is needed, assignments can be completed during normal shifts utilizing straight time only)
  - Assignments will be provided in a geographically advantageous manner
  - The initiative is to be conducted on a weekly basis as approved by management
  - Four cases per week will be assigned to each participating Investigator
  - Allotted hours are to be worked in one extension of shift or on Saturday at a time plus ½ rate only.
- Non-complaint based cases must be created and all related investigative activity shall be documented in accordance with the established standards, regardless of whether or not violations are identified.
- Appearance tickets are to be prepared for all violations observed and service is to be completed within that 7 days of the observation of the violation.
  - Note the specified presumptive evidence for both Rental Occupancy and Owner's Residence found within The Town of Islip Code, Chapter 68, Article I. (see Code Reference below)
- Each prosecution case file resulting from this non-complaint enforcement of any week is to be prepared in the typical prescribed manner and submitted simultaneously, bound together and clearly identified as a "Rental Occupancy Enforcement" file.

Special Instructions:

- Any properties found to be vacant and unsecured are to be referred to the Division of Fire Prevention through a supervisory Investigator. A non-complaint based case shall document the observations, photographs, and details of referral.
- Any alteration or maintenance violations shall be addressed through the issuance of appearance tickets.
- If no other violations are observed, the case shall be submitted to be closed after referral and by documenting the case control number of the Division of Fire Prevention case.

Eligibility to Participate:

2018 SUMMARY REPORT & 2019 GOALS

- All full-time Investigators assigned to the Division of Code Enforcement with the following exceptions:
  - ○ Investigators who are participating in another enforcement initiative which provides overtime that is exclusive to their unit assignment

Awarding of Assignment:

- This assignment will be offered by Chief Investigator Mistretta on a rotational basis to all full time Investigators utilizing a separate established list. This list will be utilized exclusively for this enforcement initiative, shall offer in order of seniority as overtime is approved.

| Seniority | Name |
|-----------|------|
| 1 | LAURI KESLER |
| 2 | JOSHUA STEWART |
| 3 | MARYANN PASQUALINO |
| 4 | SUSAN DOOLEY |
| 5 | LEONARD SCHNALL |
| 6 | JUAN BECIANA |
| 7 | **THOMAS BROWN** |
| 8 | JEAN LOUIS |

Weekly Reporting and Initiative Analysis:

- Chief Investigator Mistretta shall on a weekly basis submit the requisite Overtime Justification and Authorization forms and report appearance ticket, closed permit, renewed permit information within the DOCE Summary Report.
- Periodic analysis of this Enforcement Initiative will be prepared by Chief Investigator Mistretta to measure
  - ○ Cost
  - ○ Appearance ticket issuance
  - ○ Potential and actual fines
  - ○ Rental Occupancy Permits
    - Renewed
    - Closed

**Code Reference:**

**TOWN OF ISLIP CODE**

**Chapter 68 Zoning**

**§ 68-649 Definitions.**
**As used in this article, the following terms shall have the meanings indicated.**

RENT - A return in money, property or other valuable consideration (including payment in kind or for services or other thing of value) for the use and occupancy or the right to the use and occupancy of a dwelling unit, whether or not a legal relationship of landlord and tenant exists between the owner and the occupant or occupants thereof.

RENTAL DWELLING - A dwelling unit established, occupied, used or maintained for rental occupancy.

RENTAL OCCUPANCY -The occupancy or use of a dwelling unit by one or more persons as a home or residence under an arrangement whereby the occupant or occupants thereof pay rent for such occupancy and use.

RENTAL OCCUPANCY PERMIT - A permit which is issued upon application to the Code Enforcement Official and shall be valid for two years from the date of issuance.

