UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANA FLORES, RENE FLORES, MARIA MAGDALENA HERNANDEZ, MAGALI ROMAN, MAKE THE ROAD NEW YORK, AND NEW YORK COMMUNITIES FOR CHANGE,<br><br>  Plaintiffs,<br>   v.<br><br>TOWN OF ISLIP, ISLIP TOWN BOARD, SUFFOLK COUNTY BOARD OF ELECTIONS,<br><br>  Defendants. | Case No. 2:18-cv-03549 |

**TOWN OF ISLIP AND ISLIP TOWN BOARD'S MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' HEARSAY EVIDENCE AND OTHER INADMISSIBLE EVIDENCE**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.    Plaintiffs' Evidence Contains Voluminous Inadmissible Hearsay that Does Not Satisfy Any Hearsay Exception ....................................................................... 3

    II.    Plaintiffs Appear Prepared to Improperly Offer Lay Witness Testimony That Requires Expert Qualifications ..................................................................... 7

    III.    Dr. Logan States Inadmissible Hearsay as Fact Rather than Applying Expertise to Complicated or Esoteric Technical Issues ........................................ 8

CONCLUSION .................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abascal v. Fleckenstein*,
   820 F.3d 561 (2d Cir. 2016)..................................................................................3, 6

*Agric. Ins. Co. v. Ace Hardware Corp.*,
   214 F. Supp. 2d 413 (S.D.N.Y. 2002)....................................................................5, 6

*Blue Cross and Blue Shield N.J., Inc., v. Philip Morris, Inc.*,
   141 F. Supp. 2d 320 (E.D.N.Y. 2001) ......................................................................3

*Glowczenski v. Taser Intern, Inc.*,
   929 F. Supp. 2d 564 (E.D.N.Y. 2013) ..................................................................3, 5

*Gonzales v. Dig. Equip. Corp.*,
   8 F. Supp. 2d 194 (E.D.N.Y. 1998) ......................................................................2, 4

*Green v. Baca*,
   226 F.R.D. 624, 638 (C.D. Cal. 2005) .....................................................................5

*Lakah v. UBS AG*,
   996 F. Supp.2d 25 (S.D.N.Y. 2014).........................................................................9

*New York by Underwood v. Griepp*,
   No. 17-cv-3706, 2018 WL 3518527 (E.D.N.Y. July 20, 2018).................................6

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005).................................................................................9, 11

*Parsons v. Honeywell, Inc.*,
   929 F.2d 901 (2d Cir. 1991)......................................................................................4

*United States ex. Rel. Anti-Discrimination Center of Metro. N.Y., Inc., v.*
   *Westchester Cty.*,
   2009 WL 1110577 (S.D.N.Y. Apr. 22, 2009)..........................................................11

*United States v. Baker*,
   432 F.3d 1189 (11th Cir. 2005) ................................................................................5

# TABLE OF AUTHORITIES
## (cont'd)

**Page**

*United States v. Dukagjini*,
   326 F.3d 45 (2d Cir. 2003)..................................................................................................9

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) ...............................................................................................2, 9

*United States v. Haynes*,
   729 F.3d 178 (2d Cir. 2013)..............................................................................................8

*United States v. Kaplan*,
   490 F.3d 110 (2d Cir. 2007)..............................................................................................7

*United States v. Mejia*,
   545 F.3d 179 (2d Cir. 2008)....................................................................................2, 9, 11

*United States v. Mingo*,
   112 F.3d 506 (2d Cir. 1996)..............................................................................................4

*United States v. Natal*,
   849 F.3d 530 (2d Cir. 2017)....................................................................................2, 7, 8

*United States v. Rubi-Gonzalez*,
   311 F. App'x 483 (2d Cir. 2009) .....................................................................................12

*United States v. Scop*,
   846 F.2d 135 (2d Cir. 1988)............................................................................................11

**OTHER AUTHORITIES**

Fed. R. Evid. 803(6)(e) .......................................................................................................6

Fed. R. Evid. 701 ............................................................................................................2, 7

# INTRODUCTION

This Court is scheduled to conduct a hearing on Plaintiffs' motion for a preliminary injunction tomorrow, April 9.  At that hearing, it appears that Plaintiffs intend to seek to admit a wide array of evidence that is clearly barred by the rules against hearsay or the rules regarding expert testimony.  Plaintiffs' apparent hearsay evidence is numerous but generally falls into roughly four identifiable categories:  (1) Witnesses describing what others said about allegedly discriminatory activities; (2) Statements within news articles, especially quotations of individuals or groups; (3) Reports by advocacy organizations like the Southern Poverty Law Center; and (4) Compilations of complaints of alleged discrimination reported to advocacy organizations.  These types of materials unambiguously qualify as inadmissible hearsay, and Plaintiffs' apparent intention to offer these materials for their truth cannot be permitted.

