# EXHIBIT A

**Supplemental Expert Report**

**John R. Logan, Ph.D.**

*Ana Flores, Rene Flores, Maria Magdalena Hernandez, Magali Roman,
Make the Road New York, and New York Communities for Change*
**v.** *Town of Islip, Islip Town Board, Suffolk County Board of Elections*

I.   **Introduction**

1.  I have been retained as an expert by counsel for the Plaintiffs in the above captioned litigation. I have prepared this supplemental report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).

2.  I submitted an Expert Report on March 1, 2019, in which I expressed opinions regarding the extent to which members of the Latino community in Islip, New York bear the effects of discrimination in areas such as education, employment, and health, which hinder their ability to participate effectively in the political process. My initial expert report also considered additional relevant areas of discrimination or disadvantage, including policing and public safety and environmental hazards.[1]

3.  Since submitting my initial Expert Report, the final declarations of Ana Flores, Walter Alfredo Barrientos Perez, and Phil Ramos, as well as the transcript for the deposition of Belinda Alvarez-Groneman, became available to me.

4.  In connection with my professional work and advising of doctoral students, I sometimes rely on and encourage others to rely on accounts by informants that are reported in sources such as newspaper articles and other reporting. These firsthand accounts gain credibility to the extent that they are consistent with other accounts from different sources on similar

---

[1] John R. Logan Declaration, Mar. 1, 2019, Ex. A, ECF No. 38-1 (hereinafter "Logan Report").

Page | 1

topics.  The new materials I have reviewed in connection with this supplemental report provide a strong basis for forming an opinion because they provide considerable information about the person's background and a complete statement of their views.  In addition, these materials were all provided under penalty of perjury.  I consider them useful not only in their own right, but also for their potential to confirm accounts that I relied on in my initial Expert Report.

5. The declarations and deposition discussed above further support the opinions disclosed in my initial Expert Report regarding the disadvantages experienced by Latino residents of the Town of Islip and/or Suffolk County in regards to policing and public safety.  Specifically, they further demonstrate that law enforcement has not established sufficient trust with the Latino community in Suffolk County and in Islip, causing insecurity about day-to-day safety and the willingness and ability of police to protect the Latino community.  This creates unhealthy stress, is an obstacle to the sort of police-community collaboration that might better confront crime, and is likely associated with a sense of marginality that hinders political participation.[2]

6. My background and qualifications, including my curriculum vitae and a list of my prior testimony are contained in my March 1, 2019 Expert Report.

II. **Supplemental Basis and Reasons for Opinion**

7. I reviewed the declaration of Phil Ramos, a New York State Assemblyman representing the 6th Assembly District, which includes all or parts of Brentwood, Central Islip,

---

[2] Logan Report ¶ 74.

North Bay Shore, Bay Shore, and Islandia.[3] Mr. Ramos is Latino and has lived in Brentwood all of his life.[4]

8. In paragraph 33 of his Declaration, Mr. Ramos stated: "I have witnessed the relationship between the police and the Latino community in Islip from all angles, since I grew up in Brentwood and was also a police officer in the Third Precinct there. When I was growing up, I witnessed police abuse against members of the Latino community. As a police officer, I was the President of the Police Hispanic Society, which brought legal action against the Suffolk County Police Department for incidents of discrimination and racism within the department. As an Assemblyman, I worked with MRNY to address police tactics that target the Latino community, such as aggressive traffic ticketing, troubling reports that police officers do not take complaints made by Latinos seriously, and reports that police routinely ask Latino victims for their identification. These practices discourage Latinos from calling the police."[5]

9. Mr. Ramos's declaration carries considerable weight because of his longtime residence in Brentwood, his background as a former police officer who served that community, and his current role as an elected member of the State Assembly representing the Latino neighborhoods of Islip. Given that Mr. Ramos has witnessed police abuse against members of the Latino community, has identified incidents of discrimination and racism within the SCPD, and has worked to address police tactics that target Latinos, his statements reinforce my opinion that there is distrust of the police in the Latino community. Mr. Ramos describes "troubling reports" that officers do not take complaints made by Latinos seriously and routinely ask Latino victims for identification. These reports are consistent with reports to DOJ investigators and

---

[3] Phil Ramos Declaration, Feb. 25, 2019 at ¶ 2, ECF No. 44.

[4] *Id.* at ¶ 3.

[5] *Id.* at ¶ 33.

Page | 3

DOJ's finding of weaknesses in SCPD's procedures that do not prevent such behavior, as well as reports of interviews by journalists and the SPLC researcher.

