# MEMORANDUM

TO:     County Executive Steve Bellone

FROM:   Amol Sinha, New York Civil Liberties Union
        Daniel Altschuler, Long Island Civic Engagement Table
        Karina Claudio, Make the Road New York
        Brian Young, New York Communities for Change

DATE: December 19, 2012

**RE: Voter Issues in Suffolk County**

The right of citizens to vote is the foundation of a functioning democracy. This right means little, however, if citizens are not granted meaningful opportunities to participate in their civic duties. While the United States and New York Constitutions dictate voting eligibility, the state and localities must prevent obstructions to voting rights.

On Nov. 6, Election Day, the New York Civil Liberties Union, the Long Island Civic Engagement Table, New York Communities for Change, and Make the Road New York engaged in voter protection work in Suffolk County. Through our voter protection effort, which included a voter hotline, we uncovered systemic issues within Suffolk County's Board of Elections (BOE), which ultimately hindered individuals' ability to vote. Specifically, we found that:

- Suffolk BOE implemented a policy to not accept voter registrations submitted through New York Department of Motor Vehicles' (DMV's) online voter registration system.
- Poll workers in Suffolk County requested identification from voters when inappropriate.
- Poll workers engaged in voter intimidation and tried to influence votes of minority voters.
- Information about polling place changes was not readily available.

This memo details the problems our organizations identified and the steps that Suffolk County must take to ensure that votes that were not counted on November 6th are counted, and that voters in future elections do not encounter the same disenfranchisement that occurred this year.

**The Suffolk BOE improperly refused registrations submitted through the DMV's online system**

Days before Election Day, the Brennan Center for Justice discovered that the Suffolk County BOE improperly refused to accept registrations submitted through the DMV's online system. In August 2012, the state DMV, in conjunction with Governor Cuomo's office, developed an online voter registration process permitting voters to complete the voter registration process online, including a signature drawn from the DMV's existing records. With no known notice given to the public, the Suffolk County BOE implemented a policy to not accept voter registrations submitted through the DMV's online system. According to a BOE official's account to *Newsday*, this affected over 3,000 voters in Suffolk County.[1] Residents who took advantage of the DMV's online system risked being wrongfully disenfranchised on Election Day. Prior to Nov. 6, the Brennan Center sent a letter to the Suffolk County BOE and the New York State BOE, but no meaningful corrective action was taken (see attached letters).

The Suffolk County BOE may have been concerned about the quality of the signatures through the DMV's online system. By refusing to accept online voter registrations, however, the Suffolk County BOE is in violation of the law. County boards of election are required to accept all valid voter registration applications submitted through the DMV's online process, including those with digitized copies of applicants' original signatures. For purposes of state law, digitized copies of original signatures are no different than other signatures. The signature used on the registration application and the one used for ballot verification is a digitized version of the "wet signature" that the registrant provided in his or her DMV file. The quality of digitized signatures is no worse than the quality of the signatures that appear in poll books and are thus appropriate for use in ballot verification. Notably, no other county in the state refused to honor the DMV online registration system.

Additionally, county boards of election do not have discretion to refuse to process valid voter registration forms. New York State Election Law vests the DMV with authority to design the registration form[2] and requires county election officials to accept voter registration applications transmitted by the DMV. The law provides that the DMV

---

[1] "Voting machine failures in Nassau; voter roll dispute in Suffolk." *Newsday*. Nov. 6, 2012.

[2] N.Y. Elec. Law §5-212(2) (McKinney 2012).

**Plaintiff's Exhibit**
**PX-060**

"shall" transmit voter applications to the "appropriate board of elections" and that the forms "shall be processed by the board of elections" in the manner prescribed by New York Election Law.[3] Furthermore, the attached letter sent to the Suffolk BOE by the Brennan Center highlights other state law and federal law concerns raised by the BOE's failure to accept valid voter registrations.

*Recommendations*

Suffolk County must take concrete steps to abide by the law. First, Suffolk's BOE must make certain that any and registrations and all affidavit ballots filed by voters who could not file standard ballots due to the BOE's misguided policy are counted.

Second, though the county BOE has no discretion in rejecting valid registrations, if, in the future, it deems a registration to be of questionable validity, the county must do everything in its power to resolve the problem rather than disenfranchise voters. If the quality of a signature is a problem, Suffolk BOE should contact the DMV to ask for better quality digitized copies. In the event that this is not possible, the BOE should provisionally register the person and ask that the person to confirm their signature on Election Day. The burden of registration should remain on the BOE, and the BOE should err on the side of accepting registrations rather than disenfranchising voters.

**Suffolk County poll workers improperly demanded identification from voters and attempted to intimidate voters and influence votes**

Through our voter protection hotline, advocates received several complaints from voters who were asked for identification when trying to vote. Poll workers allegedly requested identification from both veteran and newly-registered voters, particularly in communities with significant concentrations of people of color, without legal grounds to do so. In particular, we received complaints that poll workers in Wyandanch and Brentwood were asking voters for identification while they were standing in line to vote. In addition, first-time voters who explained that they had, indeed, provided their identification number on their voter registration form, reported being asked to present identification. Other voters who had previously voted at the same polling place told us that they were asked for identification before they cast their ballots. New York State law only requires newly registered voters to present identification when they did not provide an identification number on their voter registration form.[4] And, this identification need only be a proof of residency, including documents such as a water bill or a lease.[5]

Moreover, when advocates called the Suffolk County BOE to address this issue, we received troubling responses. One BOE staff member told us that all first time voters must present identification when voting, clearly inconsistent with state law. Another BOE official began by giving the same response, but only recanted when an advocate reminded her of the law. And when we asked about what types of identification would be required of voters, BOE officials had to be reminded that any form of residency proof would suffice.

