**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ANA FLORES, RENE FLORES, MARIA
MAGDALENA HERNANDEZ, MAGALI
ROMAN, MAKE THE ROAD NEW YORK, AND
NEW YORK COMMUNITIES FOR CHANGE,

                      Plaintiffs,

    v.

TOWN OF ISLIP, ISLIP TOWN BOARD,
SUFFOLK COUNTY BOARD OF ELECTIONS,

                      Defendants.

Case No. 2:18-cv-03549 (GRB) (ST)

---

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE***
**TO EXCLUDE EVIDENCE ON FUTURE DEMOGRAPHIC CHANGES AMONG**
**ISLIP'S CITIZEN VOTING AGE POPULATION**

## INTRODUCTION

Plaintiffs' motion *in limine* ostensibly seeks to exclude "evidence on future demographic changes among Islip's citizen voting age population," but in their memorandum of law in support ("Motion"), Plaintiffs never identify any evidence that they want excluded.  That is likely because the evidence showing the rapid and continuing growth of Islip's Latino citizen voting-age population ("CVAP") is largely *Plaintiffs' evidence* that is already in the record. There is no actual dispute about the growth trend of Latinos in Islip and certainly no need to exclude any evidence.

Plaintiffs' Motion is instead largely a substitute for a pre-trial brief, as Plaintiffs make numerous *legal* arguments about the undisputed demographic trends.  Plaintiffs do not even get the arguments right.  They set up a strawman, pretending Defendants contend that, sometime in the future, Islip will "cure" its "present" violation of the Voting Rights Act thanks to a continued growth in the Latino population.  But that is not the point and never has been; there *is no* present violation of the VRA in Islip, a point that the demographic trends help establish.  Regardless, a motion *in limine* is not a vehicle to make an opening statement.  Plaintiffs' Motion should be stricken, or at least denied.

## ARGUMENT

I.      **Plaintiffs Point to No Actual Evidence They Want to Exclude, As Evidence of Latino Population Growth Comes from Undisputed Census Bureau Data that Plaintiffs Themselves Rely On.**

Plaintiffs seek to exclude "[e]vidence of hypothetical future demographic changes in the Town of Islip" because it is supposedly "irrelevant to the third *Gingles* precondition as a matter of law."  Motion at 3.  They also assert that there is "absolutely no basis in the record to support assertions that the Latino population in Islip is rapidly growing."  *Id.*  None of this makes any sense.  That the Latino population in Islip is growing is an undisputed fact that Plaintiffs

1

established via their own expert evidence, which was admitted at the preliminary injunction hearing.  And so, unsurprisingly, Plaintiffs cannot identify any evidence that they actually want excluded.

The only tangential mention of any particular "evidence" in Plaintiffs' motion is a supposed "allu[sion]" by Defendants' expert Dr. Alford to the "rapid increase in Hispanic CVAP" and "potential for continued growth."  Motion at 2.  But Dr. Alford's "allu[sion]" was simply a reference to *Plaintiffs' own expert report*.  *See* Motion Ex. B, at 12 (referring to the "rapid increase in Hispanic CVAP evident in the report of [Plaintiffs' expert] Dr. Beveridge").

And testimony that this growth is "rapid" and likely to continue is hardly "speculative," Motion at 2; instead, it is virtually undisputed.  As Dr. Alford noted in his report, Plaintiffs' own expert, Dr. Beveridge, opined that the Latino citizen and citizen voting-age population *is* growing, and for good reason.  *See* Ex. 1, Expert Report of Dr. Andrew A. Beveridge (admitted into evidence as PX-108 on April 15, 2019)  ¶¶ 51–55.  Census bureau statistics, relied upon by both sides, unequivocally establish as much.  Just to take one illustrative example, as recently as 2000, only 12.85% of Islip's CVAP was Latino.  *Id.* Table 5.  By contrast, the census bureau estimate for 2017 is that nearly *26%* of Islip's citizens are Latino.  *Id.*  It is hard to know how to describe a *doubling* in Latino citizen share in roughly 17 years as anything other than "rapid" growth, and it is an increase that Plaintiffs' own expert first noted, before Plaintiffs decided the fact was inconvenient for their case.

Further, there is no reason to believe this growth trend will slow down any time soon, as Plaintiffs' expert Dr. Beveridge also opined.  Dr. Beveridge previously explained that, "[g]iven these trends, it is reasonable to expect that Islip's Latino CVAP proportion has continued to increase since [the most recent available data] and will continue to do so."  *Id.* ¶ 51.  Plaintiffs'

expert explained that the Latino share of the citizen population *under* 18 dwarfs the Latino percentage of total citizens, meaning that "even without any migration of Latinos into Islip, the proportion of Latino CVAP will continue to grow." *Id.* In other words, the Latino citizen population skews much younger than the population as a whole, so as it ages, it will take up a larger and larger share of the voting-age citizenry. The statistics in Dr. Beveridge's report, which was admitted into evidence at the preliminary injunction hearing, illustrate his point. Under the most recent data that Plaintiffs' expert provided, the Latino share of Islip's citizens under 18 was 1.75 times the Latino share of Islip's citizens of voting age. *Id.* Table 2.

