UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANA FLORES, RENE FLORES, MARIA
MAGDALENA HERNANDEZ, MAGALI
ROMAN, MAKE THE ROAD NEW YORK,
and NEW YORK COMMUNITIES FOR
CHANGE,

**MEMORANDUM OF DECISION AND ORDER**

No. 18-CV-3549 (GRB)(ST)

Plaintiffs,

-against-

TOWN OF ISLIP, ISLIP TOWN BOARD,
SUFFOLK COUNTY BOARD OF
ELECTIONS,

Defendants.
------------------------------------------------------------X

**GARY R. BROWN, United States District Judge.**

In this action brought under Section Two of the Voting Rights Act of 1965, 52 U.S.C. § 10301 et seq. ("VRA"), Hispanic and Latino residents of the Town of Islip (the "Town" or "Islip") and two community advocacy organizations (together, "Plaintiffs") have challenged the at-large voting procedure used to elect the four councilpersons of the Town Board of the Town of Islip (the "Town Board") (together with the Town, the "Islip Defendants"), claiming that the system dilutes the voting strength of the Hispanic and Latino minority, in violation of the VRA. The history and background of this action are documented in several opinions of this Court, familiarity with which is assumed. *Flores v. Town of Islip,* No. 18-CV-3549 (GRB)(ST), 2020 WL 5211052 (E.D.N.Y. Sept. 1, 2020); *Flores v. Town of Islip*, 448 F. Supp. 3d 267 (E.D.N.Y. 2020); *Flores v. Town of Islip*, 382 F. Supp. 3d 197 (E.D.N.Y. 2019).

1

Trial of this matter began, using virtual technology, on September 30, 2020. On the fifth day of trial, by which time the Court had heard testimony from five of Plaintiffs' witnesses and received many exhibits into evidence, counsel advised that they anticipated presenting the Court with a proposed consent decree by which, *inter alia,* the Islip defendants would be permanently enjoined from employing the at-large voting procedure and, in its place, would establish four voting districts in a manner to ensure Hispanic and Latino citizens equal opportunity to participate in the political process. The trial was adjourned pending further discussions among the parties, and a first draft of a proposed consent decree was presented to the Court on October 9, 2020. The matter was then adjourned to October 13, 2020 for potential resolution.

On that date, the parties filed a fully executed consent decree in the form annexed hereto. Upon review, this Court hereby enters that consent decree for the reasons set forth herein.

*Standard of Review*

As the Second Circuit has held:

> *Local Number 93, International Association of Firefighters v. City of Cleveland*, 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), enunciated the standards controlling a court's authority to enter a consent decree. . . . Before entering a consent judgment, the district court must be certain that the decree 1) "spring[s] from and serve[s] to resolve a dispute within the court's subject-matter jurisdiction," 2) "come[s] within the general scope of the case made by the pleadings," and 3) "further[s] the objectives of the law upon which the complaint was based." *Firefighters*, 478 U.S. at 525, 106 S.Ct. at 3077 (citations omitted). These three conditions are sufficient even if the decree contains broader relief than the court could have awarded after trial. *Id.*

*Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir. 1989). The Circuit has further explained in the context of a consent decree sought by a governmental enforcement agency:

> Our Court recognizes a "strong federal policy favoring the approval and enforcement of consent decrees." . . . "To be sure, when the district judge is presented with a proposed consent judgment, he is not merely a 'rubber stamp.' "

2

> *S.E.C. v. Levine,* 881 F.2d 1165, 1181 (2d Cir.1989). The district court here found it was "required, even after giving substantial deference to the views of the administrative agency, to be satisfied that it is not being used as a tool to enforce an agreement that is unfair, unreasonable, inadequate, or in contravention of the public interest."

*U.S.S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 293–94 (2d Cir. 2014). *Citigroup* provides guidance as to the Court's role here:

> It is an abuse of discretion to require, as the district court did here, that the S.E.C. establish the "truth" of the allegations against a settling party as a condition for approving the consent decrees. Trials are primarily about the truth. Consent decrees are primarily about pragmatism. "[C]onsent decrees are normally compromises in which the parties give up something they might have won in litigation and waive their rights to litigation." Thus, a consent decree "must be construed as ... written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation." Consent decrees provide parties with a means to manage risk. "The numerous factors that affect a litigant's decision whether to compromise a case or litigate it to the end include the value of the particular proposed compromise, the perceived likelihood of obtaining a still better settlement, the prospects of coming out better, or worse, after a full trial, and the resources that would need to be expended in the attempt." These assessments are uniquely for the litigants to make. It is not within the district court's purview to demand "cold, hard, solid facts, established either by admissions or by trials," as to the truth of the allegations in the complaint as a condition for approving a consent decree.
>
> As part of its review, the district court will necessarily establish that a factual basis exists for the proposed decree. In many cases, setting out the colorable claims, supported by factual averments by the S.E.C., neither admitted nor denied by the wrongdoer, will suffice to allow the district court to conduct its review. Other cases may require more of a showing, for example, if the district court's initial review of the record raises a suspicion that the consent decree was entered into as a result of improper collusion between the S.E.C. and the settling party. We need not, and do not, delineate the precise contours of the factual basis required to obtain approval for each consent decree that may pass before the court. It is enough to state that the district court here, with the benefit of copious submissions by the parties, likely had a sufficient record before it on which to determine if the proposed decree was fair and reasonable.