**§ 68-650 Rental occupancy permit required.**
A. It shall be unlawful and a violation of this article for any person or entity who or which owns a dwelling unit in the Town to use, establish, maintain, operate, let, lease, rent or suffer or permit or allow the occupancy and use thereof as a rental occupancy by someone other than the owner without first having obtained a valid rental occupancy permit therefor. Failure or refusal to procure a rental occupancy permit hereunder shall be deemed a violation. [Amended 5-21-2013]
B. A rental occupancy permit issued under this article shall only be issued to the owner(s) of the real property at issue.
C. As a rental occupancy permit issued under this article is not transferable, in the event that the ownership of a rental dwelling is transferred, the new owner shall register the property within 30 days of the closing of title pursuant to the requirements set forth in this article. If the rental dwelling is not registered as required by this article, there will be a presumption that said property is being utilized as rental property by the new owner(s) in violation of this article.
D. Exception: Rental units established pursuant to § 68-419.1 and 68-662 do not require a rental occupancy permit as defined in Article XLX. [Added 5-28-2008]
E. No rental occupancy permit shall be granted to a transient rental property. [Added 12-15-2015]

**§ 68-664 Presumptive evidence dwelling unit is rented.**
A. The presence or existence of any of the following shall create a presumption that a dwelling unit is rented:
  (1) The dwelling unit is occupied by someone other than the owner and the owner of the dwelling unit represents, in writing or otherwise, to any person, establishment, business, institution or government agency that he resides at an address other than the dwelling unit in question.
  (2) Persons residing in the dwelling unit represent that they pay rent to the owner of the premises.
  (3) Utilities, cable, telephone or other services are in place or are requested to be installed or used at the dwelling unit in the name of someone other than the owner.
  (4) Testimony by a witness that it is common knowledge in the community that a person other than the owner resides in the dwelling unit.

**§ 68-665 Presumptive evidence of owner's residence.**
A. It shall be presumed that an owner of a dwelling unit does not reside within said dwelling unit if one or more of the following sets forth an address which is different than that of the dwelling unit:
  (1) Voter registration;
  (2) Motor vehicle registration;
  (3) Driver's license; or
  (4) Any other document filed with a public agency.

**§ 68-666 Penalties for offenses.**
[Amended 4-14-2009]

2018 SUMMARY REPORT & 2019 GOALS

Any person, association, firm or corporation who or which violates any provision of this article or assists in the violation of any provision of this article shall be guilty of a violation, punishable:

A. By a fine of not less than $750 and not exceeding $2,500 or by imprisonment for a period not to exceed 15 days, or both, for conviction of a first offense.

B. For any second conviction, committed within a period of five years of the first conviction, such violation will be subject to a fine of not less than $2,500 nor more than $5,000 or by imprisonment for a period not to exceed 15 days, or both.

C. For any third or subsequent offense, after having been convicted two or more times within a period of five years, such violation shall be prosecuted as an unclassified misdemeanor, with a minimum fine of $5,000 and a maximum fine of $10,000 and/or a maximum period of incarceration of one year.

## Chapter 6A Property Maintenance

§ 6A-20 Minimum maintenance standards for residential properties.

*All subsections

Attachment C:

## TOWN OF ISLIP



**DIVISION OF CODE ENFORCEMENT**
**28 NASSAU AVENUE**
**ISLIP, NEW YORK 11751**
**(631)224-5547/48**
(631)224-5756 (FAX)

**ANGIE M. CARPENTER**
**SUPERVISOR**

**JR DICIOCCIO**
**TOWN ATTORNEY**

Central Complaints....(631)224-5460
Housing....................(631)224-5474
Records Access..........(631)224-5475
Fax.............................(631)224-5439

October 3, 2017

### Non-Complaint Investigative and Enforcement Directive

#### New York State Problem Property - Investigation

The scope of this directive is applicable and limited to non-complaint based investigation of properties reported by the New York State Department of Financial Services as "Problem Properties". These properties are reported to the New York State Department of Financial Services as being vacant by banks, mortgage companies, and mortgage servicing companies.

The primary intent of this initiative is to efficiently record the conditions of these properties and to report the conditions back to the New York State Department of Financial Services. Additionally, we will address violations which are detrimental to the quality of life of neighboring properties using traditional enforcement methods such as the service of appearance tickets or Town Board authorization to clean properties or secure buildings.