Moreover, Plaintiffs seemingly hope to introduce lay witness testimony that does not satisfy the relevant rules on lay and expert opinion testimony.  Numerous declarants make sweeping declarations of opinion about the causes of decreased political participation, the likelihood of electoral success for Latinos, and similar subjects that cannot simply rely on personal observations and common sense reasoning—the only type of testimony lay witnesses may provide.  Any such testimony must be excluded.

Finally, Dr. John Logan's report (and presumably his testimony) attempts to summarize and import inadmissible evidence, especially with respect to his "opinions" on policing, public safety, and environmental hazards in Islip, rather than properly apply his expertise and a reliable methodology to interpret difficult factual issues.  And even when he is not relying on hearsay, he impermissibly states controversial assertions as historical fact, regarding non-expert matters.

Town of Islip and Islip Town Board ("Defendants") accordingly request the Court to exclude any evidence or testimony that Plaintiffs attempt to introduce at trial that falls within the

inadmissible categories described below and the portions of Dr. Logan's report and testimony that merely regurgitate hearsay and make factual claims unsupported by a need for expertise.

## ARGUMENT

Based on their motion, attached exhibits, and expert reports, Plaintiffs appear to believe they are free to disregard basic rules of evidence and fairness. Hearsay is generally excluded because "the traditional bases for determining credibility—oath, demeanor, and cross-examination in the presence of the jury or by permitted depositions—are not available when the out-of-court declaration is proffered." *Gonzales v. Dig. Equip. Corp.*, 8 F. Supp. 2d 194, 199 (E.D.N.Y. 1998). And lay opinions under Rule 701 must be limited to opinions that result[] from a process of reasoning familiar in everyday life." *United States v. Natal*, 849 F.3d 530, 536 (2d Cir. 2017) (citation omitted, alteration in original). Finally, expert testimony can be helpful "in guiding the trier of fact through a complicated morass of obscure terms and concepts," but it is not a vehicle to "usurp" the role of the factfinder. *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

Plaintiffs appear ready to ignore those admonitions, and the Court should not allow them to do so. The Court should be especially vigilant regarding hearsay and lay "opinions" in a case like this one, where passions can be inflamed and overstatement is easy, and it is particularly important to test credibility and factual declarations. Moreover, the Court should be prepared to exclude much of Dr. Logan's report and testimony, which is stuffed with hearsay and does "not analyze his source materials so much as repeat their contents." *United States v. Mejia*, 545 F.3d 179, 197–98 (2d Cir. 2008).

**I.   PLAINTIFFS' EVIDENCE CONTAINS VOLUMINOUS INADMISSIBLE HEARSAY THAT DOES NOT SATISFY ANY HEARSAY EXCEPTION**

Hearsay refers to any statement or assertion that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." *Abascal v. Fleckenstein*, 820 F.3d 561, 564 (2d Cir. 2016) (citing Fed. R. Evid. 801(c)).  Statements or assertions qualifying as hearsay are generally inadmissible. *See Blue Cross and Blue Shield N.J., Inc., v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) (citing Fed. R. Evid. 802).  The party seeking to introduce such evidence carries the burden of establishing its admissibility as either non-hearsay or under an enumerated exception. *See Glowczenski v. Taser Intern, Inc.*, 929 F. Supp. 2d 564, 576 (E.D.N.Y. 2013).  (Moreover, as explained in Defendants' Letter of April 7, (Doc. 94), there is nothing about the upcoming hearing that demands the Court make exceptions to the Federal Rules of Evidence and Civil Procedure.)

Plaintiffs appear to intend to seek to admit numerous instances of hearsay and double hearsay,  including: (1) Standard hearsay in the form of witnesses describing what others said about allegedly discriminatory activities; (2) News articles, especially quotations of individuals or groups within those news sources; (3) Reports produced by advocacy organizations; and (4) Complaints of discrimination reported to advocacy organizations or elsewhere.  These types of evidence should be excluded.