10.  I also reviewed the declaration of Walter Barrientos, who has lived on Long Island for most of his life. Mr. Barrientos worked for Plaintiff Make the Road New York ("MRNY") in Brentwood from April 2014 until October 2018.[6]

11.  In paragraph 29 of his report, Mr Barrientos stated: "The SPLC report's coverage of hate crimes in Suffolk County has been borne out in my personal experience."[7]

12.  In paragraph 30 of his report, Mr. Barrientos stated: "Police brutality and misconduct is rampant in Islip and throughout Suffolk County. The police are rarely held accountable for their mistreatment of minority communities. For years in Suffolk County, Officer Scott Greene targeted and robbed Latino drivers. In January 2015, Greene was convicted of petit larceny, official misconduct, and grand larceny in the fourth degree, but was acquitted of the more serious charges of fourth-degree grand larceny as a hate crime. Even though Greene admitted he robbed one of the drivers, an undercover sting operation had recorded video of one of the robberies, and all seven of the victims who testified at his trial were Latinos, the jury found that Greene had not been targeting Latinos."[8]

13.  In paragraphs 31 and 32 of his Declaration, Mr. Barrientos details the response to this incident, noting that organizations including MRNY, the New York Civil Liberties Union ("NYCLU"), and others issued a statement about the Greene verdict and called for the DOJ to

---

[6] Walter Alfredo Barrientos Perez Declaration, Feb. 27, 2019 at ¶¶ 2, 5-6, ECF No. 41.

[7] *Id.* at ¶ 29.

[8] *Id.* at ¶ 30.

get involved. He also described the formation of what is now called Unity Collaborative, a "coalition devoted to trying to end biased policing practice in Suffolk."[9]

14. In paragraph 33 of his Declaration, Mr. Barrientos stated: "Members of the Latino community frequently reported that the police either actively harassed them or were uninterested in offering them help."[10] He went on the explain that, as part of his role as Long Island coordinator for MRNY, "people came to [him] personally with serious issues of police brutality several times every year."[11] He and his staff memorialized these incidents, and if serious enough, "reached out to Latino Justice or NYCLU to see if they wanted to take the case."[12]

15. In paragraph 34 of his Declaration, Mr. Barrientos went on to describe in detail "one of the most serious incidents of discriminatory policing."[13] Exhibit K to his Declaration is an email he wrote memorializing the incident, which occurred on September 9, 2015, and involved a young Latino man who was "severely bruised and burned" after he was held face down on the pavement by police.[14] Mr. Barrientos stated: "The police held him face down on the pavement for 15 minutes or more. As a result, his face was scratched and burned from the pavement. The police let him go without charging him, but they arrested his friend. The police forced him to sign a statement without permitting him to read it. Then they harassed him by phone for the next several hours, calling from multiple different numbers and telling him that he

---

[9] *Id.* at ¶¶ 31-31.

[10] *Id.* at ¶ 33.

[11] *Id.*

[12] *Id.*

[13] *Id.* at ¶ 34.

[14] *Id.* at ¶ 34, Ex. K.

Page | 5

needed to confess to a crime he had not committed. The police also made some insulting remarks about the quality of the young man's English."[15]

16. Because he worked for many years as a community organizer in Long Island, Mr. Barrientos's comments are informative not only about his personal perceptions and experiences, but also about the many local residents with whom he has been in contact. Mr. Barrientos describes the prosecution of SCPD Officer Scott Greene, which I also relied upon in forming my opinion. Mr. Barrientos stated that he and other advocates for the Latino community perceived the results of Greene's prosecution (where he was convicted of crimes but absolved of hate crimes) to illustrate a broader pattern in which crimes against Latinos are not taken seriously by authorities. Mr. Barrientos also stated that he personally talked with several people every year who reported serious issues of police brutality, and he provides details about one of these incidents of police misbehavior against a Latino man. Mr. Barrientos's declaration is consistent with and reinforces my opinion that the Latino community does not trust the police.

17. I reviewed the Declaration of Ana Flores, a U.S. citizen originally from El Salvador, who has been a resident of Brentwood since 2006.[16]

18. In paragraph 25 of her Declaration, Ms. Flores stated: "On July 28. 2017, when I was a student at Suffolk County Community College, President Donald Trump came to visit the campus to speak about gang activity and violence in our community. I was not invited to attend and I am not aware of anyone from the Latino community who was invited to attend. Instead, I watched news coverage of President Trump's speech on television. I recall President Trump making comments that condoned the police abuse against immigrants who are arrested. I saw

---

[15] *Id.* at ¶ 34.

[16] Ana Flores Declaration, Feb. 27, 2019 at ¶ 1, ECF No. 42.

police officers, who I recognized to be members of the Suffolk County Police Department based on their uniforms, cheering President Trump's comments. I felt like the president was condoning police abuse particularly against Latinos who are already unfairly associated with gangs and violence. I have often discussed this issue with my classmates and other members of the Brentwood community who share these concerns."[17]

19. Ms. Flores's statements about the police officers' positive response to President Trump's comments reinforce my opinion that the SCPD has not established sufficient trust with the Latino community. Instead of supporting efforts to protect the Latino community from gang violence, Ms. Flores felt that the President was turning the issue against the Latino community, and she perceived police officers to be "cheering" this message. Ms. Flores's declaration suggests that she continues to be concerned about the implications of this incident. Her statement that she often discusses this issue with others in the Brentwood community, and that her concerns are shared by others, is consistent with information that I previously relied on from newspaper articles, the DOJ Technical Assistance Letter, and the report by the SPLC.