Identification requirements, which have made national news headlines this year, disproportionately disenfranchise low-income, young, elderly, homeless, and minority voters, who more frequently lack certain forms of identification. New York State has wisely refused to implement voter identification laws. Poll workers who are demanding identification inappropriately are frustrating a policy choice and breaking the law.

In addition to these problems with identification requests, advocates received complaints from voters of poll workers indicating with physical gestures that they should vote for a particular candidate or for a particular party line. This was particularly a problem for minority voters and those with limited English proficiency. Voter intimidation is unlawful and hinders people from exercising their right to vote. Citizens should not be targeted for their perceived political leanings, and if intimidation occurs by county employees, county officials must take action immediately.

*Recommendations*

To ensure that Suffolk County abides by New York State law, the county BOE must make certain that poll workers do not make unlawful identification requests or intimidate voters. To best execute this, the county must take two concrete steps.

First, the Suffolk BOE must conduct ongoing training of central BOE employees and poll workers. Training should be comprehensive and include lessons on the following: when voters must show identification, what types of

---

[3] *Id.* §§ 5-212(6), 5-212(9).

[4] N.Y. Elec. Law § 8-302(2-a) (McKinney 2012).

[5] *Id.*

2

identification are acceptable, the differences between proofs of residency and government-issued photo ID, non-partisan behavior and etiquette when interacting with voters, and lessons on how to interact with those with limited English proficiency. BOE staff and poll workers who have worked in previous elections must be re-trained in order to make sure they are up to date on the law. The training should be as transparent as possible, and the public should have access to training materials.

Second, the Suffolk BOE must provide for an effective, independent oversight mechanism for citizens to report problems when registering to vote and voting. Currently, advocacy organizations like ours take on the daunting task of monitoring as much Election Day activity as we can. Grassroots organizations, however, have limited reach, potentially leaving individual citizens without recourse. The BOE is best situated to implement a centralized reporting system, where voters can file complaints of problems they may experience when registering to vote or casting a ballot. The system should consist of a hotline, an email address, and an online form that allows voters to file their complaints. And, the system should be run by a non-partisan committee.

The county should create a continuous log of complaints, in order to make sense of the types of problems county residents encounter when trying to vote in Suffolk. In addition to maintaining the data, the county should have supervisory, non-partisan poll monitors who are well-versed in the state's election law, can respond to individual complaints, and are prepared to be a resource for voters on Election Day. Finally, the county should engage in a public education campaign so that voters 1) know their rights when registering or casting a ballot and 2) feel comfortable reporting problems they experience to the county. All of the signatories to this memo would be willing to work with the Suffolk BOE to help craft a robust public education campaign that will inform the public and create the best environment for voters attempting to cast a ballot.

### The Suffolk County BOE did a poor job of informing the public about poll site changes

Super-storm Sandy created an extremely difficult situation for everyone involved in the recent elections. While we recognize the enormous logistical challenges faced by the BOE, we identified certain problems that could have been prevented. Through our hotline and outreach, we learned about voters who were not informed that their polling places had changed until they showed up at their original polling places, where the only signage provided was a list of potential locations where their poll site might be. Inadequate signage may have caused certain voters to go to poll sites other than their assigned relocation site. This means that voters may have unnecessarily gone to sites outside of their House of Representatives, State Senate, or State Assembly district, effectively disenfranchising them from voting in these elections. While Sandy created hardships that most could not expect, such a situation may occur again, and the county BOE must be prepared to enable as many citizens as possible to vote.

*Recommendations*

The county should develop comprehensive protocols to respond to emergencies that may cause as much disruption as Sandy. This protocol, which should be accessible to the public, should indicate what to do in case many polling sites have to be closed. Our recommendations include ensuring that poll workers are at original polling locations guiding voters to the new polling place; posting large signage that is of a legible size and available in all languages covered by the Voting Rights Act; and placing automated calls to all voters whose polling places have changed to inform them of the new location. Additionally, the county BOE should post up-to-date information about polling site changes on its website. Finally, in case of future emergency situations, Suffolk should ensure that it has more than enough affidavit ballots for those who could be potentially displaced. It must also make sure that it has access to more ballots if necessary.

### Conclusion

The Suffolk County BOE must take steps to provide its residents with meaningful opportunities to engage in their democracy. To fulfill its mission, the Suffolk BOE must create the best conditions possible for civic engagement and eliminate the potential for disenfranchisement. Our organizations look forward to working with the County to ensure that the BOE is meeting its goals and effectively serving all Suffolk County voters.


Enclosures

CC:   Deputy County Executive Jon Schneider
      Assistant Deputy County Executive Luis Montes

3