Meanwhile, Plaintiffs' claim that Islip's Latino CVAP is growing by under 1% a year is deeply misleading. Motion at 5. Latinos' *share* of Islip's CVAP is growing by almost 1% a year, which is rapid growth indeed—again, the Latino share of CVAP *doubled* in about 17 years. If trends continue and the Latino share of CVAP continues to increase by almost 1% a year (as Plaintiffs' own expert expects), then in 2024, Latinos will make up a *third* of Islip's CVAP, and by the end of this decade, they will make up *40%*. Parties can differ on semantics, but there is hardly a more apt description for this growth than "rapid." Plaintiffs' contrary arguments should be rejected.

## II. Plaintiffs' Motion Is a Substitute for a Pre-Trial Brief and Should Be Stricken.

As demonstrated above, Plaintiffs do not honestly attempt to exclude any "evidence" with their Motion, as the relevant evidence is undisputed census data already in the record, plus the common sense point (made by their own expert) that this rapid Latino population growth shows no signs of suddenly stopping. Instead, Plaintiffs make legal arguments about what the relevant demographic trends can or cannot show. This is an abuse of a motion *in limine*, an attempted pre-trial brief where the Court called for none. *See, e.g.*, Motion at 2 ("Defendants

3

should not be permitted to *assert*…" (emphasis added)).  There is no jury to protect from irrelevant arguments, so the Court can accept the arguments (or not) when Defendants make the arguments (or not).  Plaintiffs' Motion should be stricken entirely.

The nature of Plaintiffs' Motion is clear not only because they identified no evidence to exclude, but also because they assert only that evidence of demographic trends is "irrelevant to the third *Gingles* precondition."  *Id.*  Of course, Defendants have no interest in re-trying the *Gingles* preconditions, upon which Judge Spatt already ruled.  Nowhere do Plaintiffs contend that the rapid growth in Islip's Latino population is irrelevant to the Section 2, totality-of-the-circumstances analysis.  Instead, they make legal arguments about what demographic trends supposedly can or cannot establish in a Section 2 case.

Regardless, Plaintiffs are wrong about the relevant arguments:  The rapid growth in the Latino population supports Defendants' position that, under the totality of the circumstances, Plaintiffs have failed to prove that Islip's Latinos lack "equality of opportunity" in Town Board elections.  *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 428 (2006).  Far from the caricature that Plaintiffs cut and paste out of a few lines of a three-week hearing, Defendants' argument is not that "future" changes will "cure" "present-day VRA violations."  Motion at 2.  Instead, the demographic changes help illustrate that there *are no* "present-day VRA violations," as Judge Spatt agreed in his comprehensive order denying a preliminary injunction.

For instance, virtually Plaintiffs' entire case rests on the notion that Latino candidates of choice have rarely been elected to the Islip Town Council.  But what the rapid growth in Latino population shows is that this evidence is not particularly probative, because until very recently, there simply *were not* many Latino citizens in Islip.  So it is hardly a sign of discrimination, or lack of access to the political process, that Latinos' chosen candidates rarely won.

Moreover, the rapid growth in Latino population also shows that Latino political power is increasing (and will continue to increase), which again contradicts the notion that Latinos lack equality of political opportunity.  Plaintiffs waited (and waited and waited) to file their complaint until the instant that Latinos in Islip could arguably satisfy the *Gingles* preconditions.  But the very same trends that led Latinos to arguably satisfy *Gingles* are the same trends that make Islip Latinos increasingly likely to elect candidates of choice to Town Council—just as they have now done at the county, state, and national level.  It is surely relevant to the totality of the circumstances that Latinos *only recently* achieved a population large enough to potentially support a hypothetical majority-minority district and that this growth continues, making continued electoral competitiveness in 2021 extremely likely.

Indeed, the Court *must* examine evidence of the likelihood of continued Latino growth because Plaintiffs seek *prospective* relief.  That is, the Court's holding will ultimately answer the question whether Latinos in Islip lack political equality with respect to *upcoming*, not *past* elections.  Evidence of past elections and past demographics are useful only insofar as they help *predict* what the present and future look like—the Court cannot issue injunctive relief based solely on past violations, even assuming there was one (and there was not).  *See, e.g.*, *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).  For instance, if there were somehow incontrovertible evidence that, by November 2021, Latinos in Islip would *not* satisfy the *Gingles* preconditions, that would end the case; it would not matter that at some point in the *past* they had done so.  Similarly, the rapid growth in the Latino population helps establish that Islip is likely to have even more Latino voters in the near future, improving the already competitive position of Latino candidates of choice in Islip Town Board elections.