*Citigroup Glob. Markets, Inc.,* 752 F.3d at 295–96 (citations omitted).

That role must be viewed in the context of the extensive litigation history of this case. To be clear, the extraordinary relief contemplated by the proposed consent decree involves

3

significant rights under the Voting Rights Act affecting the interests of a Town of more than 300,000 citizens. That relief depends upon the applicability of the Voting Rights Act, as under state law, the change to be effected would otherwise depend upon a public referendum. N.Y. Town Law § 85.

The backdrop of this case includes a detailed, careful decision by the late Honorable Arthur D. Spatt following an extensive hearing in which he determined that Plaintiffs had failed to make a showing warranting preliminary injunctive relief on their claims under the Voting Right Act. On the other hand, the record here contains far more than the "copious submissions" described in *Citigroup*; indeed, this Court has the benefit of years of litigation, and a partial trial record that presented additional evidence beyond the extensive record before Judge Spatt at the preliminary injunction phase. This weighty record, combined with the provisions of the consent decree, renders this review fairly straightforward.

*The Preliminary Injunction Determination*

In April and May 2019, Judge Spatt held an evidentiary hearing that lasted twelve days and included the testimony of sixteen witnesses. In a thorough 81-page opinion, Judge Spatt denied Plaintiffs' motion for a preliminary injunction. While approaching the issue, however, Judge Spatt noted that "enjoining an election is an 'extraordinary remedy' involving far-reaching power, which is almost never exercised by federal courts prior to a determination on the merits." *Flores*, 382 F. Supp. 3d at 205. Throughout the opinion, Judge Spatt remained expressly cognizant of the preliminary nature of the determination:

> Here, the Plaintiffs ask for the same relief before any final determination that the current scheme is unconstitutional. The parties have not had the opportunity for the remainder of the discovery process, dispositive motion practice, a trial and an ultimate adjudication on the merits. *Dillard*, 640 F.Supp. at 1362 ("[T]he court

4

> refuses to order the five counties to implement new election plans, including possibly single-member district plans, until after this lawsuit has been finally heard on the merits."). Though a preliminary injunction hearing is similar to a trial in many ways, there are also substantial differences. "[W]here, as here, the possibility of corrective relief at a later date exists, even an established VRA violation does not in and of itself merit a preliminary injunction." *Watkins v. Mabus*, 771 F.Supp. 789, 805 n.16 (S.D. Miss. 1991), *aff'd in part and vacated in part as moot*, 502 U.S. 954, 112 S.Ct. 412, 116 L.Ed.2d 433 (1991). In short, the Plaintiffs are only just past the start line . . . .

*Flores*, 382 F. Supp. 3d at 246–47.

Judge Spatt applied the framework established by the Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). He readily found that the plaintiffs were able to satisfy the *Gingles* preconditions, *Flores*, 382 F. Supp. 3d at 234, but noted:

> While the satisfaction of the *Gingles* preconditions is required to prove a Section Two violation, a court's inquiry at that stage is far from complete. Next, a district court must consider whether, under the totality of the circumstances, "(1) the political processes for nomination and election (2) are not equally open to participation by members of the protected class (3) because the class members have less opportunity than others to participate and elect their representatives of choice." *Goosby v. Town Bd. of Town of Hempstead*, 180 F.3d 476, 491 (2d Cir. 1999). In other words, a court must determine whether the minority group's political power is actually diluted. *Johnson v. De Grandy*, 512 U.S. 997, 1013, 114 S.Ct. 2647, 2658, 129 L.Ed.2d 775 (1994).

*Id.* at 206–07.

Judge Spatt examined each of the nine "Senate Report factors" contained in *Gingles*, noting that this list is "neither exhaustive nor comprehensive." *Id.* at 234. "[N]o specified number of factors need be proved, and . . . it is not necessary for a majority of the factors to favor one position or another." *Goosby v. Town Bd. of Town of Hempstead, N.Y.*, 180 F.3d 476, 492 (2d Cir. 1999) (citing *Gingles*, 478 U.S. at 45, 106 S.Ct. 2752).