Description of Assignment:

- This initiative is to be conducted by full time personnel authorized using overtime on a rotational basis.
  - This initiative is to be conducted by full time enforcement agents utilizing 4 hours of overtime for a maximum of three full time participants a week (if more time is needed to accomplish service, assignments shall be completed during normal shifts).
    - Observations of Problem Properties must be accomplished during daylight hours and maybe accomplished during typical scheduled hours. The extension of shift will then be utilized to conduct routine investigations offsetting the time spent on investigations associated with this program.
  - Whenever possible, assignments will be provided in a geographically advantageous manner
  - The initiative is to be conducted on a weekly basis as approved by management
  - Allotted hours are to be worked in one extension of shift or on Saturday and only at a time plus ½ rate.
- Reports for properties for which no enforcement action is taken shall be prepared on the forms provided, entitled New York State Department of Financial Services Problem Property Investigation Report (attachment A).
- Non-complaint based cases must be created and all related investigative and enforcement activity shall be documented in accordance with the established standards, for all violations which are addressed through the service of an appearance ticket.
  - Appearance tickets are to be prepared for violations observed at a property that is found to be occupied or for which the defendant is within jurisdiction.
  - The service of appearance tickets is to be completed within 7 days of the observation of the violation.

U:\Procedures\Initaitive procedures\NYSDFS PP\Non Complaint enforcement-NYSDFS PP Program investigation.10.2.17.amended.docx

2018 SUMMARY REPORT & 2019 GOALS

- o   Each prosecution case file resulting from this non-complaint enforcement of any week is to be prepared in the typical prescribed manner clearly identified as a "NYSPP" file.
- When identified "Problem Properties" for which there are associated complaints or cases are investigated and the conditions alleged are unfounded, the associated complaint shall be identified on the provided form. Complaints and cases shall be closed administratively.

Investigation Procedure:

- A prepared New York State Department of Financial Services Problem Property Investigation Report will be provided for each location assigned for investigation.
- The New York State Department of Financial Services Problem Property Investigation Report is to be completed based on the observed property conditions
    - o   Vehicle and mileage information are to be recorded
        - ▪   Start mileage for the first property investigation should be recorded from the starting position.
        - ▪   End mileage for the last property investigation should be recorded at conclusion (either return to office or off-duty)
- Appearance tickets are to be prepared for violations observed at a property that is found to be occupied and for which the defendant is within jurisdiction.
    - o   Non-complaint based cases must be created and all related investigative and enforcement activity which shall be documented in accordance with the established standards, for all violations which are addressed through the service of an appearance ticket.
    - o   The service of appearance tickets is to be completed within 7 days of the observation of the violation.
    - o   Each prosecution case file resulting from this non-complaint enforcement of any week is to be prepared in the typical prescribed manner clearly identified as a "NYSPP" file.
- Supervisory Investigators assigned investigations with associated complaints and or cases shall note what existing complaints of cases can be satisfied or closed based on the observed conditions.
    - o   The standard for closing or satisfying a complaint or case remains the same as for typical complaint response. Cases or complaints will only be closed or satisfied when observations invalidate the prior existing or alleged violations (i.e. outdoor storage or litter removed, vegetation trimmed, etc.).
    - o   The actual closing or satisfying of cases or complaints will be performed by the Supervisory Investigator.
- Both complete and incomplete New York State Department of Financial Services Problem Property Investigation Report are to be returned to the Administrating Investigator

Awarding of Assignment:

- This assignment will be conducted by full time enforcement agents on a rotational selection of enforcement agents willing to participate.
    - o   Identified "Problem Properties" for which there are no associated active complaints shall be assigned to Town Investigators
    - o   Identified "Problem Properties" for which there are associated active complaints shall be assigned to the Senior or Principal Town Investigators

U:\Procedures\Initaitive procedures\NYSDFE PP\Non Complaint enforcement-
NYSDFS.PP.Program.investigation.10.2.17.amended.docx

Special Instructions:

- Any properties found to be vacant and unsecured are to be referred to the Division of Fire Prevention through a supervisory Investigator. A non-complaint based case shall document the observations, photographs, and details of referral.
- Conditions observed while participating in this investigation and enforcement initiative which exceed the defined scope, but constitute a hazardous condition, such as improper gas piping or swimming pool installation or maintenance shall be addressed by the issuance of an appearance ticket and processed in accordance with the existing directives. If the service of an appearance ticket(s) is impractical, due to the lack of an appropriate person or entity under jurisdiction, hazardous conditions shall be reported to the Chief, Principal, and Senior Investigator via email.

Eligibility to Participate:

- All full-time Investigators assigned to the Division of Code Enforcement.