**1. Witnesses describing third-party statements**.  Plaintiffs appear determined to try to admit testimony that is the most obvious kind of hearsay: statements about what third-parties said.  Just a few examples should suffice, though many more could be provided:

- In a declaration attached as an exhibit to Plaintiffs' motion, Walter Barrientos details a woman's account of her election day experience.  Barrientos Decl. ¶29

3

(Doc. 41). Mr. Barrientos also relays a story that another man told him regarding an encounter with police. *Id.* ¶41.

- In his declaration, Daniel Altschuler declares what members of his organization believe about the Town's policies. Altschuler Decl. ¶35.
- In her declaration, Renee Ortiz states that she was "told" by a "number of voters" that they "felt uncomfortable and intimidated by the actions of . . . poll workers." Similarly, Ms. Ortiz details what an elderly citizen told her about her experience voting. Ortiz Decl. ¶¶39–40 (Doc. 45).

Of course, these types of statements strike at the very core of the rule against hearsay, the whole point of which is to exclude non-testifying witness statements because "the traditional bases for determining credibility—oath, demeanor, and cross-examination in the presence of the jury or by permitted depositions—are not available when the out-of-court declaration is proffered." *Gonzales*, 8 F. Supp. 2d at 199. Were these statements true? Were they exaggerated? Were they faulty? The Court cannot interrogate the declarants to find out, and these statements (as well as others like them) should be excluded.

**2. News articles and statements within news articles**. Plaintiffs also appear determined to rely on news articles. For instance, Ms. Ortiz references several articles in her declaration—attached as exhibits—and while Ms. Ortiz can testify as to her *own* views and opinions in those articles, the remainder is hearsay. Ortiz Decl. ¶24; *see also* Ramos Decl. ¶¶16, 18, 24 (Doc. 44); Barrientos Decl. ¶19. Media reports and "newspaper article[s]" are classic examples of inadmissible hearsay. *United States v. Mingo*, 112 F.3d 506 (2d Cir. 1996). Moreover, most news articles include double hearsay, that is, "hearsay within hearsay," where the report contains third-party statements or accounts of events. *Parsons v. Honeywell, Inc.*, 929

4

F.2d 901, 907 (2d Cir. 1991). For instance, news "articles are likely a reporter's account of what eyewitnesses reported," which means that not only the article but the statements *within* the article (from witnesses and commentators) are hearsay. *United States v. Baker*, 432 F.3d 1189, 1211 & n.23 (11th Cir. 2005) (holding Miami Herald articles inadmissible). *See also Green v. Baca*, 226 F.R.D. 624, 638 (C.D. Cal. 2005), *order clarified,* No. 02-cv-204744, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005) ("[T]o the extent the [news] articles quote statements by other individuals, and those statements are offered for the truth of the matter asserted, they constitute double hearsay."). Double hearsay is not admissible "unless *each level of hearsay* is covered by an exception to the hearsay rule." *Agric. Ins. Co. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413, 416 (S.D.N.Y. 2002) (emphasis added).

  **3. Reports produced by advocacy organizations.** Plaintiffs similarly appear ready to introduce reports produced by advocacy organizations, such as the Southern Poverty Law Center, for the truth of the matters contained therein. *See, e.g.*, Logan Report p. 23 (Doc. 38.1). These types of reports are classic hearsay and do not qualify for any hearsay exception. In *Glowczenski v. Taser Intern, Inc.*, for instance, the Court excluded a variety of media articles and public interest reports, including those from the ACLU and Amnesty International, reasoning that such materials could not qualify as learned treatises, periodicals, or pamphlets, nor business reports. 928 F. Supp. 2d 564, 576 (E.D.N.Y. 2013). (Moreover, the SPLC report is a decade old, further reinforcing its lack of reliability.)

  **4. Lists of complaints alleging discrimination, collected by advocacy organizations.** Plaintiffs hope to introduce testimony or documentation of logs and reports that purport to contain complaints of discriminatory behavior. Altschuler Decl. ¶11 (Doc. 39). For instance, in a declaration, Mr. Altschuler points to an "Election Protection hotline" log, which is collected by

5

Make the Road New York and purports to record instances of voter intimidation. *Id.* ¶11. Similarly, the Long Island Civic Engagement Table, a coalition of advocacy groups, collects third-party allegations of voting misconduct. *Id.* ¶¶ 3, 8.