20. I also reviewed the transcript from the April 4, 2019 deposition of Belinda Alvarez-Groneman, who previously lived in Brentwood and has lived in East Islip since the mid-1980s.[18]

21. In her deposition, Ms. Alvarez-Groneman explained that she was a Suffolk County Police Officer for approximately 15 years in the late 1980s and 1990s.[19]

22. Prior to becoming a Police Officer, from 1981 to 1985, Ms. Alvarez-Groneman served as a "community service aide" for the SCPD as part of program "to bridge the gap

---

[17] *Id.* at ¶ 25.

[18] Deposition of Belinda Alvarez-Groneman, April 4, 2019 at 10:7-11:2.

[19] *Id.* at 10:2-20.

between the community and the police department."[20] As a community service aide, Ms. Alvarez-Groneman was specifically focused on Brentwood.[21] In explaining the program, Ms. Alvarez-Groneman stated: "Well, maybe there was a disconnect in the community and sometimes the community felt not comfortable with the police department, and it gave us the opportunity to be that voice and to make the community feel comfortable enough."[22]

23. In the mid-1990s, Ms. Alvarez-Groneman was appointed Special Assistant to the SCPD Commissioner, where her responsibility was again "bridging the gap between the police department and the community."[23] In that position, Ms. Alvarez-Groneman attended meetings and conveyed complaints from the Latino and African American communities of Suffolk County to the Commissioner.[24] When asked about the types of issues she brought to the Commissioner, Ms. Alvarez-Groneman stated: "I think one of the issues that the community had at large was trying to get more representation to come on law enforcement. We used to hear that all the time. 'We'd like to see more African American police officers out there, we'd like to see more Hispanic police officers out there.'"

24. Ms. Alvarez-Groneman stated that she was aware that the United States Equal Employment Opportunity Commission ("EEOC") had concluded in 1996 that Black and Hispanic police officers in Suffolk County had "repeatedly endured racial and ethnic discrimination on the job and routinely been denied promotions."[25] Ms. Alvarez-Groneman

---

[20] *Id.* at 94:11-22, 97:15-98:18.

[21] *See id.* at 100:9-13.

[22] *See id.* at 98:25-99:7.

[23] *See id.* at 104:8-22.

[24] *See id.* at 105:3-106:8.

[25] *See id.* at 237:4-10, 238:3-14.

further stated that she believed a consent decree was necessary to increase minority representation on the SCPD.[26]

25. When Ms. Alvarez-Groneman was presented with the conclusion in the SPLC report that "Immigrants in Suffolk County don't trust the police. They say there's no point in reporting bias-motivated harassment, threats or assaults, even severe beatings," she stated: "This was something that was mentioned in the community."[27]

26. Ms. Alvarez-Groneman's deposition is informative because she has had considerable experience working with the Latino community, both as a community service aide employed by the SCPD and as an active member of non-profit organizations that serve the Latino community in Islip. Ms. Alvarez-Groneman's testimony reinforces my opinion about the Latino community's distrust of the police and the reasons for that distrust based on: 1) the history of discrimination within the SCPD, 2) the consent decree that caused SCPD to increase minority representation, 3) the need to create positions like those held by Ms. Alvarez-Groneman in order to improve police relations with the Latino community, and 4) the existence of a perception within the Latino community that it cannot trust the police.

### III. Conclusion

27. Taken together, the declarations and deposition discussed above are consistent with and usefully supplement the materials that I previously relied upon to form my opinion regarding the disadvantages experienced by Latino residents of the Town of Islip and/or Suffolk County in regards to policing and public safety: Law enforcement has not established sufficient trust with the Latino community in Suffolk County and in Islip, causing insecurity about day-to-

---

[26] *See id.* at 249:18-250:17.

[27] *See id.* at 264:7-265:8.

day safety and the willingness and ability of police to protect the Latino community. This creates unhealthy stress, is an obstacle to the sort of police-community collaboration that might better confront crime, and is likely associated with a sense of marginality that hinders political participation.

Date: April 8, 2019

_____
John R. Logan

## Appendix A: Sources Relied on in this Supplemental Report

Phil Ramos Declaration, Feb. 25, 2019, ECF No. 44.

Walter Alfredo Barrientos Perez Declaration, Feb. 27, 2019, ECF No. 41.

Ana Flores Declaration, Feb. 27, 2019, ECF No. 42.

Deposition of Belinda Alvarez-Groneman, April 4, 2019.