The case Plaintiffs cite to the contrary, *Patino v. City of Pasadena*, 230 F. Supp. 3d 667, 713 (S.D. Tex. 2017), is wholly inapposite.  In that case, "Pasadena Latinos were poised to elect a majority of the City Council for the first time in the City's history," and this "imminent power shift" led the Town to *change* its electoral structure to ensconce the majority's power.  *Id.*  In that circumstance, demographic trends did not support the defendant city's position precisely because it was those trends that *led* to an intentional political change aimed at diluting the minority vote.  But that is nothing like the situation here, where the Town of Islip has changed *nothing*.  Instead, it is the Plaintiffs who waited until Latinos arguably (barely) satisfied the *Gingles* preconditions and then filed suit before the same demographic trends that shifted the *Gingles* preconditions analysis resulted in electoral success.

If anything, there is a great danger in assuming that Section 2 requires a restructuring of the electoral process because a growing minority population has failed to elect a candidate of choice in a few elections after it has reached substantial size.  By creating a single-member districting scheme, the Court necessarily would compel packing Latinos into one of the districts.  That is, Latino voters would be overrepresented in one district and underrepresented elsewhere— so Latino voters would be guaranteed one candidate of choice but also would be crippled in any effort to obtain a *majority* of the Town Board.  The Latino majority district, moreover, necessarily would be a "super-packed" Democratic district, which is highly relevant because Latino candidates of choice are *always* Democrats.  Indeed, Plaintiffs' own experts projected that in a majority-Latino district, Latino candidates of choice would have won past elections with *more than 70%* of the vote.  This packing, of course, is classic gerrymandering, and it would ensure that in the *other* districts, Latino candidates of choice would have far less chance of winning than they do in at-large elections today.  On the other hand, given the immense majority

crossover voting and the growing Latino population (not to mention the success of Latino candidates of choice in county, state, and national elections), if Islip retains at-large elections, Latinos have a real chance to win multiple or *all* of the Town Board seats. That opportunity will be gutted if the Court nonetheless enjoins the at-large system in favor of carving out a "Latino" district.

This is not merely a theoretical concern. For instance, in *Goosby v. Town Bd. of the Town of Hempstead, N.Y.*, 956 F. Supp. 326, 332 (E.D.N.Y. 1997), racial minorities were growing in Hempstead, but the district court intervened and imposed a ward system on the Town. As in Islip, minorities in Hempstead vote heavily Democratic and live in a heavily Democratic area, so the black-majority district necessarily was and is a "super-packed" Democratic district, reflecting a classic political gerrymander *against* Hempstead Democrats and, thus, against Hempstead blacks. Two decades later, while the black-majority district in Hempstead has a black representative, Republicans still have all the other single-member seats on the town board. This is the case even though Democrats have won a town-wide election for Town Supervisor, showing that Democrats have a realistic opportunity to win at-large elections in Hempstead. Consigning Democrats and minorities to a permanent minority, rather than an opportunity to control more (or all) town board seats under at-large elections, potentially *undercuts* minority political power in the long run. *Goosby* shows the danger of limiting a growing minority and Democratic polity to a "safe," single-member district.

In any event, these are all arguments that the Court can hear and decide at trial or in post-trial briefing. There is no evidence to exclude, and Plaintiffs' motion should fail.

# CONCLUSION

Islip respectfully requests that the Court strike Plaintiffs' motion *in limine* or, in the alternative, deny it.

Dated:  September 16, 2020

/s/ Louis K. Fisher

Michael A. Carvin
Louis K. Fisher
Stephen J. Petrany
JONES DAY
1 Louisiana Ave NW,
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

*macarvin@jonesday.com*
*lkfisher@jonesday.com*
*spetrany@jonesday.com*

Laura Washington Sawyer
Jennifer L. Del Medico
JONES DAY
250 Vesey Street
New York, New York 10281
Tel: (212) 326-3939
Fax: (212) 755-7306

*lwsawyer@jonesday.com*
*jdelmedico@jonesday.com*

*Attorneys for the Town of Islip and the Islip Town Board*

## <u>CERTIFICATE OF SERVICE</u>

I, Mario J. Cacciola, hereby certify that on this 16th day of September 2020 a copy of the

foregoing document was served via electronic mail upon the below counsel of record:

> Rachael A. Shulman
> Paul, Weiss, Rifkind, Wharton & Garrison LLP
> 1285 Avenue of the Americas
> New York, NY 10019-6064
> rschuman@paulweiss.com
>
> Michael J. Petre
> Assistant County Attorney
> Suffolk County Department of Law
> H. Lee Dennison Building, 5th Floor
> 100 Veterans Memorial Hwy.
> Hauppauge, NY 11788
> Michael.Petre@suffolkcountyny.gov
>
> Randolph M. McLaughlin
> Debra Sue Cohen
> Newman Ferrara LLP
> 1250 Broadway
> 27th Floor
> New York, NY 10001
> rmclaughlin@nfllp.com
> dcohen@nfllp.com
>
> Frederick K. Brewington
> Law Offices of Frederick K. Brewington
> 556 Peninsula Boulevard
> Hempstead, NY 11550
> fred@brewingtonlaw.com

*/s/ Mario J. Cacciola*

Mario J. Cacciola