Judge Spatt determined that only one Senate factor favored the plaintiffs, to wit: factor seven, which examined "the extent to which members of the minority group have been elected to

5

public office in the jurisdiction." *Flores*, 382 F. Supp. 3d at 242 (quoting S. Rep. No. 97-417, at 29 (1982)). Specifically, Judge Spatt found that "[f]rom 2005 to the present, no Hispanic has ever been elected to the Islip Town Board." *Id.*[1] Having found that each of the remaining factors weighed against Plaintiffs, Judge Spatt denied a preliminary injunction, holding that "the Plaintiffs have not shown that, under the totality of circumstances, that they are substantially likely to succeed in their claim that the at-large election system for electing members of the Town Board precludes Hispanics from equal participation in the electoral process." *Id.* at 245.

But denying preliminary relief involved additional considerations not present here. In particular, the timing of the application weighed heavily against the intervention of the Court at that juncture:

> The Court finds that enjoining elections from continuing under the current structure is not in the public's interest. This Court recognizes that there is a strong public interest in proceeding with regularly scheduled elections and this weighs heavily against granting an injunction that would delay or disrupt an upcoming election. "[T]he decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation." *Sw. Voter Registration Education Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003).

*Id.* at 246. In fact, Judge Spatt determined that the grant of an injunction would have been "unjust" and contrary to the public interest, involving disruption, harm to voters, removal of candidates and elected officials and unjustifiable expense. *Id.* at 247, 249. "The 2019 elections are rapidly approaching," he concluded, "and the citizens of Islip have a significant interest in those elections proceeding without delay." *Id.* at 247. Because the next scheduled Islip Town Council election will not occur until November 2021, these concerns are significantly mitigated here.

---

[1] Based on testimony elicited at trial, that finding may prove accurate even in the absence of temporal limitation.

6

*The Consent Decree and Facts Adduced Since the Preliminary Injunction Proceedings*

As set forth in the proposed consent decree, the Court has found that the *Gingles* preconditions have been satisfied, and the parties do not contest this finding. DE 221-1 at 2. Importantly, the parties have agreed as follows:

> To effectuate this Consent Judgment, Defendants Town of Islip and Islip Town Board stipulate that implementation of the at-large system for Islip Town Council elections violates Section 2 of the Voting Rights Act.

*Id.* at 3. On October 13, 2020, in open court, counsel for all parties waived their right to any additional factfinding in connection with the approval and entry of the proposed consent decree. *See* Transcript of Proceedings, Oct. 13, 2020.

And while the parties have thus waived their rights to additional factfinding, the Court has, consistent with the case law described above, made sufficient inquiry and conducted a thorough review to ensure that the consent decree is appropriate under applicable caselaw. As is correctly noted in the proposed consent decree, "Plaintiffs also have presented other evidence on the totality of circumstances." *Id.* at 2. Indeed, the evidence offered during trial demonstrates that there *is* a factual basis for the assertion that the "totality of the circumstances" as measured by the Senate Report factors described in *Gingles* warrants relief under the Voting Rights Act. This evidence includes items that were not part of the record at the time Judge Spatt ruled on the preliminary injunction.[2] Moreover, unlike the potential harm to the public interest that would have resulted from preliminary relief, I find that the proposed consent decree serves the public interest by ending this dispute without further litigation and expense, while furthering the

---

[2] One example is found in a consent decree order of this Court, marked for identification as Plaintiffs' Exhibit 476, that speaks to the first of the Senate factors. *United States v. Suffolk County, et al*, CV 04-2698 (E.D.N.Y. 2004), DE 1.

7

Congressional mandate of the Voting Rights Act to protect the rights of minority voters and to guarantee unimpeded access to the polls to all citizens.[3]

There is, then, without question, a factual basis for the consent decree. Thus, considering all of these factors, this Court is "certain that the [consent] decree 1) spring[s] from and serve[s] to resolve a dispute within the court's subject-matter jurisdiction, 2) come[s] within the general scope of the case made by the pleadings, and 3) further[s] the objectives of the law upon which the complaint was based." *Kozlowski*, 871 F.2d at 244 (internal quotations omitted). Far from being "unfair, unreasonable, inadequate, or in contravention of the public interest," *Citigroup Glob. Markets, Inc.*, 752 F.3d at 294, the proposed consent decree represents a carefully crafted compromise that serves the public interest by vindicating the interests of the affected citizens, is fully justified by the factual record, helps effectuate the purposes of the VRA, and is narrowly tailored to accomplish these goals. As such, the consent decree is hereby approved and entered, and the decree and its attachments, found at DE 221-1 and 221-2, is hereby approved, unsealed and entered accordingly.

SO ORDERED.

Dated: Central Islip, New York
      October 14, 2020

                                      /s/ Gary R. Brown
                                      GARY R. BROWN
                                      United States District Judge

---

[3] It is, perhaps, not superfluous to add that that counsel did a commendable job in reaching this resolution, a compromise that serves both the interests of their clients as well as that of the public.