## Code Reference:

### § 6A-20.

### A -Minimum maintenance standards for residential properties:- Exterior property areas

(1) **Sanitation.** All exterior property and premises shall be maintained in a clean, safe and sanitary condition. All exterior property and premises shall be free from any accumulation of rubbish or garbage. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(2) **Sidewalks and driveways.** All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(3) **Weeds.** All premises and immediate exterior property shall be maintained free from weeds or plant growth in excess of 10 inches (254 mm). All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs; provided, however, this term shall not include cultivated flowers and gardens. The failure to maintain an improved property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(5) **Accessory structures.** All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(6) **Motor vehicles.** No vehicle shall at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled. Painting of vehicles is prohibited unless conducted inside an approved spray booth. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

### B. Minimum maintenance standards for residential properties:- Exterior structure.

2018 SUMMARY REPORT & 2019 GOALS

(1) **General.** The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(2) **Protective treatment.** All exterior surfaces, including, but not limited to, doors, door and window frames, cornices, porches, trim, balconies, decks and fences shall be maintained in good condition. Exterior wood surfaces, other than decay-resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Peeling, flaking and chipped paint shall be eliminated and surfaces repainted. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(3) **Exterior walls.** All exterior walls shall be free from holes, breaks, and loose or rotting materials, and maintained weatherproof and properly surface coated where required to prevent deterioration. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(4) **Roofs and drainage.** The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(5) **Stairways, decks, porches and balconies.** Every exterior stairway, deck, porch and balcony, and all appurtenances attached thereto, shall be maintained structurally sound, in good repair, with proper anchorage and capable of supporting the imposed loads. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(6) **Chimneys and towers.** All chimneys, cooling towers, smokestacks, and similar appurtenances shall be maintained structurally safe and sound, and in good repair. All exposed surfaces of metal or wood shall be protected from the elements and against decay or rust by periodic application of weather-coating materials, such as paint or similar surface treatment. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(7) **Handrails and guards.** Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(8) **Window, skylight and door frames.** Every window, skylight, door and frame shall be kept in sound condition, good repair and weathertight. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

    (a) **Glazing.** All glazing materials shall be maintained free from cracks and holes. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(9) **Openable windows.** Every window, other than a fixed window, shall be easily openable and capable of being held in position by window hardware. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

(10) **Doors.** All exterior doors, door assemblies and hardware shall be maintained in good condition. Locks at all entrances to dwelling units and sleeping units shall tightly secure the door. The failure to maintain a property in compliance with this subsection shall constitute a violation punishable as set forth within § 6A-21.

U:\Procedures\Initiative procedures\NYSDFE PP\Non Complaint enforcement-NYSDFS.PP Program investigation.10.2.17.amended.docx

41 | P a g e
Jason Mistretta, Chief Town Investigator

2018 SUMMARY REPORT & 2019 GOALS

## New York State Department of Financial Services Problem Property Inspection Report

| Supervisory Notes Only | Vehicle & Mileage |
|---|---|
| Database record Key # | Vehicle #: |
| Record Created By: | Start Mileage: |
| Record Completed By: | End Mileage: |

Date/Time of Inspection: _____ Investigator: _____

Property Address: _____

S.C.T.M.# _____ Organization Name: _____

**Is this property Vacant:   Yes / No**

### Site Details

Overgrown Vegetation :   Yes / No     Notes: _____

Outdoor Storage:   Yes / No     Notes: _____

Litter & Debris:   Yes / No     Notes: _____

Broken Fencing:   Yes / No     Notes: _____

Grafitti:   Yes / No     Notes: _____

Swimming Pool:   Yes / No     Notes: _____

Unsecured/Damaged Accessory Structures:   Yes / No
Notes: _____
General Notes: _____

### Primary Structure

Structure Type:   One-Family Dwelling / Two-Family Dwelling / Other _____

Secured:   Yes / No     Boarded:   Yes / No     Notes: _____

### Enforcement Action

Case Number: _____
Summary of Enforcement Action: _____

Board or Clean up Resolution Recommended:   Yes / No

U:\Procedures\Initiative procedures\NYSDFS PP Field Check List 6.29.17

Jason Mistretta, Chief Town Investigator