These logs are, again, standard hearsay, and Plaintiffs cannot demonstrate a viable exception. Both of these organizations are private organizations, and thus the logs are not admissible under the public records exception. *See, e.g.*, *Abascal*, 820 F.3d at 566–67. Moreover, the records do not qualify as business records. There is no indication that the information gathered in the call logs was reported by a declarant with personal or firsthand knowledge of the alleged events. *See id.* at 565–66 (excluding report under business records exception due to lack of mechanism for confirming the underlying statements were made by subjects with knowledge of the events). And there is no indication of procedural or substantive safeguards that would insulate the logs from untrustworthy or sensationalized accounts. *See* Fed. R. Evid. 803(6)(e). Finally, even if the logs themselves were admissible, the contents of the logs are still hearsay because the contents are (apparently) references to third-party, out-of-court statements. *See, e.g.*, *Rodriguez*, 604 F. Supp. 2d at 623 (excluding the written portion of a report prepared in the regular course of business because it contained references to interviews and statements of non-parties where the preparer did "not have personal knowledge" of the assertion contained within); *see also Agriculture Ins. Co.*, 214 F. Supp. 2d at 416 n.3 (excluding portions of admitted document that referenced statements of witnesses to an accident).

These types of logs are the *reason* that rules against hearsay exist. As another judge in the Eastern District said when examining similar logs in a controversial abortion protest case, such compilations "tend to exaggerate the impropriety of . . . conduct and generally fail to provide the context of the interactions they describe." *New York by Underwood v. Griepp*, No.

17-cv-3706, 2018 WL 3518527, at *5 (E.D.N.Y. July 20, 2018). Without testing declarants in court, there is no way for Defendants to ensure that the allegations here are trustworthy. Because the only purpose for which Plaintiffs seek to introduce these logs is the double hearsay statements within, they and similar documents and testimony should be excluded entirely.

## II. PLAINTIFFS APPEAR PREPARED TO IMPROPERLY OFFER LAY WITNESS TESTIMONY THAT REQUIRES EXPERT QUALIFICATIONS.

Plaintiffs appear to intend to elicit lay witness testimony that flagrantly violates the rule against lay witnesses opining as experts. Fed. R. Evid. 701. Plaintiffs' declarants repeatedly opine on topics such as the *cause* of lower turnout among Latinos in Islip, the effect that the at-large structure has on the chances of Latino-preferred candidates, the electoral chances of Latinos, and similar topics. But a lay witness cannot advance opinions that are necessarily questions of "scientific, technical, or other specialized knowledge." *Id.* Instead, their opinions must be "rationally based on the witness's perception." *Id.* "Lay opinion under Rule 701 must be limited to opinions that result[] from a process of reasoning familiar in everyday life." *Natal*, 849 F.3d at 536 (citation omitted, alteration in original).

The opinions expressed in these declarations are the furthest thing from a "process of reasoning familiar in everyday life." *Id.* For instance, Mr. Altschuler declares that it is his "belief" that it is "virtually impossible for Islip's Latino community to elect a candidate of its choice to the Islip Town Board under the current at-large system" and that Latino "voter participation still lags behind white voter participation" because Latinos have not elected a candidate of choice in the past decade. Altschuler Decl. ¶6. But these are clearly opinions that require extensive scientific knowledge and methodology. How could Mr. Altschuler know that it is impossible for a Latino-preferred candidate to win, based on his "*first-hand perceptions*"? *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007) (emphasis added). What common-

7

sense reasoning brings him to this conclusion?  And how could he possibly know the causal forces behind relatively lower Latino turnout, when sociologists and political scientists cannot necessarily even agree?

Indeed, these *must* be statements requiring expertise because *plaintiffs' experts are putting forth these very conclusions*.  If Drs. McDonald, Beveridge, and Logan are not required to opine on issues such as political participation, bloc voting, and the feasibility of electoral success in various electoral systems, Plaintiffs should withdraw them now and instead rely on the reasoning of their fact witnesses, who apparently have already figured these complex issues out using common sense.  (In addition to the statements noted above, *see* Altschuler Decl. ¶5 ("[H]olding Town Board elections in off-cycle odd years" results in Latinos "fac[ing] a further disadvantage in accessing information about local elections."); Barrientos Decl. ¶9 ("[E]fforts to improve the lives of members in Islip were inhibited by the Town's at-large structure."); Ortiz Decl. ¶12 ("I believe the increased turnout was a direct result of my candidacy."); *id.* ("I do not think it is possible for a Latino candidate to win an at-large race in the Town of Islip."); *id.* ¶¶13, 36; Ramos Decl. ¶10.

Plaintiffs apparently hope to "evade" the "the reliability requirements" that apply to expert witnesses "through the simple expedient of proffering [] expert[s] in lay witness clothing."  *Natal*, 849 F.3d at 536.  The Court should not allow Plaintiffs to "conflate[e] expert and lay opinion testimony."  *United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013).  This and similar testimony from lay witnesses should be excluded.

### III. DR. LOGAN STATES INADMISSIBLE HEARSAY AS FACT RATHER THAN APPLYING EXPERTISE TO COMPLICATED OR ESOTERIC TECHNICAL ISSUES

Expert witnesses may opine on sophisticated technical issues to inform the factfinder, but they may not simply *assert* historical facts.  An expert may not intrude on the factfinder's role in

assessing credibility of a witness. *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005). It follows, then, that experts cannot opine about the credibility or truthfulness of *hearsay* statements in inadmissible documents. Where the expert usurps the role of the fact-finder, his testimony must be excluded. *Id.* at 397.

Similarly, experts cannot simply regurgitate hearsay to the factfinder. While experts may rely on hearsay to some extent in forming their opinions, they cannot "simply summarize the government reports, bank records, and other documents" that are inadmissible. *Lakah v. UBS AG*, 996 F. Supp.2d 25, 259 (S.D.N.Y. 2014). That is, an "expert may not . . . simply transmit . . . hearsay to the [factfinder]." *Mejia*, 545 F.3d at 197–98. Expert testimony and reports must be excluded where the expert "did not analyze his source materials so much as *repeat their contents*." *Id.* at 198 (emphasis added); *see also United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) (excluding portions of an expert report "[w]hen an expert is no longer applying his extensive experience and a reliable methodology").

Much of Dr. Logan's report, especially his sections on the police, public safety, and the environment, is nothing more than a repetition of unreliable hearsay, without any expertise added. He not only attempts to assert his conclusions as if they are historical facts, he also attempts to fix the relevant conclusions to draw from those facts, without applying any meaningful scientific methodology. Rather than perform "his limited role of providing the groundwork" so that the factfinder can decide the facts, *Duncan*, 42 F.3d at 101–02, he repeatedly states his own conclusions.

The most obvious example is Dr. Logan's reliance on a report by the Southern Poverty Law Center. Logan Report pp. 23–28. Although claiming to read the report "with caution," *id.* at 24, Dr. Logan repeats the contents of the report and accepts them without any analysis

9

whatsoever. He even repeats, verbatim, the SPLC's outlandish, apocalyptic *conclusions*, which describe an environment no reasonable person could ascribe to Islip (or anywhere in New York). *Id.* at 25–26 (quoting SPLC Report). Nor does Dr. Logan provide any analysis of his many further repetitions of the SPLC report, including (among others) his repetition of alleged quotes from county officials, *id.* at 26, his repetitions of the SPLC's belief that Latinos do not trust the police, *id.*, and his repetitions of SPLC's conclusion that Latinos are "targeted" by police, *id.* at 27.

Nor did Dr. Logan limit his hearsay to the SPLC report. He also repeats the claims of news reports regarding complaints about the Suffolk County police. *Id.* at 27–28 (quoting *Newsday* article). Similarly, Dr. Logan misleadingly repeats statements from Department of Justice documents, with no scientific analysis or methodology to confirm the accuracy of such statements. For instance, Dr. Logan repeats a DOJ Technical Assistance Letter's statement that DOJ had received reports that certain driver checkpoints had been used "'primarily to request documentation of citizenship.'" *Id.* at 28 (quoting DOJ Letter). But Dr. Logan does not analyze this statement, apply any methodology to evaluate it, or even reveal that DOJ was investigating but *had not confirmed* such reports.

Moreover, in "opining" as to the Roberto Clemente park incident, Dr. Logan again repeats news articles uncritically, *id.* at 34, 35, 36, without providing any analysis. He quotes a news report that itself quoted a concern (not attributed to anyone) that the illegal dumping incident was an act of "environmental racism." *Id.* at 35–36 (quoting *Newsday* article). Outside of repeating this double hearsay, Dr. Logan's only contribution is to unjustifiably expand that opinion to attribute it to the entire Latino "community." *Id.* He even goes so far as to ascribe culpability to the Town, based on a misunderstanding of a news report. *Id.* at 36. This is simply

10

a pattern in which he cites news reports, performs no expert analysis, but tries to decide historical facts for the Court.

Dr. Logan's report, at least as to the police, safety, and the environment, does not comprise the use of expertise to analyze complicated factual matter. It is a polemical narrative, based entirely on hearsay and double hearsay, without any scientific methodology even in use. Dr. Logan "may not . . . simply transmit . . . hearsay" to the Court, so his testimony and report should be excluded where they rely principally on third-party news sources and reports. *Mejia*, 545 F.3d at 197–98.

And this is not the first time that Dr. Logan has veered into testifying about historical facts outside of his purview. In *United States ex. Rel. Anti-Discrimination Center of Metro. N.Y., Inc., v. Westchester Cty.*, 2009 WL 1110577, at *5 (S.D.N.Y. Apr. 22, 2009), the Court excluded much of Dr. Logan's testimony, particularly where he was going to testify to historical facts, such as "what [the defendant] knew, what complaints it received, or its understanding of municipal resistance to affordable housing." That is strikingly similar to the kinds of "opinions" that Logan is putting forward here, regarding what certain people "felt," what the town "knew," and what complaints citizens have made.

And it is no surprise that Dr. Logan has had his testimony excluded previously, as he reiterated in his deposition in this case that he sees himself an expert in evaluating "credibility," as well as in "ferret[ing] out reliable and unreliable information." Logan Deposition Tr. pp. 155, 197. But "the credibility of witnesses is exclusively for the determination [of] the [factfinder]." *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988). The Second Circuit has "consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible." *Nimely*, 414 F.3d at

11

398. It follows that expert "opinions" as to the credibility of *hearsay* are even more clearly inadmissible, especially when *not* rooted in scientific or technical expertise.

Significant portions of Dr. Logan's report in this case (and, presumably, his testimony) "involve merely repeating information he had read or heard—information he learned from witnesses through . . . newspaper articles, police reports, and" similar documents. *United States v. Rubi-Gonzalez*, 311 F. App'x 483, 487 (2d Cir. 2009). As such, these portions—on police bias, public safety, and the environment—should be excluded.

## CONCLUSION

For the reasons stated above, the Court should exclude any documents or testimony Plaintiffs attempt to introduce that is or relies on hearsay, any witness testimony that attempts to introduce inadmissible lay opinion, and the portions of Dr. Logan's report and testimony that merely repeat hearsay or express opinions about factual matters not requiring expertise. These include, at least, Exhibits PX-001, PX-003 through PX-022, PX-024 through PX-071, PX-073 through PX-106, PX-121 through PX-129, PX-131 through PX-144, PX-147, PX-149 through PX-169, PX-171 through PX-187, PX-190 through PX-192, PX-194 through PX-223, PX-225 through PX-230, PX-236 through PX-248, as well as paragraphs 57–74 and 84–89 of Dr. Logan's report (PX-115).

Respectfully submitted,

Dated: April 8, 2019

*/s/ Laura Washington Sawyer*
Laura Washington Sawyer, Esq. (LS-4385)
Jennifer L. Del Medico, Esq. (JD-9913)
Michael T. Ferruggia, Esq. (MF-9558)
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Fax: (212) 755-7306

Email: lwsawyer@jonesday.com
jdelmedico@jonesday.com
mferruggia@jonesday.com

Michael A. Carvin, Esq. (MC-9266)
Louis K. Fisher, Esq. (LF-3979)
Stephen J. Petrany, Esq. (*pro hac vice*)
JONES DAY
51 Louisiana Avenue
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: macarvin@jonesday.com
lkfisher@jonesday.com
spetrany@jonesday.com

John R. DiCioccio, Esq.
Town Attorney
655 Main Street
Islip, New York 11751
Telephone: (631) 224-5550

*Counsel for Defendants Town of Islip and Islip Town Board*

13